TOWNSEND AND TOWNSEND AND CREW LLP
ERIC P. JACOBS (State Bar No. 88413)
PETER H. GOLDSMITH (State Bar No. 91294)
ROBERT A. McFARLANE (State Bar No. 172650)
IGOR SHOIKET (State Bar No. 190066)
Two Embarcadero Center, 8th Floor
San Francisco, California  94111
Telephone:    (415) 576-0200
Facsimile:    (415) 576-0300
E-mail:       epjacobs@townsend.com
              phgoldsmith@townsend.com
              ramcfarlane@townsend.com
              ishoiket@townsend.com

Attorneys for Defendant and Counterclaimant
FAIRCHILD SEMICONDUCTOR CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALPHA & OMEGA SEMICONDUCTOR, INC., a California corporation; and ALPHA & OMEGA SEMICONDUCTOR, LTD., a Bermuda corporation,<br><br>　　Plaintiffs and Counterdefendants,<br><br>　　v.<br><br>FAIRCHILD SEMICONDUCTOR CORP., a Delaware corporation,<br><br>　　Defendant and Counterclaimant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. C 07-2638 JSW (EDL)<br><br>(Consolidated with Case No. C 07-2664 JSW)<br><br>**FAIRCHILD SEMICONDUCTOR CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE FAIRCHILD'S PATENT LOCAL RULE 3-1 DISCLOSURE**<br><br>Date:　　　　December 11, 2007<br>Time:　　　　9:00 a.m.<br>Courtroom:　Courtroom E, 15th Floor<br><br>Hon. Elizabeth D. Laporte |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................1

II. BACKGROUND .................................................................................................................4

III. ARGUMENT .......................................................................................................................6

    A. The Requirements of the Patent Local Rules. ........................................................6

    B. AOS does not contend that Fairchild's PICs fail to comply with Patent L.R. 3-1 for the 14 reverse-engineered products. ................................................7

    C. Fairchild's PICs fully comply with Patent L.R. 3-1 for all other accused products. ....................................................................................................7

    D. AOS's Motion to Strike misconstrues the requirements of Patent L.R. 3-1. ...........................................................................................................................10

    E. The disclosures in AOS's PICs underscore that Fairchild's PICs comply with Patent L.R. 3-1. ................................................................................11

IV. CONCLUSION ..................................................................................................................12

# TABLE OF AUTHORITIES

**Cases** Page

*InterTrust Tech. Corp. v. Microsoft Corp.*,
   2003 WL 23120174 (N.D. Cal. 2003) .................................................................................. 11

*Monster Cable Products, Inc. v. The Quest Group*,
   2005 WL 2596451, *4-5 (N.D. Cal. 2005) ..................................................................... 3, 4, 8

*Network Caching Tech., LLC v. Novell, Inc.*,
   2003 WL 21699799, *4 (N.D. Cal. 2003) ............................................................................. 7

*Renesas Tech. Corp. v. Nanya Tech. Corp.*,
   2004 WL 2600466, *2 (N.D. Cal. 2004) ................................................................... 3, 7, 8, 10

*Townshend Intellectual Property, L.L.C. v. Broadcom Corp.*,
   2007 WL 1994158, *2 (N.D. Cal. Jul. 5, 2007) .................................................................. 3, 6

**Rules**

Civil Local Rule 37-1(a) ................................................................................................................ 6

Fed. Rules Civ. Proc., Rule 37 ...................................................................................................... 6

Northern District of California's Patent Local Rules, Rule 3-1 ............................ 1, 3, 7, 8, 9, 11, 12, 13

