# EXHIBIT A

DANIEL JOHNSON, JR. (State Bar No. 57409)
RITA E. TAUTKUS (State Bar No. 162090)
AMY M. SPICER (State Bar No. 188399)
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: djjohnson@morganlewis.com
E-mail: rtautkus@morganlewis.com
E-mail: aspicer@morganlewis.com

ANDREW J. WU (State Bar No. 214442)
**MORGAN, LEWIS & BOCKIUS LLP**
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2122
Tel: 650.843.4000
Fax: 650.843.4001
E-mail: awu@morganlewis.com

Attorneys for Plaintiffs and Counterdefendants
ALPHA & OMEGA SEMICONDUCTOR, INC.
ALPHA & OMEGA SEMICONDUCTOR, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ALPHA & OMEGA SEMICONDUCTOR, INC., a California corporation; and ALPHA & OMEGA SEMICONDUCTOR, LTD., a Bermuda corporation,

Plaintiffs,

v.

FAIRCHILD SEMICONDUCTOR CORP., a Delaware corporation,

Defendant.

AND RELATED COUNTERCLAIMS

Case No. C 07-2638 JSW

**ALPHA & OMEGA SEMICONDUCTOR, INC.'S FIRST SET OF INTERROGATORIES TO FAIRCHILD SEMICONDUCTOR CORP.**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff and Counterclaim-Defendant Alpha & Omega Semiconductor, Inc. requests that Defendant and Counterclaimant Fairchild Semiconductor Corp. answer the following interrogatories, separately and fully, in writing under oath, within thirty days of service.

## INSTRUCTIONS AND DEFINITIONS

1. "Fairchild," "you," and "your" means Defendant and Counterclaimant Fairchild Semiconductor Corp., its predecessors and successors, parents, subsidiaries, divisions, affiliates, and other organizational or operating units of any of the foregoing, and its past and present directors, officers, employees, agents and representatives (including attorneys, accountants and consultants), and any other person acting on behalf of such entities.

2. "AOS," and "Plaintiff" means Alpha & Omega Semiconductor, Inc. and/or Alpha & Omega Semiconductor, Ltd., their predecessors and successors, parents, subsidiaries, divisions, affiliates, and other organizational or operating units of any of the foregoing, and its past and present directors, officers, employees, agents and representatives (including attorneys, accountants and consultants), and any other person acting on behalf of such entities.

3. The term "person" shall mean both natural persons and/or other business entities, associations, government agency or other organization recognizable at law and the "acts" of a person are defined to include the acts of directors, officers, owners, members, employees, agents or attorneys acting on the person's behalf.

4. The term "affiliated" in the context of being affiliated with an entity means having worked with or for the entity, having an ownership interest in the entity, being owned at least in part by the entity, serving as a foundry, fabricator, or manufacturer for the entity, or performing any step in the manufacture or processing of the entity's products.

5. The term "document" shall have the broadest possible meaning and refers to any recorded information, including without limitation the original and each non-identical copy of any written, printed, typed, recorded, computerized or electronic data, taped, graphic, or other matter, in whatever form, whether in final or draft, including but not limited to all materials that

constitute "writings" or "recordings" within the meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the meaning of Rule 34 of the Federal Rules of Civil Procedure. "Electronic data" includes without limitation all text files (including word processing documents and presentations), spread sheets, electronic mail documents (emails), databases, calendars, computer system activity logs, audit trails, data used for electronic data interchange, Internet usage files, network access information, voicemail, digitized audio, digital image files, video files (e.g., data stored in MPEG, JPEG, GIF, TIFF, and BMP formats) and any other information stored magnetically, optically or electronically, and data stored on workstations, laptops, network servers, removable media, handheld devices, backup tapes, hard disk drives, diskettes and other computer media such as magnetic tape, floppy disks, memory sticks and recordable optical disks. If documents are identified in lieu of answering an interrogatory, identify the documents in sufficient detail to permit AOS to locate and identify, as readily as Fairchild, the documents and portions therein from which the answer may be ascertained.

6. The term "thing" has the broadest meaning prescribed in Rule 34, Fed. R. Civ. P., and includes every kind of tangible item, other than a document, in your possession, custody or control, for example, without limitation, prototypes, samples, models, or specimens.

7. The terms "communication" shall mean any transmittal of information regardless of the manner in which such communication took place, including but not limited to, personal conversations, correspondence, electronic or computer mail (emails), telephone calls, facsimile communications, or telegrams.

