MORGAN, LEWIS & BOCKIUS LLP
Daniel Johnson, Jr. (State Bar No. 57409)
Brett M. Schuman (State Bar No. 189247)
Amy M. Spicer (State Bar No. 188399)
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
djjohnson@morganlewis.com
bschuman@morganlewis.com
aspicer@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Andrew J. Wu (State Bar No. 214442)
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA  94306-2122
Tel:  650.843.4000
Fax:  650.843.4001
awu@morganlewis.com

Attorneys for Plaintiffs and Counterdefendants
ALPHA & OMEGA SEMICONDUCTOR, INC.
ALPHA & OMEGA SEMICONDUCTOR, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALPHA & OMEGA SEMICONDUCTOR, INC., a California corporation; and ALPHA & OMEGA SEMICONDUCTOR, LTD., a Bermuda corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>FAIRCHILD SEMICONDUCTOR CORP., a Delaware corporation,<br><br>                    Defendant.<br>————————————————<br>AND RELATED COUNTERCLAIMS | Case No. 07-2638 JSW (EDL)<br>(Consolidated with Case No. 07-2664 JSW)<br><br>**REPLY IN SUPPORT OF AOS'S MOTION TO STRIKE FAIRCHILD SEMICONDUCTOR CORP.'S PATENT LOCAL PATENT L.R. 3-1 DISCLOSURE**<br><br>Date:  November 27, 2007<br>Time:  9:00 a.m.<br>Location: Courtroom E, 15th Floor<br>Judge:  Hon. Elizabeth D. Laporte |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.    **INTRODUCTION**

In its Patent Local Rule 3-1 Disclosure, defendant and counterclaimant Fairchild Semiconductor Corporation ("Fairchild") attempts to identify indiscriminately all of the MOSFET products plaintiffs Alpha & Omega Semiconductor, Ltd. and Alpha & Omega Semiconductor, Inc. (collectively, "AOS") manufacture as "Accused Products." Notwithstanding its attempt to sweep 342 products into its infringement case, Fairchild only provides Rule 3-1 Disclosures for 14 specific products.  Fairchild attempts to justify its failure to comply with the Patent Local Rules by asserting that the 14 products are "representative" of all of AOS's products.  Patent Local Rule 3-1 does not permit Fairchild's tactic; if Fairchild has a valid basis for accusing AOS products, it must provide a disclosure showing "separately" and "specifically" where its claims may be found in "each product."  Patent L.R. 3-1(b) & (c).

Even more problematic, Fairchild's methodology in concluding that these 14 products are "representative" of AOS's entire line of 342 products fails to target characteristics relevant for infringement analysis purposes.  Based on a declaration from its retained expert, Dr. Blanchard, Fairchild incorrectly concludes that the accused products can and should be characterized by using four basic criteria.  This approach and the "basic criteria" selected have little relevance to the infringement issues in this case and utterly fail to satisfy the Rule 3-1 requirements.

## II.    **BACKGROUND**

This patent infringement case involves power MOSFET devices and the manufacturing process used to fabricate them.  These devices are used in many different applications, including: low-frequency DC-DC power conversion, high-frequency DC-DC power conversion, switch-mode-power-supplies ("SMPS"), SMPS low-side MOSFET, SMPS high-side MOSFET, low-frequency load-switching applications, battery protection applications, AC-DC power conversion, inverters, and motor control.  Some applications include multiple MOSFETs in one package or one MOSFET with one passive device such as a diode. (Declaration of François Hébert in Support of AOS's Reply in Support of

1

1-SF/7627811.1

1  AOS's Motion to Strike ("Hebert Decl."), at ¶ 9.)  As might be expected, the devices must

2  be configured for different applications.  For example, devices that are switched on and

3  off often and under severe conditions (SMPS, DC-DC converters, and so forth) require

4  different characteristics than devices that are rarely switched.  Motor-control devices (*e.g.*,

5  devices used in handheld battery-powered tools), must be able to survive much harsher

6  conditions than MOSFETs used to protect batteries of notebook computers and, as a

7  result, special techniques to clamp the breakdown voltage and protect the active cells of

