TOWNSEND AND TOWNSEND AND CREW LLP
ERIC P. JACOBS (State Bar No. 88413)
PETER H. GOLDSMITH (State Bar No. 91294)
ROBERT A. McFARLANE (State Bar No. 172650)
IGOR SHOIKET (State Bar No. 190066)
Two Embarcadero Center, 8th Floor
San Francisco, California  94111
Telephone:    (415) 576-0200
Facsimile:    (415) 576-0300
E-mail:       epjacobs@townsend.com
              phgoldsmith@townsend.com
              ramcfarlane@townsend.com
              ishoiket@townsend.com

Attorneys for Defendant and Counterclaimant
FAIRCHILD SEMICONDUCTOR CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALPHA & OMEGA SEMICONDUCTOR, INC., a California corporation; and ALPHA & OMEGA SEMICONDUCTOR, LTD., a Bermuda corporation,<br><br>    Plaintiffs and Counterdefendants,<br><br>        v.<br><br>FAIRCHILD SEMICONDUCTOR CORP., a Delaware corporation,<br><br>    Defendant and Counterclaimant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. C 07-2638 JSW (EDL)<br>(Consolidated with Case No. C 07-2664 JSW)<br><br>**FAIRCHILD SEMICONDUCTOR CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER TO PROHIBIT DISCLOSURE OF CONFIDENTIAL INFORMATION TO DR. RICHARD A. BLANCHARD**<br><br>Date:    December 18, 2007<br>Time:    9:00 a.m.<br>Ctrm:    Courtroom E, 15th Floor<br>Judge:   Hon. Elizabeth D. Laporte |

## I. INTRODUCTION

Dr. Richard A. Blanchard is a well-known expert in power MOSFET technology, the technical field at issue in this case. He has decades of relevant industry experience, holds more than 130 patents, has published technical books and articles, and holds a Ph.D. in electrical engineering from Stanford University. For this reason, Fairchild Semiconductor Corporation ("Fairchild") retained Dr. Blanchard to testify as an independent expert in this case on technical issues, including infringement and validity for the patents-in-suit. In addition to his technical background, he is particularly well-qualified to serve as an expert witness because he has served in that capacity in many cases in the past. His background and experience will therefore be highly useful to the Court in assessing the complex technical issues in this case.

Alpha & Omega Semiconductor, Inc., and Alpha & Omega Semiconductor, Ltd., (collectively, "AOS"), however, seek to stop Dr. Blanchard from testifying. Through its present motion, AOS is trying to block Dr. Blanchard's access to confidential information[1] in an effort to undercut his ability to testify on key technical issues in the case. AOS is making this motion for a simple reason – they know Dr. Blanchard is an outstanding expert and do not want the Court and Fairchild to benefit from his expertise.

Long before the present case, AOS became familiar with Dr. Blanchard's expertise in connection with a patent infringement case based on inventions he developed. By taking his deposition in that case, AOS learned about his technical experience and expertise, and also gained first-hand experience with his ability to testify about technical issues. Dr. Blanchard plainly impressed AOS, because once the present action commenced, AOS contacted him about the possibility of becoming their expert. If he had accepted the engagement, he would have needed to review AOS's confidential information in connection with his work on the case, which AOS obviously thought was acceptable at that time. He declined, though, because Fairchild had already retained him. Ever since Dr. Blanchard rejected AOS's invitation to work with them, AOS has been on a campaign

---

[1] In this brief, the term "confidential information" refers to information designated as "Highly Confidential - Attorneys' Eyes Only" or "Confidential" under the Protective Order.

to keep him from working on this case by barring his access to AOS's confidential information. For the reasons set forth below, AOS's motion should be denied.

Dr. Blanchard should be permitted to review AOS's confidential information because there is no risk that he will misuse the information. He has agreed to comply with the Protective Order in this case and has a long history of abiding by Protective Orders and confidentiality agreements. Further, his access is necessary and appropriate because he possesses unique expertise in the field of technology which is central to this case. His review of confidential information will permit him to utilize his technical expertise as an expert witness to assist the parties and the Court to understand and resolve key issues of patent infringement, validity, and other issues in this case. For these reasons, Dr. Blanchard should be allowed to review AOS's confidential information.

