MORGAN, LEWIS & BOCKIUS LLP
Daniel Johnson, Jr. (State Bar No. 57409)
Brett M. Schuman (State Bar No. 189247)
Amy M. Spicer (State Bar No. 188399)
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
djjohnson@morganlewis.com
bschuman@morganlewis.com
aspicer@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Andrew J. Wu (State Bar No. 214442)
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2122
Tel: 650.843.4000
Fax: 650.843.4001
awu@morganlewis.com

Attorneys for Plaintiffs and Counterdefendants
ALPHA & OMEGA SEMICONDUCTOR, INC.
ALPHA & OMEGA SEMICONDUCTOR, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALPHA & OMEGA SEMICONDUCTOR, INC., a California corporation; and ALPHA & OMEGA SEMICONDUCTOR, LTD., a Bermuda corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR CORP., a Delaware corporation,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 07-2638 JSW (EDL)<br>(Consolidated with Case No. 07-2664 JSW)<br><br>**DECLARATION OF FRANCOIS HEBERT IN SUPPORT OF PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER**<br><br>Date: December 18, 2007<br>Time: 9:00 a.m.<br>Location: Courtroom E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-PA/3679157.1

HEBERT DECLARATION IN SUPPORT OF AOS'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER CASE NO. 07-2638 JSW (EDL) (CONSOL. WITH CASE NO. 07-2664 JSW

I, François Hébert, declare as follows:

1. I am the Chief Technology Officer for Alpha & Omega Semiconductor, Inc. ("AOS.")

2. My educational background includes a Bachelor's degree in Electrical Engineering in 1984 from the University of Waterloo, a Master's degree in Electrical Engineering in 1985 from the University of Waterloo and a Ph.D in Electrical Engineering from the University of Waterloo in 1988.

3. I have worked in the semiconductor industry for more than 20 years. I have worked in the power MOSFET industry for more than 12 years, and I have extensive knowledge regarding the structure, design, simulation, manufacturing, characterization and performance of these devices.

4. I have reviewed Fairchild Semiconductor Corporation's Opposition to Plaintiff's Motion for a Protective Order to Prohibit Disclosure of Confidential Information to Dr. Richard A. Blanchard (the "Fairchild Opposition.")

5. I know Dr. Blanchard personally, having worked with him at Fultec Semiconductor, Inc. I was Vice President of Semiconductor Technology at Fultec. Dr. Blanchard was hired by the Board of Directors and President/CEO of Fultec, before I joined Fultec, so I did not research his background in detail at that time.

6. In May 2007, shortly after AOS's lawsuit against Fairchild Semiconductor began, I contacted a number of individuals about the possibility of assisting AOS as experts or technical consultants. Dr. Richard Blanchard was one of these individuals.

7. My communications with Dr. Blanchard were very preliminary at that time. I had discussions with a number of possible candidates, and there was no need to conduct extensive due diligence until I determined who was available to assist us.

8. At the time I contacted Dr. Blanchard, I did not do an extensive search of his background at the time and was unaware of any extensive consulting work that he may have been involved in besides Fultec Semiconductor.

9. Dr. Blanchard's coordinator at Silicon Valley Expert Witness Group ("SVEWG")

1  informed me that Dr. Blanchard could not assist AOS because SVEWG had a conflict.

2  10. In October 2007, I learned that Fairchild was seeking permission to disclose AOS's confidential information to Dr. Blanchard, and that Fairchild intended to use Dr. Blanchard as its expert witness in this litigation.

11. At that time, I conducted some due diligence regarding Dr. Blanchard's consulting work.

12. I reviewed publicly available documents from the U.S. Patent and Trademark Office that disclose that Dr. Blanchard has developed intellectual property for a number of our competitors in the power MOSFET industry over the last five years including at least Fultec Semiconductor, Inc., General Semiconductor, Inc., Third Dimension Semiconductor, Inc., Siemens Corporation, and Tyco Electronics Corp.

13. These companies develop power MOSFET technology and compete with AOS in the power MOSFET industry.

14. I also reviewed recent patents from the U.S. Patent and Trademark Office on which Dr. Blanchard is a named inventor, and that are not assigned to any other person or entity.

15. It is my understanding and belief that Dr. Blanchard also develops intellectual property on a free-lance basis that he sells to the highest bidder.

16. I also understand from the Fairchild Opposition that Dr. Blanchard currently develops intellectual property for at least two of AOS's competitors in the power MOSFET industry. I do not know the identities of these two companies, but Fairchild's description of them strongly suggests that they are AOS's competitors in the power MOSFET industry.

17. I also understand that Fairchild has refused to disclose all of Dr. Blanchard's recent consulting work. This refusal only heightens AOS's concern regarding Dr. Blanchard.

18. It is my understanding the Dr. Blanchard's consulting work is not limited to developing intellectual property, but also includes research and development of new products and processes. AOS would be harmed if Dr. Blanchard used AOS's confidential information in such consulting.

19. I believe that if Dr. Blanchard is given access to AOS's confidential technical and business information, there would be a very significant risk that he would use that information, intentionally or not, in his other consulting and intellectual property development activities. For example, if he learned the confidential details of our processing or device technology, it would be impossible for him to erase those details from his mind when he is assisting other companies with very similar technology. If he learned of a particularly effective AOS process method or device structure, it would be difficult for him to advise his clients to continue using inferior methods. If he developed an improvement on an AOS process or design, it would be difficult for him to seek a patent on the improvement without disclosing the AOS design upon which the improvement would be based.

20. AOS would be significantly harmed if the confidential details regarding its products and processes and business information were to be disclosed to AOS's competitors. If competitors could copy AOS's designs and processes, AOS could lose its competitive edge, which could threaten AOS's sales if not its survival in the marketplace.

21. Likewise, AOS would be significantly harmed if the confidential details regarding its products and processes were to be disclosed or claimed in patents or patent applications by Dr. Blanchard and/or his clients. Again, mere disclosure would provide a competitive edge to AOS's competitors. It would be disastrous for AOS if another company, knowing AOS's products and processes, could obtain patents claiming those designs or processes.

22. In addition to the processes and structure employed in AOS's current products, AOS would be significantly harmed if Dr. Blanchard were to disclose, even if inadvertently, other competitive information regarding AOS's products. For example, information regarding foundries that provide manufacturing, as well as their cost, volume, and pricing information, is very sensitive and could provide a significant advantage to our competitors if it is disclosed. AOS maintains many other types of confidential information, such as financial information and competitive information, whose disclosure could harm AOS.

23. As a result, AOS is unwilling to share its confidential process flows, recipes, wafer information, or other confidential information with Dr. Blanchard because AOS would suffer irreparable competitive harm if Dr. Blanchard were to, intentionally or not, use or disclose such information in the course of his consulting for our competitors.

24. If I had known in May 2007 the details regarding Dr. Blanchard's consulting work for AOS's competitors, AOS would not have been able to hire him as an expert in the litigation. Once we learned about his extensive consulting activities, we would not have been able to disclose to him the information he would need as an expert witness. AOS simply values the confidentiality of its technical and competitive information too highly to risk disclosing it to Dr. Blanchard.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to my personal knowledge.

Executed this 4th day of December, 2007, in Sunnyvale, California.

By _____
François Hébert