MORGAN, LEWIS & BOCKIUS LLP
Daniel Johnson, Jr. (State Bar No. 57409)
Brett M. Schuman (State Bar No. 189247)
Amy M. Spicer (State Bar No. 188399)
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
djjohnson@morganlewis.com
bschuman@morganlewis.com
aspicer@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Andrew J. Wu (State Bar No. 214442)
Harry F. Doscher (State Bar No. 245969)
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2122
Tel: 650.843.4000
Fax: 650.843.4001
awu@morganlewis.com
hdoscher@morganlewis.com

Attorneys for Plaintiffs and Counterdefendants
ALPHA & OMEGA SEMICONDUCTOR, INC.
ALPHA & OMEGA SEMICONDUCTOR, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALPHA & OMEGA SEMICONDUCTOR, INC., a California corporation; and ALPHA & OMEGA SEMICONDUCTOR, LTD., a Bermuda corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR CORP., a Delaware corporation,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 07-2638 JSW (EDL)<br>(Consolidated with Case No. 07-2664 JSW)<br><br>**PLAINTIFF'S REPLY TO FAIRCHILD SEMICONDUCTOR CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**<br><br>Date:     December 18, 2007<br>Time:    9:00 a.m.<br>Ctrm:    Courtroom E, 15th Floor<br>Judge:   Hon. Elizabeth D. Laporte |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AOS'S REPLY ISO MOTION FOR PROTECTIVE ORDER, CASE NO.
07-2638 JSW (EDL)
(CONSOL. WITH CASE NO. 07-2664 JSW)

## I. **INTRODUCTION**

In its Opposition, Fairchild concedes that it has failed to provide the disclosure required by the Stipulated Protective Order filed by Judge White on August 2, 2007. Having taken the benefit of full disclosure regarding both of AOS's technical experts, Fairchild now asks the Court to relieve it of the "burden" of complying with the Court's Order.

Even from Fairchild's insufficient disclosure, however, AOS can clearly see a substantial threat of competitive harm should Dr. Blanchard be given access to its highly confidential and proprietary information. Dr. Blanchard consults for several of AOS's major competitors, on products that are substantially similar to AOS's. This is not sporadic or tangential contact with AOS's competitors -- Dr. Blanchard makes his living helping AOS's competitors to develop new products and obtain patents. He is the inventor of 47 semiconductor patents in the past five years alone – the vast majority of which are assigned to AOS' competitors. According to Fairchild, Dr. Blanchard has worked on more than 50 consulting matters in the last five years, although Fairchild will not identify the clients. AOS's confidential information must not be disclosed to a consultant whose business so often calls for him to make use of such information.

Further, Fairchild has not even disclosed the full extent of Dr. Blanchard's current work. Fairchild's refusal to comply with the Protective Order prejudices AOS's ability to fully evaluate the risk of competitive harm posed by the disclosure of AOS's confidential information to Dr. Blanchard, which is almost certainly much greater than AOS has been able to identify from its own independent investigation.

Fairchild cannot excuse its failure to comply with Judge White's Order with irrelevant arguments drawn from AOS's preliminary contact with a number of potential experts, including Dr. Blanchard, for whom it had yet to conduct due diligence, nor with arguments regarding Protective Orders in unrelated cases. Nor can it gloss over the very real threat to AOS's business posed by Dr. Blanchard by providing assurances that Dr. Blanchard will not misuse AOS's highly confidential and proprietary information in his other business ventures. If Dr. Blanchard cannot provide the disclosure required by the Protective Order, Fairchild is free to retain another expert.

Indeed, AOS has approved Fairchild's other technical expert, Dr. Krishnaswamy, and Fairchild has offered to proceed with the claim construction exchanges under Patent L.R. 4-1 to 4-3 without Dr. Blanchard. Any prejudice Fairchild may suffer from a protective order entered against Dr. Blanchard is solely the result of its own intransigence.