I.       INTRODUCTION

On August 31, 2007, the parties served their Disclosure of Asserted Claims and Preliminary Infringement Contentions ("PICs"). Consisting of 291 pages, Fairchild's PICs include 56 claim charts based on 14 reverse-engineered parts, and over 90 figures supporting those claim charts, many exhibiting Fairchild's reverse-engineering of those 14 products. (Fairchild's PICs are attached to the Declaration Of Brett M. Schuman In Support Of AOS's Motion To Strike Fairchild's Patent Local Rule 3.1 ("Schuman Decl."), Exh. A). AOS's PICs, on the other hand, consisted of 12 pages and had virtually no support for any of its infringement contentions. Instead, they merely mimicked the claim language. AOS served Supplemental PICs on October 19, 2007, but they still fail to comply with Patent L.R. 3-1.[1] As discussed in Fairchild's motion to strike AOS's Supplemental PICs, filed concurrently with this opposition memorandum, Fairchild notified AOS that AOS's PICs were inadequate and requested that they be brought into compliance with Patent L.R. 3-1 or that Fairchild would file a motion. Declaration of Igor Shoiket In Support of Fairchild's Opposition To Plaintiffs' Motion To Strike Fairchild's Patent Local Rule 3-1 Disclosure ("Shoiket Decl."), ¶ 4 & Ex. 5. It was only after Fairchild notified AOS of its inadequate PICs that AOS first began to contend that Fairchild's PICs were deficient and threatened to file its own motion.

In its PICs, Fairchild accuses 342 AOS trench design power MOSFETs of infringement and explains why the 14 reverse-engineered parts referenced in its PICs reasonably support an accusation of infringement for each of the other accused AOS products. Fairchild's PICs (Schuman Decl., Ex. A) at p. 3. As fully explained in the accompanying Declaration of Dr. Richard A. Blanchard In Support of Fairchild's Opposition To Plaintiffs' Motion To Strike Fairchild's Patent Local Rule 3-1 Disclosure ("Blanchard Decl."), each of the accused AOS products, including the 14 reverse-engineered parts, feature a trench design rather than a planar design. Blanchard Decl., ¶ 8. Furthermore, the 14 parts comprise a reasonable sampling of AOS's trench design power MOSFETs because they: (1) include

---

[1] The inadequacy of these Supplemental PICs is the subject of Fairchild's motion to strike. Fairchild is requesting that both motions be heard at the same time, together with Fairchild's motion to compel responses to interrogatories and requests for production of documents.

1  N-channel devices, P-channel devices and dual-channel devices,[2] (2) include both closed cell designs
2  and open cell designs, and (3) feature devices which all have a drain-source voltage rating in the same
3  low voltage range as all 342 parts accused of infringement.  Blanchard Decl., ¶¶ 10-11.  Given the
4  similarity of the designs and the characteristics of the accused products to the reverse-engineered
5  products (as described in AOS's own publicly available datasheets), it is highly reasonable to assume
6  that each of these products has a design and is made by a process that are similar to that described in
7  Fairchild's PICs.

8  Despite Fairchild's detailed PICs (*much* more detailed than AOS's) and its willingness to reach
9  an agreement with AOS on representative parts, AOS filed a Motion to Strike Fairchild's Patent Local
10 Rule 3-1 Disclosure, asserting that Fairchild must reverse-engineer and provide claim charts for each
11 of the 342 accused AOS products.  The cost of reverse-engineering and preparing claim charts for
12 each of these products is not justified, especially when "little if any additional meaningful information
13 is likely to be obtained by further reverse-engineering analysis." Blanchard Decl., ¶ 15.  For the
14 reasons discussed, the Court should deny AOS's motion.

15 AOS also complains that it must respond to discovery requests for each of the 342 accused
16 products.  AOS, however, fails to inform the Court that Fairchild has on numerous occasions offered
17 to enter into an agreement whereby each of the parties would only have to respond to discovery for
18 representative parts.  *See, e.g.,* Joint Case Management Conference Statement (Docket No. 28) at p. 6.
19 This type of agreement is commonly arrived at in semiconductor patent litigation as a means of
20 reducing the cost and burden of discovery and as a means of reducing trial time.  AOS has thus far
21 refused to enter into such an agreement.[3]

---

23 [2] Although the sampling does not include any of the complementary devices that are among the other
    AOS accused products, it can be expected that a low-voltage complementary trench device would
24 have the same basic attributes and characteristics as a low-voltage N-channel trench device and a low-
    voltage P-channel trench device, because a complementary device is simply a package that includes
25 both an N-channel power MOSFET transistor and a P-channel power MOSFET transistor.  Blanchard
    Decl., ¶ 12.