8. When asked to "identify" or specify the "identity" of a document, for each non-identical document state: (a) the date of the document; (b) the number of pages in the document; (c) the identity of all persons who prepared or signed a copy of the document; (d) the identity of all persons designated as addressees of the document; (e) the identity of all persons designated as copy recipients of any copy of the document; (f) the type of document (e.g. memorandum, pamphlet, or report); (g) the specific physical or electronic location where the document is stored or kept in the regular course of business; and (h) the general subject matter of the document. If

any responses to these interrogatories refer to documents and things not in your possession, custody, or control, describe the circumstances under which you came to know about the disposition of the documents and things. If any responses to these interrogatories refer to documents and things that are lost or destroyed, identify each lost or destroyed document and thing, as well as all files that contained them.

9. When you are asked to identify a person or persons with knowledge of a given subject, contention, event or set of facts, please provide the person's first name, last name, place of employment (if known), last known address, email and telephone number.

10. "Prior art" includes without limitation the subject matter described in 35 U.S.C. §§ 102 and 103, including but not limited to U.S. patents having application filing dates before the filing date of any subject patent, printed publications published before the filing date of any subject patent, anything in public use or on sale more than one year before the filing date of any subject patent, anything in secret commercial use by an inventor of any subject patent more than one year before the filing date of the subject patent, anything known or used in a publicly accessible form by one other than an inventor of any subject patent before the filing date of the subject patent, or anything invented by one other than an inventor of any subject patent before the filing date of the subject patent.

11. The term "prosecution" shall mean or refer to proceedings before any patent office, either the United States Patent and Trademark Office or a foreign patent office, in connection with the filing of a particular application and/or issuance of a particular patent.

12. The term "public use" shall mean or refer to any public or private use or demonstration, whether experimental or otherwise, of the alleged invention or which disclosed the alleged invention to anyone other than an employee, agent or attorney of the inventor, including without limitation existing or potential investors, licensees, customers or distributors.

13. Patents or patent applications "related" or "relating" to a patent shall mean or refer to any patents (whether expired or in force) and patent applications (whether issued, pending or abandoned) that include any common disclosure with the patent, or that refer in any way to the patent, including but not limited to continuations, continuations-in-part, divisionals, or any

foreign counterpart applications or patents.

14. The term "sale" shall mean or refer to public or private efforts of any sort in connection with the commercialization of an alleged invention, whether experimental or otherwise, including without limitation any offers for sale or license, actual sales or licenses, or any advertising of the alleged invention.

15. The term "AOS Asserted Patent" means any or all of U.S. Patent Nos., 5,767,567 ("'567 patent") and/or 5,907,776 ("'776 patent").

16. The term "IC" means any integrated circuit or circuitry.

17. The term "MOSFET" means any field effect transistor having a gate terminal composed of metal and/or metal oxide and/or polysilicon.

18. The term "Accused Fairchild Device" shall mean any power MOSFET-based device made, used, sold, offered for sale, or imported by Fairchild, including without limitation, the devices identified on Fairchild's web site as Power Modules, Switches, Power Controllers, Power Drivers, Transistors, TRIACs, Voltage Regulators, Application based Products (Audio, Video, Lighting, Motor Divers and USB), Interface, Filters, and Temperature Management, and further including:

(a) any IC that includes a source contact area that is connected to a lead-frame by more than one lead-wire; and/or

(b) any trench MOSFET; and/or

(c) any other devices identified by AOS in the course of the litigation as infringing one or more AOS Asserted Patent.

19. The term "Fairchild Asserted Patent" or "counterclaim patents" means U.S. Patent Nos. 6,429,481 B1 ("'481 patent"), 6,521,497 B2 ("'497 patent"), 6,710,406 B2 ("'406 patent"), and/or 6,828,195 B2 ("'195 patent").

20. The term "Accused AOS Device" shall mean that device, product, tool or equipment that Fairchild contends infringes any Fairchild Asserted Patent.

21. If you do not answer an interrogatory, or any part thereof, because of a claim of privilege or immunity, expressly set forth the specific privilege or immunity claimed, and

describe the documents, communications, or things not produced or disclosed in a manner that would enable AOS to assess the applicability of the privilege, including the following information:

(a) the nature and subject matter of the document, communication, or thing;

(b) the date the document, communication, or thing was acquired or came into existence;

(c) the author;

(d) all addresses, recipients, copyholders and other distributees;

(e) the organization, if any, which each author, addressee, recipient, copyholder or distributee was then connected to and his or her job title or description; and

(f) if a document, the number of pages.