8  Power Tool MOSFETs are integrated in the structure.  (*Id*. at ¶ 10.)

9      To succeed in each of these different applications, AOS's devices have different

10  operating performance characteristics.  For example, different AOS MOSFET devices

11  have different turn-on (threshold) voltages, different gate voltage ratings (maximum Vgs

12  voltage which can be applied for safe operation), different drain voltage ratings

13  (maximum Vds voltage which can be applied for safe operation), different maximum

14  drain current ratings, different drain to source resistance, different transconductance,

15  different drain to source breakdown voltages (BVdss), different capacitances (input

16  capacitance Ciss, output capacitance Coss and gate-drain capacitance Crss), different gate

17  resistance (Rg), and different optimum operating frequencies.  (*Id*. at ¶ 6.)

18      To achieve the different performance characteristics, AOS's MOSFET devices

19  have different features, such as different silicon substrates (n type, p type, and different

20  doping concentrations), different drain drift regions, different doping concentrations in

21  certain regions, carrier type (n or p) and thickness, different trench depth, different trench

22  width, different distances between the trenches, different active cell geometries (striped,

23  closed-cell for example), different depths of the various doping profiles (sometimes

24  referred to as wells), and different number of steps used to fabricate the devices.  While

25  not all of the features are different as to every product, there are certainly some

26  differences between each of the products.[1]  (*Id*. at ¶ 8.)

27  _____

[1] While the products may share some features, and may share some features that are
relevant to certain of the asserted claims, they do not share every feature that is relevant to
28  every asserted claim, as discussed below.

2

1-SF/7627811.1

In sum, there are numerous differences among AOS's power MOSFETs devices, many of which are the result of the different manufacturing processes used by AOS. It is these very manufacturing processes that are the subject of the Fairchild patents asserted against AOS. *See*, *e.g.*, Declaration of Igor Shoiket in Support of Fairchild's Opposition to AOS's Motion to Strike ("Shoiket Decl."), Ex. 1, U.S. Patent No. 6,429,481 "Field Effect Transistor and Method of Its Manufacture"; Ex. 2, U.S. Patent No. 6,521,497 "Method of Manufacturing a Field Effect Transistor"; Ex. 3 U.S. Patent No. 6,710,406 "Field Effect Transistor and Method of Its Manufacture".

## III.    ARGUMENT

### A.    Patent Local Rule 3-1 Requirements

Patent Local Rule 3-1 requires a party claiming patent infringement to serve a disclosure identifying (a) each claim of each patent in suit that is allegedly infringed; (b) separately for each asserted claim, each accused apparatus, product, and so forth, of each opposing party of which the party is aware; and (c) specifically where each element of each asserted claim is found within each accused product. Of particular relevance to the current motion, the Patent Local Rules require the identification of the accused products to be "*as specific as possible*." *See* Patent Local Rule 3-1(b) (emphasis added).

The primary purpose of Rule 3-1 is to require a plaintiff to show "why it believed before filing the claim that it had a reasonable chance of proving infringement." *Renesas Tech. Corp. v. Nanya Tech. Corp.*, No. 03-5709, 2004 WL 2600466, *2 (N.D. Cal. Nov. 10, 2004) (quotation and citation omitted). In order to satisfy this requirement, a plaintiff must provide the detailed disclosures set forth in Rule 3-1 for each and every accused product or the plaintiff must "convince the court that reverse engineering [every accused product] would not provide more detail regarding potential infringement." *Id*.

In *Renesas*, the court allowed the plaintiff to provide disclosures for representative products only after being convinced that the differences between products were not relevant to the alleged infringement. All of the accused products contained the same allegedly infringing circuitry as the products that were reversed engineered; the remaining

REPLY TO AOS'S MOTION TO STRIKE FAIRCHILD'S
LOCAL RULE 3.1 DISCLOSURE
CASE NO. 07-2638 JSW (EDL)

differences in the products were "simply a result of various product options (including different data widths, speeds, and packaging) that [did] not change the relevant circuitry." *Id*. at 3. The court in *Monster Cable Prods., Inc. v. The Quest Group*, applied similar reasoning and ruled that reverse engineering of every accused product was not required if the accused products contained the same allegedly infringing elements. *Monster Cable Prods*, No. 04-5, 2005 WL 25-6451, *4-5 (N.D. Cal. Oct. 13, 2005). Where the accused products differ from each other in ways material to the issues of infringement, selecting a so-called representative product is inappropriate. *Id*. at *5.