Despite these facts, AOS objects to Dr. Blanchard on the grounds that his consulting work and patents allegedly create a risk that he will misuse AOS's confidential information. For the reasons set forth below, AOS's arguments are without merit. Fairchild therefore respectfully requests that AOS's motion be denied and that Dr. Blanchard be permitted to review AOS's confidential information.

**II.   BACKGROUND**

This is an action involving patent infringement claims both by AOS against Fairchild and by Fairchild against AOS. All of the accused products in the action relate to power metal oxide semiconductor field effect transistors ("power MOSFETs"). A power MOSFET is essentially a switch. In simple terms, when the switch is turned on by applying voltage to a "gate," the device allows current to flow through a "channel" in the device (from the "source" to the "drain"). Conversely, when the gate is turned off, the device does not allow current to flow through the device. This action includes issues of patent infringement and validity, all of which relate to particular designs for power MOSFET devices.

Due to the technical complexity of this case, Fairchild plans to present expert testimony to explain, among other things, the background of the technology, how a person of ordinary skill in the art would interpret the claim language of the patents-in-suit, why AOS infringes valid claims of Fairchild's patents-in-suit, and why the claims of AOS's patents-in-suit are not infringed and are invalid. Fairchild retained Dr. Blanchard to testify on these topics and others due to his unique

expertise and experience in the power MOSFET industry.

Dr. Blanchard has over 35 years of experience in the semiconductor and electronics industries. (Declaration of Dr. Richard A. Blanchard in Support of Fairchild's Opposition to Plaintiff's Motion for a Protective Order ("Blanchard Decl."), ¶ 3). Additionally, he has testified in court and in deposition on numerous occasions as an expert witness, and has also served as an arbitrator and as a court-appointed special master. (Blanchard Decl., ¶ 4). He has published several books and numerous articles on semiconductor design and process development, as well as failure analysis. (Blanchard Decl., ¶ 4). He also holds more than 130 U.S. patents on semiconductor technology, and is a member of the Institute of Electrical and Electronic Engineers, the Electrostatic Discharge Society, and the International Microelectronics and Packaging Society. (Blanchard Decl., ¶ 4). Many of his patents and published articles relate to power MOSFET technology. (Blanchard Decl., ¶ 5). He received a Ph.D in electrical engineering from Stanford University, as well as bachelor's and master's degrees in electrical engineering from the Massachusetts Institute of Technology. (Blanchard Decl., ¶ 2). Dr. Blanchard's doctoral thesis was on the subject of breakdown mechanisms in power MOSFET devices, which is one of the key issues in this action. (Blanchard Decl., ¶ 2). In sum, his background and experience render him uniquely suited to testify concerning technical issues in this action.

### III.    LEGAL STANDARD

When a designating party – here, AOS – objects to a proposed disclosure of confidential information, a court must balance the receiving party's "interest in electing the experts most beneficial to its case" against the designating party's "interest in protecting its trade secrets from disclosure to competitors."[2] *Advanced Semiconductor Materials America Inc. v. Applied Materials, Inc.*, 43 U.S.P.Q.2d 1381, 1384 (N.D. Cal. 1996); *see also Telular Corp. v. Vox2, Inc.*, 2001 WL 641188, *1 (N.D. Ill. 2001) (same). The receiving party has a strong interest in maintaining its choice of experts, and the designating party cannot hold "the power of veto over its adversary's choice of experts."

---

[2] The term "designating party" refers to the party that designated the information as confidential under the Protective Order. The term "receiving party," in contrast, is the party that received the information that the designating party designated as confidential.

1  *Advanced Semiconductor*, 43 U.S.P.Q.2d at 1384.  The court will also consider the specific expertise
2  of the consultant and whether other consultants possess similar expertise.  *Id.* (expert had
3  qualifications "other designated experts may not possess"); *see also Nellson Northern Operating, Inc.*
4  *v. Elan Nutrition, LLC*, 238 F.R.D. 544, 547 (D. Vt. 2006) (expert's experience is "of unique
5  relevance" to the case).