## II. ARGUMENT

### A. Fairchild refuses to comply with the terms of the Protective Order.

The Protective Order entered by this Court requires certain disclosures of current and past information regarding proposed experts to allow the parties to evaluate the risk of competitive harm from disclosing their confidential information to the experts. Fairchild refuses to provide the disclosures required by the Court's Order for Dr. Blanchard.[1] Even while refusing to disclose the "history" to which it refers, Fairchild seeks to persuade this Court to relieve it of complying with the Court's Order by touting Dr. Blanchard "long history of complying with Protective Orders and other confidentiality agreements." *See* Fairchild's Opp. to Pl.'s Mtn. for Protective Order (Docket No. 106) ("Opposition") at 4:27-28. If, as Fairchild asserts, Dr. Blanchard's agreement to be bound by the Protective Order was itself sufficient, then similar disclosure would not be included in the Northern District's own model Stipulated Protective Order and there would never be grounds for objecting to an expert who signed a Protective Order. *See* Decl. of Harry F. Doscher In Support of Pl.'s Reply In Support of Pl. Mtn. For a Protective Order (the "Doscher Decl.") at ¶ 1, Exh. A..

### B. Disclosure To Dr. Blanchard Poses A Significant Risk Of Disclosure Of AOS's Confidential Information To Companies That Compete With AOS.

#### 1. Even the insufficient disclosure made by Fairchild demonstrates that release of AOS's confidential information to Dr. Blanchard creates an unacceptable risk of serious competitive harm.

Dr. Blanchard has recently consulted for dozens of AOS's competitors, helping them to develop new products and to develop intellectual property. As Fairchild admits, Dr. Blanchard currently consults with and develops intellectual property related to power MOSFET transistors for at least two of AOS's competitors. *See* Opposition at 7:17-20. Fairchild characterizes Dr.

---

[1] Fairchild has provided such full disclosure for its non-testifying expert, Dr. Krishnaswamy.

1  Blanchard's current work as "limited in scope."  Opposition at 7:25.  However, Dr. Blanchard has
2  worked on "over 50 consulting projects for a variety of clients" during the past five years alone.
3  *See* Decl. of Dr. Richard A. Blanchard In Support Of Fairchild's Opp. To Pl.'s Mtn. For A
4  Protective Order (the "Blanchard Decl.") at ¶ 9.  Publicly available records reveal a prolific
5  history of commercial development of semiconductor and power MOSFET related intellectual
6  property for AOS's competitors that is anything but limited in scope.  *See e.g.* Declaration of
7  Harry F. Doscher in Support of Pl.'s Mtn for a Protective Order (Docket #81), Exh. B attachment
8  1 at 6-8, Exh. G.  Dr. Blanchard even develops intellectual property on a free-lance basis for sale
9  to AOS's competitors.  *See* Decl. of Francois Hebert In Support of Pl.'s Reply In Support of Its
10 Mtn. For A Protective Order ("Hebert Declaration") at ¶¶ 14-15.  In addition to developing
11 intellectual property, Dr. Blanchard also consults with AOS's competitors on the research and
12 development of new products.  *See* Hebert Decl. at ¶ 18.  Much of Dr. Blanchard's work has been
13 closely related to the very technology at issue in this case.  *See* Blanchard Decl. at ¶ 5; *see also*
14 Hebert Decl. at ¶ 13.

15        AOS believes that the disclosure of its confidential process flows, recipes, and other
16 technical and business information to Dr. Blanchard would create an unacceptable risk it would
17 inform his work for competitors, especially given Dr. Blanchard's long and prolific history of
18 commercial development of intellectual property and the similarities between the technologies at
19 issue in this case and those he has developed and is developing for AOS's competitors.  *See*
20 Hebert Declaration at ¶ 19.  For example, if Dr. Blanchard learned the confidential details of
21 AOS's processing or device technology, it would be impossible for him to forget those details
22 when assisting other companies with very similar technology.  *Id.*  If he learned of particularly
23 effective AOS processes or structures, it would be difficult for him to continue advising his
24 clients to use inferior methods.  *Id.*  If he sought a patent on an improvement on any AOS process
25 or design, he would have to disclose the AOS technology as prior art during prosecution.  *Id.*
26        AOS would be irreparably harmed if the confidential details regarding its technical,
27 product, process, or other business information were to be disclosed to AOS's competitors.  *See*
28 Hebert Decl. at ¶ 22.  If competitors were to copy AOS's designs or processes, they would

3   AOS'S REPLY ISO MOTION FOR PROTECTIVE ORDER, CASE NO.
    07-2638 JSW (EDL)
    (CONSOL. WITH CASE NO. 07-2664 JSW)

1 threaten AOS's sales. *Id.* at ¶ 20. If any AOS competitor were to use knowledge of AOS's products or processes to obtain a patent covering those products or processes, AOS could be enjoined from selling its products altogether. *Id.* at ¶ 21.