27 [3] Additionally, prior to the commencement of this action, Fairchild requested that AOS provide its
    manufacturing process documents to Fairchild's litigation counsel under a confidentiality agreement in
    an effort to avoid litigation by determining whether there was any basis for AOS's contention that the
28 Continued on the next page

1    The Northern District of California's Patent Local Rules ("Patent Local Rules") are designed to
2    "enable the parties to move efficiently toward claim construction and the eventual resolution of their
3    dispute." *Townshend Intellectual Property, L.L.C. v. Broadcom Corp.*, 2007 WL 1994158, *2 (N.D.
4    Cal. Jul. 5, 2007) (citations omitted).  To effect this purpose, Patent L.R. 3-1 requires each party
5    alleging patent infringement to serve a Disclosure of Asserted Claims and Preliminary Infringement
6    Contentions ("PICs"), in which the party must identify each asserted claim, identify each accused
7    product or method, and "separately" and "specifically" identify where each asserted claim is found
8    within each accused product or method.

9    Patent Local Rule 3-1(c)'s specification of a disclosure that shows "separately" and
10   "specifically" where an asserted patent's claim elements may be found in each accused product does
11   not require, as AOS asserts, that Fairchild prepare and serve a separate claim chart for each and every
12   accused product. *Renesas Tech. Corp. v. Nanya Tech. Corp.,* 2004 WL 2600466, *2 (N.D. Cal. 2004)
13   (citations omitted) (rejecting defendant's argument that a single claim chart was insufficient to accuse
14   160 products).  Nor is Fairchild required, as AOS asserts, to reverse-engineer each and every accused
15   product.  *Id.* ("A sufficient investigation, however, does not require a plaintiff to reverse engineer
16   every accused product . . . . "); *see also Monster Cable Products, Inc. v. The Quest Group*, 2005 WL
17   2596451, *4-5 (N.D. Cal. 2005) (for pre-filing investigation, reverse engineering not required for
18   accused products that do not "differ materially" from reverse-engineered products).  On the contrary,
19   Fairchild can perform reverse-engineering or its equivalent on certain accused products, and then
20   make reasonable inferences based on that reverse-engineering or other evidence, that other accused
21   products that do not differ materially from reverse-engineered products also infringe.  *Renesas Tech.*,
22   2004 WL 2600466 at *4 (evidence based on reverse-engineering of 3 products sufficient to accuse 160
23   products where evidence permitted reasonable inference that all products infringed); *see also Monster*

24

25   ────────────────────

26   Continued from the previous page

27   patents-in-suit were not practiced by AOS. AOS refused to provide this information and filed this
     action that same day.

28

1  *Cable,* 2005 WL 2596451 at *4-5 (pre-filing investigation adequate where only one product was

2  reverse-engineered and other accused products did not materially differ from that product).

3  **II.    BACKGROUND**

4        This action involves patent infringement claims both by AOS against Fairchild and by

5  Fairchild against AOS. In its original complaint, AOS alleged that Fairchild infringes two patents;

6  Fairchild's answer to the original complaint included counterclaims asserting infringement by AOS of

7  four patents[4]: (1) U.S. Patent No. 6,429,481 ("the '481 patent") titled "Field Effect Transistor and

8  Method of its Manufacture," (2) U.S. Patent No. 6,521,497 ("the '497 patent") titled "Method of

9  Manufacturing a Field Effect Transistor," (3) U.S. Patent No. 6,710,406 ("the '406 patent") titled

10 "Field Effect Transistor and Method of its Manufacture," and (4) U.S. Patent No. 6,828,195 ("the '195

11 patent") titled "Method of Manufacturing a Transistor Having a Heavy Body Region."[5]