22. If you cannot answer any interrogatory fully, completely, and in detail, after exercising due diligence to make inquiry and secure the information necessary, so state, and:

(a) answer such interrogatory to the extent possible; and

(b) specify the portion of such interrogatory that you claim to be unable to answer fully, completely, and in detail.

23. These definitions are not intended to be interpretations of any of the terms of the patents-in-suit. Neither party shall be bound by the interpretations used herein except with respect to these discovery requests.

**INTERROGATORIES**

1. Identify and describe each Accused Fairchild Device by part number, model, design, type, or any other designation used by Fairchild.

2. For each Accused Fairchild Device identified in response to Interrogatory No. 1, describe in detail the research, development, design, configuration, engineering, and testing processes for such device, including but not limited to the development of: (a) the source contact area configuration, the determination of the number of lead wires, the determination of the number and layout of the gate-runners, the determination of the distribution of the lead wires; and (b) the material composition, thickness, dopant, doping concentration(s), dopant implantation

process, and doping concentration in the body region between the trench gates.

3. For each Accused Fairchild Device identified in response to Interrogatory No. 1, provide: (a) a region-by-region description of each such device, including identification of the composition, thickness, dopant, doping concentration(s), diffusion profile, and method(s) of formation of each region of each such device; and (b) the function and performance characteristics of the Accused Fairchild Device by region and as a whole including without limitation the conductivity type, threshold voltage, spread resistance, turn-on resistance, depletion width, channel length, breakdown voltage, breakdown profile, and punch-through tolerance.

4. For each Accused Fairchild Device identified in response to Interrogatory No. 1, describe in detail the manufacturing process for the Accused Fairchild Device, including but not limited to a specific description of any implantation and/or diffusion process used to make such Accused Fairchild Device, the dopants employed, a description of the dopant implantation and dopant diffusion including the processing conditions, and identification of any change in temperature or pressure during the process.

5. For each Accused Fairchild Device identified in response to Interrogatory No. 1, identify by name and location each facility used to manufacture or assemble the Accused Fairchild Device.

6. If you contend that any product or device identified in response to Interrogatory No. 1 does not infringe the patents-in-suit, state all facts supporting that contention.

7. For each Accused Fairchild Device identified in response to Interrogatory No. 1, identify the customers and users of the Accused Fairchild Device, including without limitation identification of Fairchild's customer(s) and any known downstream customers or users.

8. For each Accused Fairchild Device identified in response to Interrogatory No. 1, provide the following information for the time period June 16, 1998 to the present: (a) the total number of units made on an annual basis; (b) the total number of units imported into the United States on an annual basis; (c) the quantity sold in units (by month and year, breaking out worldwide and U.S. sales) (1) by or for Fairchild and (2) by and for any other person or entity; (d) revenue on an annual basis; (e) production costs on an annual basis; and (f) profits on an annual

basis (including without limitation gross profits, net profits, and profit margins).

9. Describe when and how you first became aware of each AOS Asserted Patent.

10. Describe in detail any investigation by or for Fairchild regarding whether any Accused Fairchild Device identified in response to Interrogatory No. 1 infringes the patents-in-suit.

11. Identify every current or former Fairchild employee, agent, consultant, or representative that has been at any time employed by AOS, and for each such person identify the dates of that person's employment at AOS, the position and duties of that person while employed at AOS, the dates of that person's employment or other relationship as agent, consultant, or representative of Fairchild, and the position and duties of that person as an employee, agent, consultant, or representative of Fairchild.

12. Identify the three most knowledgeable persons with respect to: (a) any contention by Fairchild that the Accused Fairchild Products do not infringe the patents-in-suit; (b) the design, research and development of the Accused Fairchild Products; (c) the manufacture of the Accused Fairchild Products; and (d) the marketing and sales of the Accused Fairchild Products.

13. Describe the organizational structure of Fairchild including, but not limited to: (a) all parent, subsidiary, and affiliated organizations of Fairchild and describe the relationship between Fairchild and the organization; and (b) the structure relating to engineering, design, research, development, manufacture, fabrication, testing, marketing, sales, promotion, exportation, and/or distribution of the Accused Fairchild Devices.