Fairchild concedes that it has not provided a Rule 3-1 Disclosure for 324 of the 342 products it purports to accuse. It effectively concedes that it did not conduct any reverse engineering or equivalent analysis of 324 of the devices it purportedly accuses. In an attempt to justify this approach, Fairchild contends that the 14 products it has analyzed "do not materially differ" from the other 324 products. Opp. at 9:1-2. Fairchild is wrong, as discussed below.

**B.      Dr. Blanchard Uses The Wrong Criteria to Reach The Wrong Conclusion Regarding AOS's MOSFET Products**

Relying exclusively on a declaration from its retained expert, Fairchild asserts that all of the accused products can be categorized using four basic criteria: (1) whether they are N-channel, P-channel, dual-channel, or complementary devices; (2) whether they have either a closed-cell or an open-cell configuration; (3) whether they have either a trench gate design or a planar gate design; and (4) their drain-source voltage ($V_{DS}$) rating. These broad and generic categories are not relevant to the claims asserted by Fairchild. Fairchild cannot use these categories to show how the 14 accused products are representative of all 342 of AOS's MOSFET products as they related to Fairchild's asserted claims. Just because Fairchild has reverse engineered one N-channel product (or one closed-cell, or one trench-gate product) does not mean that that product is representative of every other N-channel product with respect to the elements of Fairchild's patent claims.

One example illustrating the flaws in Fairchild's approach is the drain-source

REPLY TO AOS'S MOTION TO STRIKE FAIRCHILD'S
LOCAL RULE 3.1 DISCLOSURE
CASE NO. 07-2638 JSW (EDL)

1   voltage ($V_{DS}$) criterion.  In his declaration, Dr. Blanchard defines "low-voltage devices"

2   as "those having a drain-source voltage between approximately 20V and 100V for an N-

3   channel device" and concludes that all 342 accused products are low-voltage devices.

4   (Declaration of Dr. Richard Blanchard In Support of Fairchild's Opposition to AOS's

5   Motion to Strike ("Blanchard Decl."), ¶¶ 10 & 12.)  In fact, while the 14 accused products

6   selected by Fairchild all have the same drain-source voltage of 30V, the drain-source

7   voltage of the other AOS products purportedly accused by Fairchild ranges from 12V

8   (*e.g.*, AO4437) to 20V (*e.g.*, AO6702), 30V (*e.g.*, AO6800), 40V (*e.g.*, AO4617), 60V

9   (*e.g.*, AO4612), 75V (*e.g.*, AO4850), 105V (*e.g.*, AOD464), up to 200V (*e.g.*, AOD450).

10  (Hébert Decl., at ¶ 13; Schuman Decl., Ex. A, Tab 1 (Selection guide).)   Thus, at a

11  minimum, AOD464 and AOD450 are not low-voltage devices under Dr. Blanchard's own

12  definition and are certainly are not represented by the 14 products Fairchild has selected.

13  Similarly, the highest drain-source resistance ($R_{DS}$) among the 14 specifically

14  identified products is 52 mΩ (AOD6405), while $R_{DS}$ of the 342 products AOS products (at

15  $V_{GS}$=10V) ranges from 3.5 mΩ (AOD438) to 1600 mΩ (AO5800E).  (Hébert Decl., at

16  ¶ 12.)   Again, the 14 "representative" products are not representative at all.

17  These and other performance characteristics are achieved by product features and

18  fabrication methods.  (Hébert Decl., at ¶ 5-10.)  In other words, the differing performance

19  across AOS's product line is reflective of differing manufacturing methods.