6        Absent "compelling reasons" to the contrary, a receiving party "must be permitted to present
7  the experts who it believes possess the ability to convey highly technical information to lay persons,
8  and those experts must be permitted access to confidential information." *Advanced Semiconductor*, 43
9  U.S.P.Q.2d at 1384; *see also Nellson*, 238 F.R.D. at 547 (rejecting designating party's suggestion that
10  the receiving party should use an "expert who does not currently work" in the relevant industry).  The
11  receiving party "must have latitude to choose the experts that it believes have the necessary expertise
12  and ability to convey highly technical information to the Court." *Nellson*, 238 F.R.D. at 547.

13        Moreover, to preclude access the designating party has the burden to make two showings:
14  First, the designating party must show that the information disclosed would be useful to their
15  competitors; second, the designating party must show that the receiving party's expert is in a position
16  that would allow the information to be exploited by competitors.  *U.S. Gypsum Co. v. Lafarge North*
17  *America, Inc.*, 2004 WL 816770, *1 (N.D. Ill. 2004).  Fear alone that the expert will consult in the
18  industry in the future and inadvertently misuse the designating party's confidential information is not
19  sufficient competitive injury that outweighs the receiving party's strong interest in selecting the most
20  suitable expert. *Advanced Semiconductor*, 43 U.S.P.Q.2d at 1384; *see also Telular*, 2001 WL 641188,
21  *3-4 ("unsubstantiated fear" that expert "may compete with [the designating party] in the future is not
22  sufficient to demonstrate risk of competitive injury to [the designating party] that outweighs [the
23  receiving party's] right to the expert of its choice").

24  **IV.   ARGUMENT**

25        **A.   Dr. Blanchard Has A Long History Of Properly Maintaining Confidential
26             Information**

27        Dr. Blanchard's access to confidential information is appropriate because he has a long history
28  of complying with Protective Orders and other confidentiality agreements.  Over the past five years,

1  he has worked on more than 50 consulting matters and has signed confidentiality agreements for
2  virtually every engagement. (Blanchard Decl., ¶ 9). He has never been accused of breaching any of
3  those agreements. (Blanchard Decl., ¶ 11). Similarly, he agreed to be bound by several Protective
4  Orders in other cases, including at least three in the past five years, and he never violated the terms of
5  those orders. (Blanchard Decl., ¶¶ 10-11). Here, Dr. Blanchard has signed the undertaking for the
6  Protective Order entered in this case and thus (1) agreed that he will be bound by all terms of the
7  Protective Order; (2) acknowledged that failure to comply could result in sanctions and punishment in
8  the form of contempt; and (3) solemnly promised to not disclose in any manner any information or
9  item that is subject to the Protective Order to any person or entity except in strict compliance with the
10 terms of the Protective Order. (Blanchard Decl., ¶ 10). In view of Dr. Blanchard's agreement to be
11 bound by the Protective Order in this case and his long, flawless track record of maintaining
12 confidential information of others, AOS's alleged concerns about Dr. Blanchard's ability to do the
13 same in this case are unfounded.

**B.    Dr. Blanchard Should Have Access to Confidential Information Because His Expertise Is Uniquely Relevant To This Case**

16      In addition to the reasons set forth above, Dr. Blanchard should be given access to confidential
17 information because he is uniquely qualified to testify in the present case. He is an expert in power
18 MOSFET technology - the same technology at issue in this case. As set forth above, he has many
19 years of experience in the field and therefore has expertise which is highly relevant to the issues in this
20 case. Indeed, he is a named inventor on many patents relating to power MOSFET technology, and has
21 also co-authored several technical articles in the field. (Blanchard Decl., ¶ 5). The relevance of his
22 prior work to the issues in this case is beyond any reasonable dispute. In fact, the U.S. Patent and
23 Trademark Office ("PTO") considered Dr. Blanchard's prior work (e.g., his patents and technical
24 articles) during the prosecution of many of the patents-in-suit. (Blanchard Decl., ¶ 13). In other
25 words, the PTO reviewed Dr. Blanchard's work as evidence of the knowledge in the power MOSFET
26 field when the PTO decided whether to issue the patents-in-suit. Due to Dr. Blanchard's expertise
27 described above, he is uniquely qualified to offer opinions relevant to the technical issues in this case,
28 including patent infringement and validity. *See Nellson Northern Operating, Inc. v. Elan Nutrition,*

1  *LLC*, 238 F.R.D. 544, 547 (D. Vt. 2006) (granting access to confidential information because expert's experience was "of unique relevance" to the case).