AOS's critical technical information should be afforded greater protection than ordinary business information; Dr. Blanchard's "confidence" that he can reliably segregate AOS's confidential information from his current power MOSFET related work is insufficient. *See Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F.Supp. 20, 21 (D. Del. 1988) (Entering protective order against disclosure of technical information to individual who "actively plies [the relevant field of engineering]" due to the real potential for competitive loss.) Indeed, "courts often afford fuller protection to technological information than . . . to ordinary business information." *Id.* at 22 (citations omitted.) As noted by the Court in *Safe Flight*, technical information is dressed in a "heavy cloak of judicial protection," and while accepting that the intended recipient was "a man of great moral fiber," the *Safe Flight* Court questioned "his human ability during future years of research to separate the applications he has extrapolated from [defendant's] documents from those he develops from his own ideas." *Id.*

Nor is Dr. Blanchard's current work the only problem—any confidential information that Dr. Blanchard obtains from AOS will be added to his "repository of other information for possible future use" in his consulting work. *Litton Indus. v. Chesapeake & Ohio Ry.*, 129 F.R.D. 528, 531 (E.D. Wis. 1990) ("The expert's raison d'etre is to assimilate information in his or her chosen field and formulate that material into various theories. The information . . . will be added to the expert's repository of other information for possible future use."); *see also Safe Flight*, 682 F.Supp. at 22. Certainly, if the scope of Dr. Blanchard's consulting activities is so vast that he cannot feasibly "track down every prior client" then it is also not feasible for him to separate confidential information from any one matter from his "repository of other information." *See* Blanchard Decl. at ¶ 9; *see also Litton Indus.* 129 F.R.D. at 531.

Fairchild tries to sidestep the issue of Dr. Blanchard's commercial activities by mischaracterizing AOS's objection as hostility towards any expert who has been awarded a patent. AOS does not believe that holding patents alone should disqualify an expert. Rather, it is

4     AOS'S REPLY ISO MOTION FOR PROTECTIVE ORDER, CASE NO.
07-2638 JSW (EDL)
(CONSOL. WITH CASE NO. 07-2664 JSW)

1  Dr. Blanchard's current and future commercial exploitation of intellectual property development

2  that makes him unacceptable under the Protective Order.[2]

### 2. The risk of competitive injury is almost certainly much greater than AOS can identify, because Fairchild discloses only a fraction of Dr. Blanchard's activities.

AOS's concern regarding Dr. Blanchard is heightened by Fairchild's refusal to describe Dr. Blanchard's consulting activities for the past five years, as required by the Protective Order, which prejudices AOS's ability to fully evaluate the risk that its confidential information will inform Dr. Blanchard's future development of intellectual property for its competitors. *See* Hebert Decl. at ¶ 17. The risk of serious competitive harm is almost certainly much greater than AOS has been able to identify from its own independent investigation.

Only by considering Dr. Blanchard's past activities can AOS determine his likely future activities. In fact, contrary to Fairchild's assertion in opposing AOS's motion that only "current" information is relevant to determining the risk of future competitive harm, Fairchild clearly *does* recognize the relevance of past work to an evaluation of the risk of future competitive harm. *Compare* Opposition at 10:11-13 *with* Declaration of Matthew Hulse In Support of Fairchild's Opposition (Docket No. 109) (the "Hulse Decl."), Ex. 7 (requiring AOS to disclose details of an expert's past activities to enable Fairchild "to assess whether his access to confidential information is appropriate.")[3] After all, this is why most Protective Orders require disclosure of past consulting activities – they are relevant to the proposed expert's future activities.

Similarly, Fairchild has only selectively disclosed Dr. Blanchard's current consulting

---

[2] Among other reasons, this distinguishes AOS's objection to Dr. Blanchard from Fairchild's argument regarding AOS's own expert, Dr. Salama. See Opposition at 8:22-9:1. As opposed to Dr. Blanchard's commercial activities, AOS's expert performs strictly academic research. *See* Doscher Decl. Exh. B; *see also* fn. 3, *infra*.