12       These four patents are all related to the same parent patent application. The patents relate

13 generally to "field effect transistors, in particular trench DMOS transistors, and methods of their

14 manufacture." '481 patent (Shoiket Decl., Ex. 1), at col. 1:5-7; '497 patent (Shoiket Decl., Ex. 2), at

15 col. 1:8-10; '406 patent (Shoiket Decl., Ex. 3), at col. 1:10-12; '195 patent (Shoiket Decl., Ex. 4), at

16 col. 1:11-13. A power MOSFET (Metal Oxide Semiconductor Field Effect Transistor)[6] is essentially

17 a switch. In simple terms, when the switch is turned on by applying voltage to a "gate," the device

18 allows current to flow through a "channel" in the device (from the "source" to the "drain").

19 Conversely, when the gate is turned off, the device does not allow current to flow through the device.

---

[4] On Sept. 28, 2007, pursuant to a stipulated order, AOS filed an amended complaint asserting one additional patent and Fairchild filed amended counterclaims asserting two additional patents. By stipulated order, PICs were served for these additional asserted patents on October 29, 2007. This motion and AOS's Motion to Strike do not address the PICs for these additional patents.

[5] Fairchild has asserted 16 claims of the '481 patent (including 3 independent claims), 15 claims of the '497 patent (including 2 independent claims), 23 claims of the '406 patent (including 2 independent claims), and 18 claims of the '195 patent (including 2 independent claims). *See* Fairchild's PICs (Schuman Decl., Ex. A) at p. 1.

[6] Power MOSFETs are used in a broad range of applications and typically are manufactured using DMOS technology. DMOS stands for "Double-diffused Metal Oxide Semiconductor," a technology which uses two implant/diffusion steps to determine the channel length in the device

1     Power MOSFETs can be fabricated using many different physical designs in which the basic
2 components are arranged in a particular manner.  Two common physical designs are planar gate
3 design and trench gate design.  Fairchild's four patents at issue in this opposition are directed toward a
4 "trench" design in which the gate is formed by creating a vertical trench that is etched into the silicon.

5     The source and drain regions of a power MOSFET are made of material of the same
6 conductivity type (either n-type, meaning it has surplus electrons, or p-type, meaning it has surplus
7 "holes") and are separated by a "well" or "body" region of the opposite conductivity type.  Because the
8 body region is of opposite conductivity type, current ordinarily does not flow between the source and
9 drain regions.  A gate, however, is located adjacent to the body region of the MOSFET -- applying a
10 voltage to the gate greater than the device's "threshold voltage" creates an electric field in the body
11 region, attracting "majority carriers" (either electrons or holes) to the gate.  This forms a channel
12 between the source and drain regions.  The majority carriers are available to carry current in the
13 channel, and therefore the device turns on, allowing current to flow between the source and drain
14 regions.

15     The figures below illustrates planar and trench designs, respectively:



Fig. 1: Planar power MOSFET design,                        Fig. 2: Trench power MOSFET design.

24     Current normally does not flow between the n-type source regions (identified as "N+ Source"
25 components 113) and the n-type drain region (identified as "N-Drain" and "N-Epi" components 108)
26 because a p-type well or body region (identified as "P-Well" component 107) is located between them.
27 In the planar device shown on the left, <u>horizontal</u> channels are formed in the well or body region,
28 between each of the two source regions and the drain region, immediately below and adjacent to the

gate (identified as "Gate" component 203 in the figure on the left and "Gate" component 105 in the figure on the right), one on the left side just below the bottom surface of the gate and one on the right side just below the bottom surface of the gate.  In the trench device shown on the right, <u>vertical</u> channels are formed in the well or body region, between each of the two source regions and the drain region, immediately adjacent to the vertical walls of the gate, one just on the right side of the gate and one just on the left side of the gate.