14. For each asserted claim of each of the Fairchild Asserted Patents, describe the conception and reduction to practice of the alleged invention, including without limitation identification of the date when work first began that led to the alleged invention, the internal name or designation for any research or development project that led to the alleged invention, the objective or goals of such research project(s), the dates of conception and reduction to practice, and the circumstances surrounding the conception and reduction to practice including identification of all individuals present and all documents evidencing the conception and reduction to practice.

15. For each Fairchild product that Fairchild contends practices the claims of any Fairchild Asserted Patent, provide the model number, product number, part number, name, trade name, trademark, name under which the commercial embodiment is or was designated, developed, manufactured, marketed, or sold and any other unique designation, commercial or otherwise, used in connection with the commercial embodiment.

16. For each Fairchild product that Fairchild contends practices the claims of any Fairchild Asserted Patent, identify the date of first sale or offer for sale.

17. For each Fairchild product that Fairchild contends practices the claims of any Fairchild Asserted Patent, identify the date of first public use or demonstrate of the product.

18. Separately for each Asserted Fairchild Patent, state all facts supporting any contention by Fairchild that it marked any product with the number of such patent in accordance with the requirements of 35 U.S.C. Section 287, or otherwise notified AOS of its alleged infringement, or that Fairchild is otherwise entitled to pre-suit damages for AOS's alleged infringement.

19. Identify all AOS Devices accused of infringing the Fairchild Asserted Patents, the date on which each such AOS Device became known to you, the circumstances under which each such AOS Device became known to you.

20. Describe in detail any pre-filing investigation by or for Fairchild regarding whether any AOS Devices infringe the Fairchild Asserted Patents.

21. State all facts supporting your contention, if any, that any claim of any Fairchild Asserted Patent is non-obvious, including identification of all evidence of secondary indicia of non-obviousness.

22. Identify every offer to license or license granted under any Fairchild Asserted Patent and for each such license identify the licensor, the licensee, and the amount of any fee or royalties paid pursuant to the license, whether such fees or royalties were paid up, a lump sum, an annual royalty, or some other royalty amount.

Dated: July 30, 2007

MORGAN, LEWIS & BOCKIUS LLP

By /s/ Daniel Johnson, Jr.
Daniel Johnson, Jr.
Attorneys Plaintiffs and Counterdefendants ALPHA & OMEGA SEMICONDUCTOR, LTD., AND ALPHA & OMEGA SEMICONDUCTOR, INC.

**CERTIFICATE OF SERVICE**

I am employed in the City of Palo Alto, County of Santa Clara, State of California, I am over the age of 18 years and not a party to the within action. My business address is 2 Palo Alto Square, 3000 El Camino Real, Palo Alto, California 94306. On July 30, 2007, I caused copies of the attached document(s) described as follows:

**ALPHA & OMEGA SEMICONDUCTOR, INC.'S FIRST SET OF INTERROGATORIES TO FAIRCHILD SEMICONDUCTOR CORP.**

to be served on:

Eric P. Jacobs, Esq.
**TOWNSEND & TOWNSEND**
2 Embarcadero Center, 8th Floor
San Francisco, CA 94111
Tel: 415.576.0200
**Fax: 415.576.0300**

______(BY OVERNIGHT DELIVERY) I caused each such envelope to the addressee(s) noted above, with charges fully prepaid, to be sent by overnight delivery from Palo Alto, California. I am readily familiar with the practice of Morgan, Lewis & Bockius LLP for collection and processing of correspondence for overnight delivery, said practice being that in the ordinary course of business, mail is placed with the overnight delivery service on the same day as it is placed for collection.

__BY ELECTRONIC MAIL) The person whose name is noted below caused to be transmitted by electronic mail each such document to the addressee(s) noted above.

__(BY FIRST CLASS MAIL) I caused each such envelope to the addressee(s) noted above, with postage thereon fully prepaid, to be placed in the United States mail in Palo Alto, California. I am readily familiar with the practice of Morgan, Lewis & Bockius LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business mail is deposited in the United States Postal Service the same date as it is placed for collection; and

______(BY FACSIMILE) The person whose name is noted below caused to be transmitted by facsimile each such document to the addressee(s) noted above; and

_X_(BY PERSONAL SERVICE) The person whose name is noted below caused to be delivered by hand each such envelope to the addressee(s) noted above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Palo Alto, California, on July 30, 2007.

Mary C. Wong