20  Unlike the substantially similar products at issue in *Renesas* and *Monster Cable*,

21  Fairchild has not shown that the 342 AOS products it purports to accuse are similar in

22  ways that are relevant to the claims asserted.  The significant variation of many

23  performance attributes of the products is relevant to the different claim limitations of

24  Fairchild's asserted claims based on the way the products are designed and manufactured,

25  Hébert Decl., at ¶ 14, which is what the patents-in-suit are focused on.

26  **C.    Fairchild's Own Reverse-Engineering Data Demonstrates that AOS's
         Products Are Not Identical With Respect to the Features Relevant to
27        Fairchild's Patents.**

28  Fairchild's opposition relies entirely on the proposition that the 14 products that

5    REPLY TO AOS'S MOTION TO STRIKE FAIRCHILD'S
     LOCAL RULE 3.1 DISCLOSURE
     CASE NO. 07-2638 JSW (EDL)

1-SF/7627811.1

1  Fairchild has reverse engineered are representative of all of AOS's products, as evidenced

2  by the reverse engineering analyses attached as "evidence" to Fairchild's Patent L.R. 3-1

3  Disclosure.[2]  Fairchild and its expert assert that:

> As demonstrated by Fairchild's claim charts and the exhibits
> attached thereto, each of the 14 reverse-engineered AOS
> products has a similar dopant concentration profile in a cross-
> section between the trenches, indicating that <u>there is little or
> no difference between the devices for purposes of
> infringement analysis</u>.

7  Opp. at 9:11-4 (*citing* Blanchard Decl., ¶ 11) (emphasis added).  But contrary to this

8  assertion, Fairchild's Patent L.R. 3-1 Disclosure shows there are relevant differences

9  among the 14 selected products that Fairchild broadly asserts are representative of all

10  other AOS products.

11  For example, claim 1 of Fairchild's asserted U.S. Patent No. 6,429,481 recites:

> a doped well … formed into the substrate to a depth that is less
> than said predetermined depth of the trench

13  (Shoiket Decl., Ex. 1, col. 8, lines 52-55 (claim 1).)  Many of Fairchild's asserted claims

14  likewise recite that the depth of the well is less than the depth of the trench.  (*See e.g.*

15  Shoiket Decl., Ex. 3 ('406 patent), col. 8, lines 55-58 (claim 1); Shoiket Decl., Ex. 4 ('195

16  patent), col. 8, lines 49-53 (claim 1).)

17  Even a casual review, however, of the scanning capacitance microscopy ("SCM")

18  analyses provided by Fairchild confirms substantial differences between the 14 accused

19  products, including differences with respect to the claim limitations requiring the depth of

20  the well to be less than the depth of the trench.  For example, the following is the SCM

21  image of AO4413A provided by Fairchild:

---

23  [2] Fairchild is eager to compare the volume of "evidence" attached to its Rule 3-1
24  Disclosure to that attached to AOS's Rule 3-1 Disclosure.  Opp. at 1.  Again, the purpose
    of the 3-1 Disclosures is not to provide evidence of infringement, but to streamline
25  discovery by identifying the products that the plaintiff in good faith accuses of
    infringement.  Moreover, the difference between Fairchild's Disclosures and AOS's
26  Disclosures is that AOS only accuses products having a structure corresponding to the
    products it has reverse engineered, while Fairchild accuses every AOS product of
27  infringing.
    In any event, the sufficiency of AOS's Disclosures is irrelevant to this motion and
28  if AOS's Disclosures are adjudged to be insufficient that will still not excuse or justify the
    deficiencies AOS has identified within Fairchild's Disclosures.

1
2
3
4
5
6
7
8
9
10
11



12  (Declaration of Brett Schuman In Support of AOS's Motion to Strike ("Schuman Decl."),

13  Ex. A, Fig. AO4413A-3.)  The following is the SCM of AO4422 provided by Fairchild:

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



REPLY TO AOS'S MOTION TO STRIKE FAIRCHILD'S
LOCAL RULE 3.1 DISCLOSURE
CASE NO. 07-2638 JSW (EDL)

1-SF/7627811.1

1    (Schuman Decl., Ex. A, Fig. A04422-4.) [3]  In the top figure, the depth of the well D may

2    be less than the depth of the trench B.  But in the bottom figure, the depth of the well D is

3    **greater** than the depth of the trench B.  The import of this difference in relative depths of

4    the trench and the well is that the AO4422 product does not infringe certain Fairchild

5    claims.[4]  Accordingly, Fairchild's own purported reverse-engineering analysis

6    demonstrates that there are differences among AOS's products with respect to features

7    required by Fairchild's patent claims.