To fully use his unique qualification in this case, however, Dr. Blanchard must be able to review confidential information, including process flows, process recipes, simulations, testing data, and other technical information. Fairchild expects to use these types of documents, among other things, to establish that AOS infringes Fairchild's patents-in-suit. Accordingly, Dr. Blanchard must be able to review these documents and other information in order to testify concerning technical issues in the case. For these reasons, Fairchild therefore respectfully requests that he be permitted to review confidential information.

## V.  AOS'S ALLEGED CONCERNS ABOUT DR. BLANCHARD ARE MERITLESS

As demonstrated above, Dr. Blanchard has expertise which makes him uniquely qualified to offer opinions in this case. Moreover, his extensive history of reviewing and maintaining confidential information of others ensures there is no legitimate concern that AOS's confidential information will be misused. Despite these facts, AOS decided to file the present motion and seeks to preclude Dr. Blanchard from reviewing its confidential information and thereby bar him from serving as an expert in this case. As demonstrated below, AOS's arguments are without merit.

As a threshold matter, all of AOS's alleged concerns about Dr. Blanchard are undercut by the fact that AOS attempted to retain Dr. Blanchard to serve as its expert in this case. Before AOS was aware that Fairchild had retained Dr. Blanchard, AOS contacted and asked him if he was willing to serve as an expert for AOS. (Blanchard Decl., ¶ 12). He, of course, declined because he was previously retained by Fairchild. (Blanchard Decl., ¶ 12). AOS's attempt to retain Dr. Blanchard, however, demonstrates that it had no concern about his ability to properly maintain confidential information, as he would have needed to review AOS's confidential information if he were retained by AOS. AOS only manufactured some objections once they learned that Fairchild had retained Dr. Blanchard, and suddenly claimed he was unacceptable and should not review confidential information. AOS's squarely inconsistent position demonstrates that its alleged concerns are not legitimate, but rather are fabricated in an effort to preclude Fairchild and this Court from benefiting from Dr. Blanchard's expertise.

1    In any event, AOS's specific arguments are meritless. AOS argues, for example, that
2 Dr. Blanchard's current consulting work in the power MOSFET industry create a risk of competitive
3 harm to AOS, because Dr. Blanchard may knowingly or unknowingly misuse AOS's confidential
4 information. (Memorandum of Points and Authorities in Support of Plaintiff's Motion for a Protective
5 Order ("Brief"), p. 4). Contrary to AOS's arguments, however, Dr. Blanchard's consulting activities
6 pose no such risk.

7    As discussed above, Dr. Blanchard has agreed to be bound by the terms of the Protective Order
8 in this action, and he therefore will not use any of AOS's confidential information in connection with
9 any of his work outside of the present case. In view of his long track record of respecting confidential
10 information, his agreement to be bound by the Protective Order is sufficient to protect AOS's
11 confidential information. Accordingly, AOS has presented no reason to believe that Dr. Blanchard
12 would ever knowingly violate the Protective Order.

13    Further, AOS has failed to establish there is a risk of Dr. Blanchard inadvertently disclosing
14 AOS's confidential information in the course of his consulting work. Other than Dr. Blanchard's
15 litigation work for Fairchild, he currently consults for only two companies concerning power
16 MOSFET technology. (Blanchard Decl., ¶ 7). His work for those companies is limited to intellectual
17 property issues. (Blanchard Decl., ¶ 7). On behalf of one company, he assists them in evaluating their
18 own patents and inventions, as well as patents owned by others. He also assists in the development of
19 the company's intellectual property. (Blanchard Decl., ¶ 7). Similarly, in his consulting work for
20 another company, he also assists in the development of their intellectual property.