[3] Indeed, Fairchild put AOS put to great trouble responding to Fairchild's repeated demands for information regarding work performed several years ago by one of AOS experts, Dr. Andre Salama, in order to evaluate the risk of future competitive harm to Fairchild. *See* Hulse Decl., Exhs. 3, 5, 7. Fairchild asserted there was an undisclosed relationship between one of AOS's experts, Dr. Andre Salama, and Fuji Electric based on the fact that Dr. Salama is a named co-inventor along with persons now employed by Fuji on three patents and applications now owned by Fuji. *See* Hulse Decl., Exh. 5. Fairchild lifted its objection only after <u>repeated</u> assurances that Dr. Salama had never had any relationship with Fuji, that his work was strictly academic, that he was a named co-inventor only because of his role as academic advisor to graduate students who later went on to be employed by Fuji, and that the patents and applications were assigned to Fuji not by Dr. Salama but by the University of Toronto. *See* Doscher Decl. Exhs. B, C.

activities, asserting that only consulting activities within the power MOSFET field are relevant. Opposition at 9:23-25. Contrary to Fairchild's assertion, if given access to AOS's confidential information Dr. Blanchard would be privy to certain highly confidential evidence in this case that is uniformly relevant across the semiconductor industry, for example, wafer sourcing, pricing and delivery information, general manufacturing process information, and information related to third party fabricators and the terms of their commissions. Inadvertent disclosure of any of this information, even to companies not directly involved in manufacturing power MOSFET transistors, could impact the terms on which AOS is able to obtain materials or services, could damage AOS's relationships with third parties, could foreclose potential new lines of business, or otherwise result in severe competitive harm. Hebert Decl. at ¶ 22.

### C. None Of The Arguments In Fairchild's Opposition Obviate The Harm To AOS.

First, Fairchild's discussion of the Protective Order in the *Siliconix* case is simply irrelevant. The Protective Order in the *Siliconix* case is not the Protective Order entered by the Court here, nor are the issues being litigated the same. Equally irrelevant is Fairchild's assertion that full disclosure would be too burdensome under the terms of the Protective Order it agreed to, and which mirror the relevant terms of the model Stipulated Protective Order of the Northern District of California. *See* Doscher Decl., Exh. A. Whatever "burden" Fairchild now complains of, it is a burden Fairchild knowingly and voluntarily undertook. *See* Doscher Decl., Exh. D. Having taken the benefit of full disclosure regarding both of AOS's technical experts, Fairchild should not now be relieved it of the "burden" of complying with the Court's Order.

Second, Fairchild attempts to make much of the fact that AOS contacted Dr. Blanchard regarding possible employment in this matter. Opposition at 6:18-28. Dr. Blanchard was only one of a number of potential experts AOS contacted to explore their availability for possible employment. *See* Hebert Decl. at ¶ 6. Since these contacts were preliminary, AOS did not at that time conduct due diligence regarding their backgrounds. *See* Hebert Decl. at ¶ 7. AOS was not aware of Dr. Blanchard's extensive commercial activity for numerous competitors until after performing due diligence following Fairchild's notice of their intent to disclose AOS's

confidential information to Dr. Blanchard. *See* Hebert Decl. at ¶¶ 8, 10-11. Had Dr. Blanchard revealed his extensive commercial activities when AOS initially contacted him, AOS would not have been able to retain him as an expert. *See* Hebert Decl. at ¶ 24. AOS is simply unwilling to disclose its confidential information to someone, like Dr. Blanchard, in such a position to disclose its confidential information to AOS's competitors. *See* Hebert Decl. at ¶ 23.

Third, Dr. Blanchard is certainly not "unique" as an expert in power MOSFET related technology. Indeed, there have already been three other technical experts approved in this case, and Fairchild has had ample opportunity to find another expert with whom it can comply with the Protective Order. *See Safe Flight*, 682 F. Supp. at 22 (Dismissing claim that engineer was "uniquely qualified" as speculative because the party had "yet to investigate the availability of qualified outside experts.") Indeed, AOS has approved Fairchild's other technical expert, Dr. Krishnaswamy, and Fairchild has offered to proceed with the claim construction exchanges under Patent L.R. 4-1 to 4-3 without Dr. Blanchard. *See* Doscher Decl., ¶ 5.

### III. CONCLUSION

For the foregoing reasons, AOS respectfully requests that the Court grant its motion for a protective order denying Dr. Blanchard access to AOS's confidential information.

Dated:    December 4, 2007                    MORGAN, LEWIS & BOCKIUS LLP


                                              By:  /s/ Harry F. Doscher
                                                    Harry F. Doscher

                                              *Attorneys for Plaintiffs and Counterdefendants Alpha & Omega Semiconductor, Inc. and Alpha & Omega Semiconductor, Ltd.*