A feature of the four asserted Fairchild patents at issue is the formation of a "heavy body" in the body region that has material of the same conductivity as the body region, but has a higher concentration of majority carriers. *See, e.g.*, '481 patent (Shoiket Decl., Ex. 1), at Claim 1, col. 8:56-67.  As described in the patents, this results in a structure that improves reliability and ruggedness without sacrificing cell density.  '481 patent (Shoiket Decl., Ex. 1), at col., 5:26-38.

Fairchild's counsel met-and-conferred in good faith with opposing counsel as required by Rule 37 of the Federal Rules of Civil Procedure, Civil Local Rule 37-1(a), and the Court's Order regarding Discovery Procedures in an effort to resolve this dispute without Court intervention.[7]  Shoiket Decl., ¶¶ 4-8 and exhibits attached thereto.

### III.   ARGUMENT

#### A.   The Requirements of the Patent Local Rules.

The Patent Local Rules are designed to "enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Townshend Intellectual Property, L.L.C.*, 2007 WL 1994158 at*2  (citations omitted).  In furtherance of this purpose, Patent L.R. 3-1 requires

---

[7] On September 12, 2007, counsel for Fairchild informed AOS that its original PICs were deficient under the Patent Local Rules.  Shoiket Decl., Ex. 5.  AOS denied that its original PICs were deficient and responded that Fairchild's PICs were deficient.  Shoiket Decl., Ex. 6.  Eventually, pursuant to an agreement of the parties and a Stipulated Order of this Court, AOS served Supplemental PICs, and a few days later, filed its motion to strike.  As detailed in Fairchild's Motion to Strike AOS's Patent Local Rule 3-1 Disclosure filed concurrently with this Opposition, AOS's Supplemental PICs remain deficient under the Patent Local Rules because they fail to demonstrate the practice of various elements of AOS's asserted patent claims, ignore some claim language entirely, include material which either fails to support and even contradicts AOS's contentions, and fail to provide a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality as required by Patent Local Rule 3-1(c).

1  each party alleging patent infringement to serve a Disclosure of Asserted Claims and Preliminary
2  Infringement Contentions, in which the party must identify each asserted claim, each accused product
3  or method, and "separately" and "specifically" where each asserted claim is found within each accused
4  product or method.  This rule is intended to streamline the discovery process by "tak[ing] the place of
5  a series of interrogatories that defendants would likely have propounded."  *Renesas Tech.*, 2004 WL
6  2600466, at *2 (citations omitted); *see Network Caching Tech., LLC v. Novell, Inc.*, 2003 WL
7  21699799, *4 (N.D. Cal. 2003) (citation omitted).

**B. AOS does not contend that Fairchild's PICs fail to comply with Patent L.R. 3-1 for the 14 reverse-engineered products.**

AOS has not asserted that the disclosure in Fairchild's claim charts is insufficient in any way under the Patent Local Rules with respect to the reverse-engineered products upon which the claim charts are based.  Fairchild reverse-engineered 14 AOS products:  AO4812, AO4468, AO6402, AOL1412, AO4410, AO4914, AO4422, AO4704, AOD414, AO4413A, AO6405, AO4912, AOD438 and AOL1414.  For each of these 14 reverse-engineered AOS products, Fairchild's PICs include 4 claim charts, one for each of the asserted patents, and provide all information specified by Patent L.R. 3-1.  See Fairchild's PICs (Schuman Decl., Ex. A), at Exhibits 2-57 thereto.  AOS has not disputed that the disclosure provided in these claim charts, and the figures attached thereto, fully complies with the Patent L.R. 3-1(c), at least with respect to the 14 reverse-engineered products.[8]

**C. Fairchild's PICs fully comply with Patent L.R. 3-1 for all other accused products.**

The only issue AOS has raised with respect to Fairchild's PICs is whether Fairchild may accuse parts other than the 14 parts it reverse-engineered and analyzed in its 56 claim charts.  In essence, AOS's Motion to Strike takes issue merely with the number of products that Fairchild has accused of infringement.