8         Likewise, a review of the other analyses attached to Fairchild's Patent L.R. 3-1

9    Disclosure confirms numerous differences between these 14 AOS products.  While

10   Fairchild's claim charts do not explain many aspects of Fairchild's theories of

11   infringement,[5] it is evident that the depths of the wells and trenches vary, as do the doping

12   profiles indicated in the Scanning Electron Microscopy ("SEM") and the Secondary Ion

13   Mass Spectroscopy ("SIMS") analyses.

14        **D.    Fairchild's Rule 3-1 Disclosures Are Insufficient Even as to the 14 So-Called Representative Accused Products**

15

16        In its Opposition, Fairchild incorrectly asserts that it has provided sufficient Patent

17   L.R. 3-1 Disclosures as to the 14 products it has reverse engineered.  *See* Opp. at 7:8-17.

18   But Fairchild has failed to provide reverse-engineering data for at least three of the 14

19   accused products: AO4912, AOD438, and AOL1414.  For example, the SCM image of

20   die edge for AO4912 is not actually taken from AO4912.  Rather, Fairchild simply

21   borrowed the SCM image of die edge for AOL1414 and used this image in its claim charts

22   accusing AO4912.  (Schuman Decl., Ex. A, Fig. AO4912-7 (acknowledging that "[t]his

23   ---

[3] These images, including the labels, represent Fairchild's assertions.  AOS makes no representations and waives no objections with regard to the purported analysis or labels. In Fairchild's Disclosures, the reverse engineering analysis is included following the last claim chart (after Tab 57).

[4] Fairchild appears to have no good faith basis for asserting these claims against the AOS products having a well with a depth greater than the depth of the trench.

[5] For example, Fairchild's claim charts and analyses provide no support as to the "transistor breakdown initiation point" recited in many claims.  (Shoiket Decl., Ex. 1 ('481 patent), at col. 8, lines 64-65 (claim 1).)

REPLY TO AOS'S MOTION TO STRIKE FAIRCHILD'S
LOCAL RULE 3.1 DISCLOSURE
CASE NO. 07-2638 JSW (EDL)

1-SF/7627811.1

1    figure is based on AOL1414").)  Despite AOS's having called Fairchild's attention to this

2    deficiency during the meet and confer process, Fairchild has refused to rectify the

3    deficiency and supplement its Disclosures.  (Schuman Decl., Ex. B, at p. 3.)

4    **IV.    CONCLUSION**

5         In sum, Fairchild is required to provide AOS with a disclosure that complies with

6    the Patent Local Rules.  That means it must either: (1) provide claim charts and other

7    information for each accused AOS product; or (2) eliminate from its identification of

8    accused AOS products those for which it cannot or will not provide the information

9    required by the Patent Local Rules.  In any event, AOS should not be compelled to

10   provide discovery regarding its entire product line based on the demonstrably incorrect

11   assertion of Fairchild that all of AOS's products are identical for purposes of

12   infringement.  The Court should strike Fairchild's Patent Local Patent L.R. 3-1 Disclosure

13   and compel Fairchild to serve disclosures compliant with Patent Local Rule 3-1 by

14   December 4, 2007.

15   Dated:    November 13, 2007              MORGAN, LEWIS & BOCKIUS LLP

16                                           By:   /s/ Brett M. Schuman

17                                              Brett M. Schuman
                                                *Attorneys for Plaintiffs and*
18                                              *Counterclaim Defendants Alpha &*
                                                *Omega Semiconductor, Ltd. and Alpha*
19                                              *& Omega Semiconductor, Inc.*

20

21

22

23

24

25

26

27

28

                                        9    REPLY TO AOS'S MOTION TO STRIKE FAIRCHILD'S
                                             LOCAL RULE 3.1 DISCLOSURE
                                             CASE NO. 07-2638 JSW (EDL)

1-SF/7627811.1