21    AOS has failed to meet its burden of establishing that these consulting activities create a
22 sufficient risk of competitive harm such that his access to confidential information should be denied.
23 AOS has provided no specific reasons for why Dr. Blanchard may misuse the information he learns in
24 this action in connection with his other work. The reason for this failure is simple - there is ***no*** risk of
25 misuse. Dr. Blanchard's current consulting work in the power MOSFET field is limited in scope and
26 is designed to ensure that he does not have a conflict of interest. Indeed, Dr. Blanchard actively
27 screens potential engagements to avoid any conflict problems. (Blanchard Decl., ¶ 8). Consequently,
28 there is no risk that he would inadvertently misuse any confidential information he learns in this case

1  in connection with his other consulting work. (Blanchard Decl., ¶ 8). Moreover, his outstanding track
2  record of properly protecting confidential information of others demonstrates that he is capable of
3  protecting AOS's confidential information. In short, AOS has failed to establish there is any
4  meaningful risk of harm to AOS if Dr. Blanchard has access to its confidential information. The mere
5  fact that he currently consults in the power MOSFET industry is an insufficient reason to bar his
6  access to confidential information. *See Advanced Semiconductor Materials America Inc. v. Applied*
7  *Materials, Inc.*, 43 U.S.P.Q.2d 1381, 1384 (N.D. Cal. 1996) (holding that a party cannot successfully
8  object to an expert simply because the expert is an "active industry consultant").

9       AOS also argues that Dr. Blanchard's access to confidential information should be denied
10 because he is a prolific inventor and is a named inventor on many patents and patent applications.
11 (Brief, pp. 4-6). AOS, however, fails to explain why this fact creates a risk that Dr. Blanchard will
12 misuse AOS's confidential information. To the extent they contend he may seek patents covering
13 AOS's products and processes, the argument should be rejected for the same reasons discussed above.
14 In particular, Dr. Blanchard's agreement to be bound by the Protective Order in the present case, as
15 well as his long track record of dealing with confidential information properly, ensures that his work
16 in developing patents does not create a risk of competitive harm to AOS. To the extent that AOS
17 objects to Dr. Blanchard simply because he has patents in a relevant field, AOS's argument should be
18 rejected as it would disqualify any expert, like Dr. Blanchard, who has been awarded patents due to
19 the expert's significant contributions to the field. If AOS's argument were taken to its logical
20 conclusion, the only persons who could serve as experts would be ones who have **no** patents, **no**
21 consulting work, and, in short, **no** relevant experience at all. This argument defies logic and should be
22 rejected. *AOS's argument is also belied by the fact that AOS's own expert is a named inventor on*
23 *power MOSFET patents and patent applications which are owned by a competitor in the industry.*
24 (Declaration of Matthew R. Hulse in Support of Fairchild's Opposition to Plaintiff's Motion for a
25 Protective Order ("Hulse Decl."), Exh. 5). Despite this fact, AOS has asserted that its expert should be
26 permitted to access Fairchild's confidential information. (Hulse Decl., Exh. 6). AOS has failed to
27 explain why it believes its expert should be given access - and Dr. Blanchard should not - even though
28 they both have been involved in developing patents in the power MOSFET industry. (Hulse Decl.,

1  Exh. 7). AOS's inconsistent position demonstrates their objection to Dr. Blanchard is baseless.

2  AOS further argues that Dr. Blanchard's access should be denied because discovery is at an
3  early stage and Fairchild has retained another technical consultant. (Brief, p. 6). The gist of AOS's
4  argument appears to be that Fairchild will not be prejudiced if it cannot use Dr. Blanchard as an expert
5  because Fairchild has already retained another technical consultant, and it has time to retain others if
6  necessary. The flaw in this argument is that, as demonstrated above, Dr. Blanchard has unique
7  expertise which will be very difficult, if not impossible, to find in other experts. He has more than 35
8  years of experience in the semiconductor industry, has published several books on semiconductor
9  design and process development, is a named inventor on over 130 patents (including many relating to
10 power MOSFET technology), and has a Ph.D. in electrical engineering from Stanford University.
11 (Blanchard Decl., ¶ 2). Additionally, his own patents and publications are cited references on many of
12 the patents-in-suit in this case. (Blanchard Decl., ¶ 13). In other words, Dr. Blanchard is uniquely
13 qualified to testify about the technical issues in this case.