AOS's assertion that Fairchild should not be able to accuse any products other than those for

---

[8] The claim charts refer to numerous figures for each product, include reverse-engineered technical figures such as scanning electron microscopy ("SEM") images, scanning capacitance microscopy ("SCM") images, and secondary ion mass spectroscopy ("SIMS") data.

1  which it has reverse-engineered and provided claim charts misconstrues Patent L.R. 3-1(c).

2        Patent Local Rule 3-1(c) does not require, as AOS asserts, a claim chart for each and every
3  accused product. *Renesas Tech.*, 2004 WL 2600466 at *2 (rejecting defendant's argument that a
4  single claim chart was insufficient to accuse 160 products). Nor does it require reverse-engineering of
5  every accused product. *Id.* ("A sufficient investigation, however, does not require a plaintiff to
6  reverse engineer every accused product . . . ."); *see also Monster Cable Products, Inc.*, 2005 WL
7  2596451 at *4-5 (reverse engineering not required for products that do not "differ materially" from
8  other reverse-engineered products). On the contrary, a party is free to accuse one or more products
9  based on reverse-engineering or its equivalent, and then make reasonable inferences based on that
10 reverse-engineering, or other evidence, that other accused products infringe that were not reverse-
11 engineered. *Renesas Tech.*, 2004 WL 2600466 at *4 (evidence based on reverse-engineering of 3
12 products sufficient to accuse 160 products where evidence permitted reasonable inference that all
13 products infringed); *see also Monster Cable,* 2005 WL 2596451 at *4-5 (pre-filing investigation
14 adequate where only one product was reverse-engineered and other accused products did not
15 materially differ from that product).

16       Fairchild's disclosure with respect to the non-reverse-engineered AOS products complies with
17 both the letter and spirit of the Patent Local Rules. Fairchild's PICs explain why the 14 reverse-
18 engineered parts referenced in its PICs reasonably support an accusation of infringement for each of
19 the other accused AOS products:

> These claim charts are based on information available to Fairchild at this time and are based, in part, upon reverse engineering of a reasonable sampling of AOS products. Fairchild contends that each of the accused AOS products meets the limitations of the asserted claims because, based upon their published characteristics, they are likely to have the same design and structure as the products for which reverse engineering data is provided. In addition, each of the accused AOS products is likely to have been manufactured using a process that is the same or similar in all respects relevant to the asserted claims as the products for which reverse engineering date is provided.

Fairchild's PICs (Schuman Decl., Ex. A) at p. 3.[9] This disclosure suffices for purposes of Patent L.R.

---

[9] By contrast, AOS's PICs are completely silent regarding applicability of the claim charts provided to
Continued on the next page

1  3-1(c). The accused products that have not been reverse-engineered do not materially differ from the
2  14 reverse-engineered products. Blanchard Decl., ¶¶ 6-12. The accused products can be categorized
3  using four basic criteria: (1) whether they are either N-channel devices, P-channel devices, dual-
4  channel devices, or complementary devices; (2) whether they have either a closed-cell or an open-cell
5  configuration; (3) whether they have either a trench gate design or a planar gate design; and (4) their
6  drain-source voltage ($V_{DS}$) rating. Blanchard Decl., ¶ 6. The 14 reverse-engineered products share
7  the same basic attributes of all the other AOS power MOSFETS. Blanchard Decl., ¶¶ 6-12.
8  Specifically, the 14 AOS products analyzed in Fairchild's PICs include N-channel, P-channel devices,
9  and dual-channel devices,[10] and include both closed-cell and open-cell design configurations.[11]
10 Furthermore, all the accused AOS products, including the 14 devices analyzed in the PICs, have a
11 trench design and are low voltage devices. As demonstrated by Fairchild's claim charts and the
12 exhibits attached thereto, each of the 14 reverse-engineered AOS products has a similar dopant
13 concentration profile in a cross-section between the trenches, indicating there is little or no difference
14 between the devices for purposes of infringement analysis. Blanchard Decl., ¶ 11.
15     Additionally, to the extent possible, companies in the power MOSFET industry prefer to use
16 similar processes to make devices that have similar features, because it is cost-effective to do so.
17 Blanchard Decl., ¶ 13. Therefore, it is standard practice in the power MOSFET industry to use the

---

Continued from the previous page

other Fairchild products. *See* AOS's Supplemental PICs (Declaration of Igor Shoiket in support of Fairchild's Motion to Strike Plaintiffs' Patent Local Rule 3-1 Disclosure, Ex. 2).