14 It will be very difficult to find another expert with Dr. Blanchard's level of technical expertise
15 relevant to this case. Although Fairchild has retained another person, Dr. Krishnaswamy, as a
16 technical consultant, she lacks the depth of Dr. Blanchard's expertise and experience in the power
17 MOSFET industry, has no prior testimonial experience as an expert consultant in patent litigation, and
18 will not testify as an expert in this case. Accordingly, AOS's suggestion that Dr. Blanchard can be
19 replaced easily is without merit.

20 Finally, AOS argues that Dr. Blanchard's access should be denied because he has not disclosed
21 all of his consulting activities for the past five years. (Brief, p. 6). Contrary to AOS's argument, this
22 fact should not bar him from accessing AOS's confidential information.

23 Fairchild has disclosed all of Dr. Blanchard's current activities which are relevant to this case.
24 Specifically, Fairchild has disclosed all of Dr. Blanchard's current consulting activities in the power
25 MOSFET field. (Blanchard Decl., ¶ 7). Because virtually all of AOS's confidential information
26 relates to power MOSFET technology, the information Dr. Blanchard has disclosed about his
27 consulting work is sufficient to assess whether there would be any problems for him to access AOS's
28 confidential information. Nevertheless, Dr. Blanchard has also disclosed every case in which he has

testified as an expert or consultant in the past five years, and has also provided a detailed resume and a list of all of his patents and publications. (Blanchard Decl., Exh. 1).

Dr. Blanchard is unable to provide further information about his prior consulting activities because he has confidentiality agreements with his clients, and therefore is unable to disclose his work without permission. (Blanchard Decl., ¶ 9). Given that he has worked on over 50 matters in the past five years, it is simply not feasible for him to obtain permission from all of his former clients to disclose his work to AOS. (Blanchard Decl., ¶ 9). He has, however, received permission from his current clients in the power MOSFET field so that he was able to disclose to AOS his current work in the industry. (Blanchard Decl., ¶ 9).

In sum, Dr. Blanchard has disclosed sufficient information for AOS and the Court to properly assess whether he should have access to confidential information. His prior work is simply irrelevant to the issue of whether there is a risk he may misuse confidential information presently or in the future. AOS's position that it needs to know Dr. Blanchard's prior consulting work is undercut by the fact that AOS, in a prior case, did not believe such information was relevant at all to evaluate protective order issues. Specifically, when AOS was involved in a patent infringement action against Siliconix, AOS agreed to a Protective Order in which experts did not need to disclose *any* information about the expert's prior work to be approved under the Protective Order. (Hulse Decl., Exh. 1 at p. 7 (section 4.1)). Instead, AOS’s Protective Order merely required the expert to disclose his or her name, address, present employer, title, resume, and a signed undertaking for the Protective Order. (Hulse Decl., Exh. 1 at p. 7 (section 4.1)). Given that Dr. Blanchard's disclosure about his background and experience far exceeds the disclosure required from AOS's Protective Order in the prior case, AOS’s objection based on the scope of Dr. Blanchard’s disclosure is disingenuous and should be rejected.

## VI. CONCLUSION

For the foregoing reasons, Fairchild respectfully requests that the Court deny AOS's motion for a protective order, and permit Dr. Blanchard to have access to AOS's confidential information.

/ / /

/ / /

/ / /

| | | |
|---|---|---|
| 1 | DATED:  November 27, 2007 | Respectfully submitted, |

By: /s/*Igor Shoiket*
Eric P. Jacobs
Peter H. Goldsmith
Robert A. McFarlane
Igor Shoiket
TOWNSEND AND TOWNSEND AND CREW LLP
Two Embarcadero Center, 8th Floor
San Francisco, California  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300

Attorneys for Defendant and Counterclaimant
FAIRCHILD SEMICONDUCTOR CORPORATION

61216843 v1

FAIRCHILD SEMICONDUCTOR CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER
CASE NO. C 07-02638 JSW (EDL) (CONSOLIDATED WITH CASE NO. C 07-2664 JSW)          11