[10] In particular, AO4410, AO4422, AO4468, AO4704, AO6402, AOD414, AOL1412, AOD438, and AOL1414 are N-channel devices. AO4413A and AO6405 are P-channel devices. AO4812, AO4914, and AO4912 are dual-channel devices. Blanchard Decl, ¶ 11. Although the sampling does not include any of the complementary devices that are among the other AOS accused products, a low-voltage complementary trench device is expected to have the same basic attributes and characteristics as a low-voltage N-channel trench device and a low-voltage P-channel trench device, because a complementary device is simply a package that includes both an N-type transistor and a P-type transistor. Blanchard Decl., ¶ 12.

[11] AO4410, AO4413A, AO4422, AO4468, AO4704, AO4914, AO6402, AO6405, AOD414, and AOL1412 are closed-cell designs. AO4912, AOD438, and AOL1414 are open-cell designs. Blanchard Decl, ¶ 11.

same process from one product to the next for a given generation of products. *Id.* Therefore, it is highly likely that all of AOS's accused power MOSFET products are manufactured using processes that are the same in all respects that are relevant to the issue of infringement. *Id.* Tellingly, AOS has provided no facts or contentions that the 14 products analyzed in the PICs are different from the other accused products in any way that is relevant to infringement, either in its Motion to Strike or in its meet-and-confer correspondence. Shoiket Decl., ¶¶ 4-8 and exhibits attached thereto.

Furthermore, the issue of infringement relates to the manufacture of the silicon power MOSFET chip(s) contained in each of the AOS products accused of infringement. Blanchard Decl, ¶ 14. A power MOSFET product includes one or more MOSFET chips, and possibly additional devices such as a Schottky diode, all contained in a single package. *Id.* A particular power MOSFET chip may be placed in different package types to provide a customer with different products for different application requirements. *Id.* In each of these examples, the power MOSFET chip itself is the same, and the infringement analysis would be the same for all products that contain the same chip. This is true even if these products have additional devices, or use different packaging, and therefore are identified with different part numbers in AOS catalogs or product literature. *Id.* Therefore, it is likely that the infringement analysis for many of the accused AOS products is the same as for the 14 products analyzed in the PICs because the same silicon power MOSFET chip is used.

### D. AOS's Motion to Strike misconstrues the requirements of Patent L.R. 3-1.

AOS's argument that Fairchild's PICs are at odds with the Patent L.R. 3-1's purpose of "streamlining" and "crystallizing" the litigation is ill-conceived. Fairchild would have the Court believe that the Patent Local Rules purpose of "streamlining" litigation requires Fairchild to decline to assert infringement against products it believes infringes. The "streamlining" purpose of Patent L.R. 3-1, however, is effectuated not by limiting the number of products against which infringement may be asserted, but by requiring early disclosure of information under the rules rather than through a later series of interrogatories that "defendants would likely have propounded" in the absence of such requirement. *Renesas Tech.*, 2004 WL 2600466 at *2 (citations omitted).

The relief AOS seeks in its Motion to Strike, rather, is not consistent with the purposes of the Patent Local Rules. AOS would require Fairchild either to reverse engineer and provide claim charts

for hundreds of products that are not materially different than the products it has already reverse-engineered and provided claim charts for, or forfeit its right to accuse those products of infringement. Requiring Fairchild to perform such reverse-engineering analysis for all 342 products is unnecessary -- based on the similarity of the features of all the accused products as they relate to the infringement issues in this case, little if any additional meaningful information is likely be obtained by further reverse-engineering analysis. Blanchard Decl., ¶ 15. Fairchild has repeatedly attempted to obtain an agreement from AOS on representative parts for discovery and framing of the issues in the case. *See, e.g.,* Joint Case Management Conference Statement (Docket No. 28) at p. 6. AOS has consistently rejected those attempts. It is thus Fairchild that has sought to streamline discovery, crystallize the issues in the case and effectively move the parties toward a resolution of their dispute consistent with the purpose of Patent L.R. 3-1 rather than AOS.

AOS's reliance on *InterTrust Tech. Corp. v. Microsoft Corp.*, 2003 WL 23120174 (N.D. Cal. 2003) is misplaced. AOS misleadingly analogizes the *InterTrust* plaintiff's assertion of infringement against "all versions of [defendant's] products" with Fairchild's assertion of infringement against "AOS's entire product line." But InterTrust's infringement assertion was not problematic under Patent L.R. 3-1(c); rather, it violated Patent L.R. 3-1(b)'s requirement to specifically identify *which* versions of defendant's products it was accusing. *Id.* at *2 (observing that defendant could not be expected to "guess which versions of its products [defendant] believes to . . . infringe its . . . patents."). AOS has not asserted, however, that Fairchild has failed to specifically identify the accused products under Patent L.R. 3-1(b).[12]

E.  **The disclosures in AOS's PICs underscore that Fairchild's PICs comply with Patent L.R. 3-1.**

Ironically, AOS's PICs[13] are deficient in precisely the way AOS accuses Fairchild's PICs of

---

[12] Although the *InterTrust* Court did take issue with plaintiff's PICs under Patent L.R. 3-1(c) for unrelated "nit-picky" reasons, those reasons were not identified in the Court's opinion and nothing in the opinion indicates any deficiencies related to any issue raised by AOS's Motion to Strike. *Id.* at *2.

[13] AOS's original PICs included charts that were completely devoid of any information regarding Fairchild's accused products or methods -- they did not include any exhibits, made no citation or reference to any evidence, and contained not one iota of actual information regarding any Fairchild
Continued on the next page

1  being deficient, suggesting that AOS's Motion to Strike is mere gamesmanship.  AOS's Supplemental
2  PICs accuse four Fairchild products of infringing one of AOS's patents, and four other Fairchild
3  products of infringing another AOS patent.  AOS's Supplemental PICs (Shoiket Decl., Ex. 2 at p. 1 &
4  Exs. A and B thereto).  Yet the Supplemental PICs provide only one claim chart for each patent with
5  infringement contentions based on only one accused product for each patent.  And whereas Fairchild's
6  PICs explain why the 14 reverse-engineered parts referenced reasonably support an accusation of
7  infringement for each of the other accused AOS products, AOS's PICs fail to provide any explanation
8  or other justification for its failure to provide claim charts for the additional accused products.  AOS's
9  gamesmanship is underscored by the fact that it failed to reverse-engineer and create claim charts for a
10 mere handful of products while demanding that Fairchild must do so for hundreds of additional
11 products.  AOS's failure significantly undercuts its position that Fairchild's PICs are deficient with
12 respect to Patent L.R. 3-1.

## IV.   CONCLUSION

The purpose of the Patent Local Rules is to permit an orderly and fair claims construction process.  Fairchild has provided PICs that fully comply with the Patent Local Rules.  For the foregoing reasons, the Court should deny Plaintiffs' Motion to Strike Fairchild's Patent Local Rule 3-1 Disclosure.

DATED:  November 6, 2007              TOWNSEND AND TOWNSEND AND CREW LLP


                                      By: /s/*Igor Shoiket*
                                          IGOR SHOIKET

                                      Attorneys for Defendant and Counterclaimant
                                      FAIRCHILD SEMICONDUCTOR CORPORATION

61200092 v1

---

Continued from the previous page

product or method.[13]  AOS's original PICs instead merely mimicked the language of each claim element, without any analysis or evidence.  *See* Fairchild's Motion to Strike Plaintiffs' Patent Local Rule 3-1 Disclosure filed concurrently with this motion.