# EXHIBIT J

PATENT
Attorney Docket No.: 18865-17US
Client Reference No.: 17732/722600

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | Examiner:    Jackson Jr., J. |
| Sze-Ki Mo, et al. | Art Unit:    2815 |
| Application No.: 08/970,221 | AMENDMENT |
| Filed: November 17, 1997 | |
| For: FIELD EFFECT TRANSISTOR AND METHOD OF ITS MANUFACTURE | |

Assistant Commissioner for Patents
Washington, D,C.  20231

Sir:

In response to the Office Action mailed December 5, 2000, please amend the above-captioned patent application as set forth below.

IN THE CLAIMS:

Please cancel claims 13, 18-22 and 54 without prejudice to renewal and amend claims 1, 8, 47, 50, 53 and 55 as set forth below.  A marked-up version of the amended claims is included at the end of the remarks section.

1. (Thrice Amended) A trenched field effect transistor comprising:

a semiconductor substrate having dopants of a first conductivity type;

a trench extending a predetermined depth into said semiconductor substrate;

a pair of doped source junctions having dopants of the first conductivity type, and positioned on opposite sides of the trench;

a doped well having dopants of a second conductivity type opposite to said first conductivity type, and formed into the substrate to a depth that is less than said predetermined depth of the trench; and

Brian Sze-Ki Mo et al.
Application No.: 08/970,221
Page 2

9        a doped heavy body having dopants of the second conductivity type, and

10      positioned adjacent each source junction on the opposite side of the source junction from the

11      trench, said heavy body extending into said doped well to a depth that is less than said depth

12      of said doped well,

13              wherein the heavy body forms an abrupt junction with the well and the depth

14      of the junction, relative to the depth of the well, is adjusted so that a transistor breakdown

15      initiation point is spaced away from the trench in the semiconductor, when voltage is applied

16      to the transistor.

1        (Thrice Amended) An array of transistor cells comprising:

2                a semiconductor substrate having a first conductivity type;

3                a plurality of gate-forming trenches arranged substantially parallel to each

4        other, each trench extending a predetermined depth into said substrate and  the space between

5        adjacent trenches defining a contact area;

6                a pair of doped source junctions, positioned on opposite sides of the trench

7        and extending along the length of the trench, the source junctions having the first

8        conductivity type;

9                a doped well having a second conductivity type with a charge opposite that of

10      the first conductivity type, the doped well formed in the semiconductor substrate between

11      each pair of gate-forming trenches;

12              a doped heavy body having the second conductivity type formed inside the

13      doped well and positioned adjacent each source junction, the deepest portion of said heavy

14      body extending less deeply into said semiconductor substrate than said predetermined depth

15      of said trenches; and

16              alternating heavy body and source contact regions defined at the surface of the

17      semiconductor substrate along the length of the contact area,

18              wherein the heavy body forms an abrupt junction with the well, and a depth of

19      the heavy body relative to a depth of the well is adjusted so that breakdown of the transistor

20      originates in the semiconductor in a region spaced away from the trenches when voltage is

21      applied to the transistor.



Brian Sze-Ki Mo et al.
Application No.: 08/970,221
Page 3

PATENT

1             1. (Twice Amended) A trenched field effect transistor formed on a substrate,

2   comprising:

3             a plurality of trenches formed in parallel along a longitudinal axis, the

4   plurality of trenches extending into the substrate to a first depth;

5             a doped well extending into the substrate between each pair of trenches;

6             a pair of doped source regions formed on opposite sides of each trench; and

7             a doped heavy body formed inside the doped well adjacent each source

8   region, the doped heavy body extending into the doped well to a second depth that is less

9   than the first depth,

10            wherein the doped heavy body:

11            forms a continuous doped region along substantially the entire longitudinal

12  axis of a trench, and

13            forms an abrupt junction with the well, and a depth of the heavy body junction

14  relative to a maximum depth of the well, is adjusted so that a peak electric field in the

15  substrate is spaced away from the trench when voltage is applied to the transistor.

1             50. (Twice Amended) The trenched field effect transistor of claim 1 further

2   comprising an epitaxial layer having dopants of the first conductivity type, and formed

3   between the substrate and the doped well, with no buried layer formed at an interface

4   between the epitaxial layer and the substrate.

1             53. (Once Amended) The trenched field effect transistor of claim 6, further

2   comprising:

3             an epitaxial layer having the first conductivity type formed between the substrate

4   and the well, with no buried layer formed at an interface between the epitaxial layer and the

5   substrate.



Sze-Ki Mo, et al.                                                PATENT
Application No.: 08/970,221
Page 5

These claims were added for the specific purpose of further distinguishing over the cited reference Hshieh '543. Hshieh '543 teaches forming an N+ buried layer (16) between the epitaxial N- layer (or drift region 4B) and the substrate 10 to ensure "that avalanche breakdown occurs at the buried layer/body region ...." [Hshieh '543, col. 2, lines 6-10]. Applicants were the first to find that a trench transistor structure can be formed with a shallow heavy body structured in a way that the need for such buried layers is eliminated with very little, if any, compromise in the transistor cell density. Applicants respectfully submit that, for the reasons discussed below, there should be no ambiguity associated with the claimed structure which specifies the relative depths of the heavy body and the well regions in the trench transistor (see below). Applicants have nevertheless amended claims 50, 53 and 55 to remove the language the rejection finds vague. Withdrawal of this rejection is therefore respectfully requested.

- Section 102(e) or 103(a): Hshieh '543

The Office Action maintains the previous rejection of claims 1, 2, 6, 8-11, 46-53, and 55 under 35 U.S.C. §102(e) as anticipated by or, in the alternative, under 35 U.S.C. §103(a) as obvious over Hshieh '543. The rejection states:

> "Applicant's argument that Hshieh does not disclose an 'abrupt'
> junction is unpersuasive. The junction in Hshieh is abrupt. There are no
> particularly claimed dopant concentrations which would structurally
> distinguish applicant's 'abrupt' junctions over the 'abrupt' junctions of
> the applied art. Accordingly 'abrupt' is merely a label which does not
> structurally distinguish applicant's claims over the applied art."

Applicants respectfully submit that this rejection not only mischaracterizes the technical import of the claim language, it misconstrues well-established law regarding adequacy of claims. The terminology "abrupt junction" is well-known to those skilled in the art as having a very well-defined meaning with specific structural significance. "Physics of Semiconductor Devices," by S.M.Sze is considered a seminal book on the subject and is widely used throughout the academic community as well as the industry. Sze devotes an entire section (section 2.3.1) on the "Abrupt Junction," and states the following at page 72: "In



Sze-Ki Mo, et al.                                                                    PATENT
Application No.: 08/970,221
Page 6

practice, most impurity profiles can be approximated by the following two limiting cases: the abrupt junction and the linearly graded junction …." Sze also explains the "profound effects" of these differently formed junctions on the "avalanche multiplication process." [Sze, bottom of page 73]. After a detailed analysis of the characteristics of the "abrupt" junction versus the "linearly graded" junction, at page 104, Sze presents the following:

"An approximate universal expression can be given as follows for the results above comprising all semiconductors studied: :

$$V_B \cong 60(E_g/1.1)^{3/2}(N_B/10^{16})^{-3/4} \quad \text{V} \qquad (79a)$$

for abrupt junctions where $E_g$ is the room-temperature bandgap in eV, and $N_B$ is the background doping in cm-3; and

$$V_B \cong 60(E_g/1.1)^{6/5}(a/3x10^{20})^{-2/5} \quad \text{V} \qquad (79b)$$

for linearly graded junctions where a is the impurity gradient in cm-4.
For diffused junctions with a linear gradient on one side of the junction and a constant doping on the other side (shown in Fig. 31, insert), the breakdown voltage lies between the two limiting cases considered previously 39 (Figs. 26 and 28). For large a and low $N_B$, the breakdown voltage of diffused junctions (Fig. 31) is given by the abrupt junction results (bottom line); on the other hand, for small a and high $N_B$, $V_B$ will be given by the linearly graded junction results (parallel lines)."



Sze-Ki Mo, et al.                                                PATENT
Application No.: 08/970,221
Page 7

Accordingly, referring to Fig. 31 of Sze (reproduced above for convenient reference), for a given background doping $N_B$, the breakdown voltage $V_B$ is lowered (parallel lines) as the impurity gradient $a$ increases until it comes to a limit at the point (on the bottom line) where the impurity gradient $a$ reaches an abrupt junction, after which $V_B$ remains constant. Thus, contrary to the rejection's characterization, "abrupt" is clearly neither "merely a label" nor is it devoid of any structural significance.

Furthermore, the rejection's assertion that "there are no particularly claimed dopant concentrations which would structurally distinguish applicant's 'abrupt' junctions over the 'abrupt' junctions of the prior art" is flawed in two respects. First, no where in Hshieh '543 could there be found any mention of any junction being "abrupt." Secondly, it is well-established that mathematical precision should not be imposed on claim language for its own sake, and that an applicant has the right to claim the invention in terms that would be understood by persons of skill in the field of invention. *Modine Mfg. Co. v. United States ITC*, 75 F.3d 1545, 37 USPQ2d 1609 (Fed. Cir. 1996). This is particularly relevant in the present case where not only the structural significance of the terminology "abrupt junction" is well understood by those skilled in this art, the number of different variables involved in a structure that is an "abrupt junction" (e.g., background doping, gradient, target breakdown voltage, etc.) renders it meaningless to provide, for example, specific doping concentrations without specifying numbers for other variables. Furthermore, any numbers would also be rendered meaningless given the well-known and ever aggressive miniaturization process over time in the field of semiconductors. Dimensions such as junction depths employed in semiconductor devices at any given time often become obsolete within a two to three year period. In fact, products that are now being manufactured based on the teachings of the instant invention no longer employ the exemplary numbers provided in the instant specification (filed in November of 1997). Thus, requiring specific doping concentrations or other mathematical limitations where none should be required would unnecessarily and unfairly limit the scope of the claim applicants are otherwise entitled to.



Sze-Ki Mo, et al.                                                                          PATENT
Application No.: 08/970,221
Page 8

Independent claims 1, 8 and 47 all specify the junction formed between the "heavy body" and the "well" as being "abrupt" and, for the above reasons, therefore distinguish over the cited art. These claims, however, include additional elements that further distinguish over the cited references. Claim 1, for example, also recites "the depth of the [heavy body] junction relative to the depth of the well, is adjusted so that a transistor breakdown initiation point is spaced away from the trench ...." Again, no combination of the cited prior art teaches or suggests the claimed structure. In maintaining its rejection of the claim, however, the Office Action states: " Arguments regarding 'controlled' are unconvincing of patentability because the claimed structure does not functionally or structurally distinguish over the applied art." It is difficult to follow the reasoning behind this rejection since the relevant claim language, on its face, does clearly distinguish in both those respects. Structurally, the relevant claim language defines a specific depth for the "heavy body," and functionally, it specifies the moving away or spacing away of the "transistor breakdown initiation point ... from the trench." Contrary to the rejection's assertion, this combination clearly distinguishes over the cited references. With respect to the depth of the P+ region 24 in Hshieh '543, a reading of Hshieh '543 makes it clear that the inventors had no clue whatsoever about the possibility of having a P+ region (24) that is shallower than the well (18) and yet is capable of addressing the breakdown problem by its structure (i.e., depth and abruptness of its junction). This is so because Hshieh '543 clearly shows a P+ region 24 that is as deep or deeper than the well 18 in every figure, and in the only instance where they make a cursory mention of shallower "P+ body contact regions 24", they immediately add "... in which case the breakdown current conduction path is from body region 18 to buried layer 16." [Hshieh '543, col. 3, lines 1-6]. Hshieh '543 therefore teaches nothing more than what was already known in the art; that if the P+ body region 24 is made shallower than the well, the device would then need some other additional structure to control the point of breakdown initiation (see further discussion below). This additional structure, as taught by Hshieh '543, is an N+ buried layer 16. Hshieh '543 therefore clearly fails to teach or suggest a heavy body that is shallower than the well, and has its depth "relative to the depth of the well, [] adjusted so that a transistor breakdown initiation point is spaced away from the trench ...."



Sze-Ki Mo, et al.                                                                    PATENT
Application No.: 08/970,221
Page 9

Although not clear, in light of the §112, 2nd ¶ rejection above, it is assumed that the Examiner may have had difficulty with the use of the word "controlled." While it is not deemed necessary, to the extent that the Examiner may consider "adjusted" more appropriate in defining a structure, Applicants have amended independent claims 1, 8 and 47 to replace the word "controlled" with "adjusted." Applicants are entitled to claim this structural aspect of the present invention (i.e., relative depths of the heavy body and the well), that is also further defined functionally (impacting breakdown initiation point), without having to limit the claim to specific numerical dimensions. Applicants welcome Examiner's suggestions for any substitute words for "controlled" or "adjusted."

Hshieh '543 thus clearly neither teaches a trench field effect transistor with a "heavy body" that forms an "abrupt junction" with the well, nor one that has a "heavy body" with a depth relative to the depth of the well that causes "a transistor breakdown initiation point [to move] away from the trench." Nor does Hshieh '543 even remotely suggest the claimed combination. In fact, by teaching that a buried layer (16) is required to address the breakdown problem, Hshieh '543 teaches away from a structure that can accomplish similar functionality with a clever expedient as that of the claimed "heavy body." To be sure, the notion that a prior art diagram may "look similar" to a diagram that depicts an aspect of the invention, cannot be the basis for a 102 or 103 rejection. Often times diagrams are not to scale and significant novel and non-obvious structural features such as depth or abruptness of a junction in semiconductor technology may not be easily depicted. Again, both the diagrams and the body of Hshieh '543 not only fail to teach but also fail to suggest the claimed invention.

Independent claims 1, 8 and 47 are thus patentably distinguished over Hshieh '543. Claims 2, 5-7, 9-12, 14-17, 46, 48-53 and 55 depend from one the claims 1, 8 and 47 and therefore derive patentability therefrom. These claims, however, recite additional novel and non-obvious features that further distinguish over Hshieh '543. Claims 48 and 49, for example, describe an alternating source and heavy body contact arrangement along the longitudinal axis of a trench. No such structure is taught or suggested by Hshieh '543. Claims



Sze-Ki Mo, et al.                                                    <u>PATENT</u>
Application No.: 08/970,221
Page 10

50, 53 and 54, for example, specifically recite a heavy body which has its depth relative to the
depth of the well "adjusted to eliminate the need for any layers disposed between the epitaxial
layer and the substrate." Hshieh '543 teaches the opposite: forming a "buried layer" (16)
between the epitaxial layer (or drift region) and the substrate. Claims 1-2, 5-12, 14-17, 46-53
and 55 are therefore patentably distinguished over Hshieh '543. Accordingly, withdrawal of
this rejection is respectfully requested.

- Section 103(a): <u>Hshieh '543, Darwish '725, Nakamura '491, Bencuya '324, and Harada '050</u>

        Claims 1, 2, 5-12, 14-22, 46-55 have been rejected under 35 U.S.C. §103(a) as
being unpatentable over Hshieh '543 with Darwish '725, applicant's prior art admissions,
Nakamura '491, Bencuya '324, and Harada '050. The rejection does not provide an
explanation of any new grounds of rejection other than to state: "Harada additionally teaches a
termination structure including a deep well connected to body regions. It would have been
obvious to have practiced the same with Hshieh to have improved breakdown voltage. The
previous rejection with the above comments applies."

        With respect to claims 1, 8 and 47, and all claims depending therefrom, as
discussed above, Hshieh '543 clearly fails to teach or suggest the invention as claimed. None
of the other cited references, or any combination thereof, including any admitted prior art, adds
anything that would support a finding of unpatentability. If anything, a close look at every one
of these references, as well as many of the other relevant prior art of record, provides
overwhelming evidence of non-obviousness of the claimed invention. This is so because these
prior art references, one after another, demonstrate the fact that many of the most skilled
artisans in the field recognized and struggled with the exact same set of challenges (e.g.,
increased trench MOSFET cell density, improved breakdown voltage, lowered transistor on-
resistance, etc.), yet none were able to conceive of the solution claimed by the present
invention. Instead, in each instance, the prior art proposes a solution that is fundamentally
different both structurally and functionally, as well as being technically inferior as
demonstrated by the commercial success of the products manufactured based on the present
invention. To stress this point, Applicants present below a brief analysis of a number of the

Sze-Ki Mo, et al.                                                                    PATENT
Application No.: 08/970,221
Page 11

cited prior art references. A declaration evidencing the commercial success as another

objective measure of non-obviousness is separately submitted.

### - **Hshieh '543**

An analysis of this reference has already been presented, however, since it

forms the main basis for rejection of the claims, it is repeated here in a more concise fashion.

Recognition of the Problem:

"However it is also known that when cell density is high as in the
typical trenched transistor structure, a new undesirable JFET
phenomenon gradually appears between the P+ deep body regions 5.
The P+ deep body regions 5 typically extend from a principal surface of
the semiconductor material into the P body region 7 to provide a
contact to the P body region 7. These deep body regions 5 ensure that
avalanche breakdown occurs in these regions rather than at the bottom
of the trenches. This undesirable JFET phenomenon is because such
deep body regions 5 are relatively close to each other. (Also shown in
FIG. 1 are conventional drain electrode 8B and source-body electrode
8A.) Thus while avalanche breakdown occurs rather than destructive
breakdown at the trench bottom, i.e. breakdown damaging the
insulating oxide at the trench bottom, undesirably this new JFET
resistance makes a bigger contribution to drain-source on resistance
when cell density is higher." [Col. 1, lines 29-49, emphasis added].

Proposed Solution (Figs. 2 & 3F):

"Further, in accordance with the invention a doped buried layer [16]is
formed in the upper portion of the drain region [10] and in contact with
the drift region [14]. This buried layer has the same doping type as that
of the drain region and a doping concentration higher than that of the
drift region, and is typically located to directly underlie the body contact
(deep body) region formed between each pair of adjacent source regions.
The buried layer is heavily doped to form N+ doped fingers extending
into the drift region. This buried layer [16] is typically formed prior to
the epitaxial growth of the drift region, and by having an optimized
doping profile ensures that avalanche breakdown occurs at the buried
layer/body region or buried layer/body contact region. Hence the
distance between the lower part of the body contact or body region and
the upper part of the buried layer determines breakdown." [Col. 1, line
65 to col. 2, line 13, reference numerals and underlining added].

Sze-Ki Mo, et al.                                                                                          PATENT
Application No.: 08/970,221
Page 12

### ~ Darwish '725

#### Recognition of the Problem:

"The deep central P+ region 114 in MOSFET 300, while greatly reducing the <u>adverse consequences of breakdown</u>, also has some unfavorable effects. First, an upward limit on <u>cell density</u> is created, because with increasing cell density P ions may be introduced into the channel region. As described above, this tends to increase the threshold voltage of the MOSFET. Second, the presence of a deep P+ region 114 tends to pinch the electron current as it leaves the channel and enters the drift region 111. In an embodiment which does not include a deep P+ region (as shown in, for example, FIG. 2A), the electron current spreads out when it reaches the drift region 111. This current spreading reduces the average current per unit area in the drift region 111 and therefore reduces the <u>on-resistance</u> of the MOSFET. The presence of a deep central P+ region limits this current spreading and increases the on-resistance consistent with high cell densities. What is needed, therefore, is a MOSFET which combines the breakdown advantages of a deep central P+ region with a low on-resistance." [Col. 3, lines 28-48, emphasis added].

#### Proposed Solution (Figs 4 & 5):

"When the MOSFET is turned on, an electron current flows vertically through a channel within the body region adjacent the trench. To promote current spreading at the lower (drain) end of the channel region when the MOSFET is turned on, <u>a "delta layer" [402] is provided</u> within the drift region. The delta layer is a layer wherein the concentration of dopant of first conductivity type is greater than the concentration of dopant of first conductivity type in the drift region generally. In many embodiments the delta layer abuts the body region, although in some embodiments the delta layer is separated from the body region. The upper boundary of the delta layer is at a level which is above the bottom of the trench in which the gate is formed. In some embodiments, the upper boundary of the delta layer coincides with a lower junction of the body region. The lower boundary of the delta layer may be at a level either above or below the bottom of the trench." [Col. 3, lines 64 to col. 4, line 13, reference numeral and underlining added].

### - Hshieh '128 (Office Action mailed 8/4/99)

#### Recognition of the Problem:

"In typical DMOS transistors using a trenched gate electrode, in order to avoid <u>destructive breakdown</u> occurring at the bottom of the trench into



*Sze-Ki Mo, et al.*
Application No.: 08/970,221
Page 13

the underlying drain region, such transistors are fabricated so that a P+ deep body region extends deeper than does the bottom of the trench into the substrate (drain region). Thus rather than destructive breakdown occurring at the trench bottom, instead avalanche breakdown occurs from the lowest portion of this P+ deep body region into the underlying drain region. However due to device physics limitations, the cell density of such transistors is thereby restricted by lateral diffusion of this P+ deep body region. That is, in order to provide a P+ deep body region that extends deep enough into the substrate, the drive in step causes this P+ deep body region to diffuse laterally. If it diffuses too far laterally, it may coalesce with an adjacent P+deep body region and degrade transistor performance.

Hence, in order to allow deep enough extension of the P+deep body region into the substrate, the transistor cells each must be relatively large in surface area so that the lateral diffusion does not allow such coalescing. This increases the surface area consumed by each cell, or in other words increases the size of the transistor. As is well known, it is a primary goal of power MOSFET fabrication to minimize chip surface area. This lateral diffusion of the P+deep body region prevents optimization of transistor density and hence wastes chip surface area." [Col. 1, lines 25-51, emphasis added].

Proposed Solution (Figs. 1, 2 & 3):

In accordance with the invention, cell density is increased in a DMOS transistor. In some embodiments this is accomplished by providing a very narrow (in lateral dimension) P+deep body region [16 in Fig. 1] with little or no lateral diffusion. ... In a second embodiment, in addition to the high energy P+deep body implant [36 in Fig. 2], a double epitaxial layer [12 and 34 in Fig. 2]is provided underlying the body region [14], with the P+deep body P+region [34] not extending below the depth of the trench. Instead, the double epitaxial layer provides the desired current path away from the bottom of the trenches. ... In a third embodiment, there is no P+deep body implantation at all and instead only the double epitaxial layer [12 & 34 in Fig. 3] is used underneath the body region." [Col. 1, lines 54 to col. 2, line 19, reference numerals and underlining added].

Two more examples of prior art references evidencing the fact that designers attempting to solve the same problem have failed to arrive at a solution that is even remotely suggestive of the present invention are provided below. An earlier issued patent (USPN 5,072,266) illustrates the fact that the specific challenges have been known for well over a

Sze-Ki Mo, et al.                                                              PATENT
Application No.: 08/970,221
Page 14

decade, and a second more recently issued patent (USPN 5,998,836) shows a contemporaneous

attempt at solving the problem.  Both offer solutions that are widely different than that

proposed and claimed by the present invention.

### - 5,072,266 (Bulucea et al.)

#### Recognition of the Problem:

"An engineering trade-off must be made between on-resistance,
breakdown voltage and other engineering figures of merit so that the
perimeter-to-area ratio Z/A advantage of the open-cell is lost.  Given
these constraints, the closed-cell geometry appears to be more practical.
However, the closed cell geometry has at least three associated problems
that do no appear to have been reported on in the technical or patent
literature.  The first problem is semiconductor surface breakdown. ...
This junction is thus exposed to electric field line crowding and to
breakdown in the epitaxial material adjacent to the bottom corners of the
trench, when the device is biased in the BVDSS condition." [Col. 4,
lines 24-41, emphasis added].

#### Proposed Solution (Fig. 8):

"This invention provides an optimized version of a power metal-oxide-
semiconductor field-effect transistor (MOSFET) [wherein bulk]
breakdown voltage is achieved by using a two-dimensional, field
shaping, dopant profile that includes a central deep p+ (or n+) layer
[27c] that is laterally adjacent to a p body layer ...." [Col. 1, lines 50-61,
reference numeral and emphasis added].

"FIG. 8 illustrates one embodiment of the invention, showing half of a
hexagonally shaped trench DMOS structure 21.  The structure includes ... a
body region 27 [where] a central portion 27c of the body region lies below a
plane that is defined by the bottom of the trench 29 for the transistor cell." [Col.
6, lines 28-60]

### - 5,998,836 (Williams)

#### Recognition of the Problem:

"Two critical characteristics of a power MOSFET are its breakdown
voltage, i.e., the voltage at which it begins to conduct current when in an
off condition, and its on-resistance i.e., its resistance to current flow

when in an on condition. *The on-resistance of a MOSFET generally
varies directly with its cell density, since when there are more cells per
unit area there is also a greater total "gate width" (around the perimeter
of each cell) for the current to pass through. The breakdown voltage of
a MOSFET depends primarily on the doping concentrations and
locations of the source, body and drain regions in each MOSFET cell.*"
[Col. 1, lines 32-44, emphasis added].

Proposed Solution (Fig. 3):

"In accordance with this invention, there is created in the chip a
protective diffusion of the second conductivity type [38], which forms a
PN junction [39] with first conductivity material in the epitaxial layer
[14] or substrate. This PN junction functions as a diode. A metal layer
[36] ties the protective diffusion (i.e., one terminal of the diode) to the
source regions [34] of the MOSFET cells such that the diode is
connected in parallel with the channels of the MOSFET cells." [Col. 2,
lines 60 to 68, reference numerals and underlining added].

The above analysis holds true for many of the other prior art references of

record. This demonstrates that for well over a decade engineers in the field have attempted to

arrive at a design for a trench MOSFET that addresses breakdown voltage, on-resistance and

cell density in an optimized fashion. It also demonstrates that time and again a solution is

proposed that is very different than that found by the Applicants. If the present invention as

claimed were obvious, as the rejection contends, one would have to ask why then did no person

of skill in the art arrive at this solution years ago. One answer to this question may be the fact

that there has been a general understanding by those skilled in this art that, in terms of impact

on the electric field, between the deeper well (or body) region and a heavily doped body region

that is shallower than the well, the deeper well region (that is closest to the epitaxial layer)

dominates. This had led to a generally accepted assumption that such shallow heavy body

junction inside a graded body junction, no matter how deep, could not have any measurable

impact on breakdown voltage.

Challenging these and other accepted assumptions, and through exhaustive

experimentation and computer simulations, Applicants were the first to find that the problem

can in fact be addressed optimally by employing, in combination with the other features of the



Sze-Ki Mo, et al.                                                    <u>PATENT</u>
Application No.: 08/970,221
Page 16

transistor, a shallow heavy body with specific depth and junction characteristics. The solution

offered by the instant invention requires no additional structures as proposed by numerous

prior art references such as buried layers or dual epitaxial layers, delta layers, protective PN

junction diodes, deep P+ body regions, etc. A family of trench MOSFET products embodying

the Applicants' elegant solution, which has clearly not been taught or suggested by the art of

record, has enjoyed tremendous commercial success as a direct result of the benefits of the

claimed invention. To provide further objective evidence of non-obviousness of the claimed

invention, Applicants herewith submit a declaration by the Senior Vice President of Discrete

Power Products of the Assignee demonstrating this commercial success.


Accordingly, none of the cited references, or any combination thereof, teach or

suggest a trench transistor having a "heavy body" that forms an "abrupt junction" inside a well,

and whose depth is adjusted to impact the location of breakdown initiation. Every independent

claim pending in the instant application recites this combination. All pending claims are

therefore patentably distinguished over the art or record. Withdrawal of this rejection is

respectfully requested.


<u>CONCLUSION</u>

In view of the foregoing, Applicants believe all claims now pending in this

Application are in condition for allowance. The issuance of a formal Notice of Allowance at

an early date is respectfully requested.


If the Examiner believes a telephone conference would expedite prosecution of

this application, please telephone the undersigned at 415-576-0200.

Respectfully submitted,

Babak S. Sani
Reg. No. 37,495

TOWNSEND and TOWNSEND and CREW LLP
Two Embarcadero Center, 8th Floor
San Francisco, California 94111-3834
Tel: (415) 576-0200 / Fax: (415) 576-0300

SF 1231752 v1

Marked-Up Version of Amended Claims – Appln. No. 08/970,221

1    2. (Thrice Amended) A trenched field effect transistor comprising:
2        a semiconductor substrate having dopants of a first conductivity type;
3        a trench extending a predetermined depth into said semiconductor substrate;
4        a pair of doped source junctions having dopants of the first conductivity type,
5    and positioned on opposite sides of the trench;
6        *a doped well having dopants of a second conductivity type opposite to said*
7    *first conductivity type, and formed into the substrate to a depth that is less than said*
8    *predetermined depth of the trench; and*
9        *a doped heavy body having dopants of the second conductivity type, and*
10   *positioned adjacent each source junction on the opposite side of the source junction from the*
11   *trench, said heavy body extending into said doped well to a depth that is less than said depth*
12   *of said doped well,*
13       wherein the heavy body forms an abrupt junction with the well and the depth
14   of the junction, relative to the depth of the well, is **[controlled]** adjusted so that a transistor
15   breakdown initiation point is spaced away from the trench in the semiconductor, when
16   voltage is applied to the transistor.

1    8. (Thrice Amended) *An array of transistor cells comprising:*
2        *a semiconductor substrate having a first conductivity type;*
3        *a plurality of gate-forming trenches arranged substantially parallel to each*
4    *other, each trench extending a predetermined depth into said substrate and  the space between*
5    *adjacent trenches defining a contact area;*
6        *a pair of doped source junctions, positioned on opposite sides of the trench*
7    *and extending along the length of the trench, the source junctions having the first*
8    *conductivity type;*
9        *a doped well having a second conductivity type with a charge opposite that of*
10   *the first conductivity type, the doped well formed in the semiconductor substrate between*
11   *each pair of gate-forming trenches;*

Brian Sze-Ki Mo et al.                                            <u>PATENT</u>
Application No.: 08/970,221
Page 18

12        a doped heavy body having the second conductivity type formed inside the

13   doped well and positioned adjacent each source junction, the deepest portion of said heavy

14   body extending less deeply into said semiconductor substrate than said predetermined depth

15   of said trenches; and

16        alternating heavy body and source contact regions defined at the surface of the

17   semiconductor substrate along the length of the contact area,

18        wherein the heavy body forms an abrupt junction with the <u>well</u> [**junction**],

19   <u>and a depth of the heavy body</u> relative to a depth of the well[,] is [**controlled**] <u>adjusted</u> so

20   that breakdown of the transistor originates in the semiconductor in a region spaced away

21   from the trenches when voltage is applied to the transistor.

1         47. (Twice Amended) A trenched field effect transistor formed on a substrate,

2    comprising:

3         a plurality of trenches formed in parallel along a longitudinal axis, the

4    plurality of trenches extending into the substrate to a first depth;

5         a doped well extending into the substrate between each pair of trenches;

6         a pair of doped source regions formed on opposite sides of each trench; and

7         a doped heavy body formed inside the doped well adjacent each source

8    region, the doped heavy body extending into the doped well to a second depth that is less

9    than the first depth,

10        wherein the doped heavy body:

11        forms a continuous doped region along substantially the entire longitudinal

12   axis of a trench, and

13        forms an abrupt junction with the well, and <u>a</u> depth of the <u>heavy body</u>

14   junction[,] relative to a maximum depth of the well, is [**controlled**] <u>adjusted</u> so that a peak

15   electric field in the substrate is spaced away from the trench when voltage is applied to the

16   transistor.

Brian Sze-Ki Mo et al.                                                    <u>PATENT</u>
Application No.: 08/970,221
Page 19

1        50.  (Twice Amended) The trenched field effect transistor of claim 1 further

2  comprising an epitaxial layer having dopants of the first conductivity type, and formed

3  between the substrate and the doped well, <u>with no buried layer formed at an interface</u>

4  <u>between the epitaxial layer and the substrate</u>

5        **[wherein the the relative depths of the doped heavy body and the well are**

6  **controlled to eliminate the need for any layers disposed between the epitaxial layer and**

7  **the substrate].**


1        53.  (Once Amended) The trenched field effect transistor of claim 8, further

2  comprising:

3        an epitaxial layer having the first conductivity type formed between the substrate

4  and the well, <u>with no buried layer formed at an interface between the epitaxial layer and the</u>

5  <u>substrate</u>

6        **[wherein the relative depths of the deepest portion of the heavy body and a**

7  **depth of the well are controlled to eliminate the need for any layers disposed between the**

8  **epitaxial layer and the substrate].**

Sze-Ki Mo, et al.                                                    <u>PATENT</u>
Application No.: 08/970,221
Page 20

1        55.  (Once Amended) The trenched field effect transistor of claim 47, further

2    comprising:

3        an epitaxial layer having the first conductivity type formed between the

4    substrate and the well,

5        wherein the second depth <u>relative to</u> [**and**] a depth of the well [**are controlled**]

6    <u>is adjusted</u> to eliminate the need for any layers disposed between the epitaxial layer and the

7    substrate.

SF 1231752 v1

GR-HOTH
2615

PTO/SB/21 (08-00)
Approved for use through 10/31/2002. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

Please type a plus sign (+) inside this box ——→ [+]

# TRANSMITTAL FORM

(To be used for all correspondence after initial filing)

| Application Number | 08/970,221 |
|---|---|
| Filing Date | November 17, 2000 |
| First Named Inventor | Brian Sze-Ki Mo, et al. |
| Group Art Unit | 1107 |
| Examiner Name | Jerome Jackson, Jr. |
| Total Number of Pages in This Submission | 35* | Attorney Docket Number | 018865-001700US |

## ENCLOSURES (check all that apply)

| | | |
|---|---|---|
| ☒ Fee Transmittal Form | ☐ Assignment Papers *(for an Application)* | ☐ After Allowance Communication to Group |
| ☐ Fee Attached | ☐ Drawing(s) | ☐ Appeal Communication to Board of Appeals and Interferences |
| ☒ Amendment / Response | ☐ Licensing-related Papers | ☐ Appeal Communication to Group *(Appeal Notice, Brief, Reply Brief)* |
| ☐ After Final | ☐ Petition Routing Slip (PTO/SB/69) and Accompanying Petition | ☐ Proprietary Information |
| ☒ Affidavits/declaration(s) | ☐ Petition to Convert to a Provisional Application | ☐ Status Letter |
| ☒ Extension of Time Request | ☐ Power of Attorney, Revocation Change of Correspondence Address | ☒ Other Enclosure(s) *(please identify below):* |
| ☐ Express Abandonment Request | ☐ Terminal Disclaimer | **\*A page count of the references and publications is not included..** |
| ☒ Information Disclosure Statement | ☐ Request for Refund | |
| ☐ Certified Copy of Priority Document(s) | ☐ CD, Number of CD(s) | |
| ☐ Response to Missing Parts/ Incomplete Application | Remarks | The Commissioner is authorized to charge any additional fees to Deposit Account 20-1430. |
| ☐ Response to Missing Parts under 37 CFR 1.52 or 1.53 | | |

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm and Individual name | Townsend and Townsend and Crew LLP | |
|---|---|---|
| | Babak S. Sani | Reg No. 37,495 |
| Signature | | |
| Date | June 4, 2001 | |

## CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on this date:

June 4, 2001

| Typed or printed name | Deborah Bullock | | | |
|---|---|---|---|---|
| Signature | | | Date | June 4, 2001 |

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be send to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.
SF 1229985 v1



PTO/SB/17 (09-00)
Approved for use through 10/31/2002. OMB 0651-0032
Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL
## for FY 2001

*Patent fees are subject to annual revision.*

**Complete if Known**

| | |
|---|---|
| Application Number | 08/970,221 |
| Filing Date | November 17, 1997 |
| First Named Inventor | Sze-Ki Mo, Brian |
| Examiner Name | Jerome Jackson, Jr. |
| Group Art Unit | 1107 |
| Attorney Docket No. | 18865001700 |

**TOTAL AMOUNT OF PAYMENT    ($)    1070**

---

### METHOD OF PAYMENT

**1.** ☒  The Commissioner is hereby authorized to charge indicated fees and credit any over payments to:

Deposit Account Number: **20-1430**

Deposit Account Name: **Townsend and Townsend and Crew LLP**

☒ Charge Any Additional Fee Required Under 37 CFR 1.16 and 1.17

☐ Applicant claims small entity status. See 37 CFR 1.27

**2.** ☐  **Payment Enclosed:**

☐ Check    ☐ Credit card    ☐ Money Order    ☐ Other

### FEE CALCULATION

**1.    BASIC FILING FEE**

| Large Fee Code | Entity Fee ($) | Small Fee Code | Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 101 | 710 | 201 | 355 | Utility filing fee | |
| 106 | 320 | 206 | 160 | Design filing fee | |
| 107 | 490 | 207 | 245 | Plant filing fee | |
| 108 | 710 | 208 | 355 | Reissue filing fee | |
| 114 | 150 | 214 | 75 | Provisional filing fee | |

SUBTOTAL (1)    ($)

**2.    EXTRA CLAIM FEES**

| | Extra Claims | | Fee from below | | Fee Paid |
|---|---|---|---|---|---|
| Total Claims | -20** | X | | = | |
| Independent Claims | -3** | X | | = | |
| Multiple Dependent | | X | | = | |

| Large Fee Code | Entity Fee ($) | Small Fee Code | Entity Fee ($) | Fee Description |
|---|---|---|---|---|
| 103 | 18 | 203 | 9 | Claims in excess of 20 |
| 102 | 80 | 202 | 40 | Independent claims in excess of 3 |
| 104 | 270 | 204 | 135 | Multiple dependent claim, if not paid |
| 109 | 80 | 209 | 40 | ** Reissue independent claims over original patent |
| 110 | 18 | 210 | 9 | ** Reissue claims in excess of 20 and over original patent |

SUBTOTAL (2)    ($)

** or number previously paid, if greater; For Reissues, see above

---

### FEE CALCULATION (continued)

**3. ADDITIONAL FEES**

| Large Fee Code | Entity Fee ($) | Small Fee Code | Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|---|---|
| 105 | 130 | 205 | 65 | Surcharge - late filing fee or oath | |
| 127 | 50 | 227 | 25 | Surcharge - late provisional filing fee or cover sheet. | |
| 139 | 130 | 139 | 130 | Non-English specification | |
| 147 | 2,520 | 147 | 2,520 | For filing a request for reexamination | |
| 112 | 920* | 112 | 920* | Requesting publication of SIR prior to Examiner action | |
| 113 | 1,840* | 113 | 1,840* | Requesting publication of SIR after Examiner action | |
| 115 | 110 | 215 | 55 | Extension for reply within first month | |
| 116 | 390 | 216 | 195 | Extension for reply within second month | |
| 117 | 890 | 217 | 445 | Extension for reply within third month | 890 |
| 118 | 1,390 | 218 | 695 | Extension for reply within fourth month | |
| 128 | 1,860 | 228 | 945 | Extension for reply within fifth month | |
| 119 | 310 | 219 | 155 | Notice of Appeal | |
| 120 | 310 | 220 | 155 | Filing a brief in support of an appeal | |
| 121 | 270 | 221 | 135 | Request for oral hearing | |
| 138 | 1,510 | 138 | 1,510 | Petition to institute a public use proceeding | |
| 140 | 110 | 240 | 55 | Petition to revive – unavoidable | |
| 141 | 1,240 | 241 | 620 | Petition to revive – unintentional | |
| 142 | 1,240 | 242 | 620 | Utility issue fee (or reissue) | |
| 143 | 440 | 243 | 220 | Design issue fee | |
| 144 | 600 | 244 | 300 | Plant issue fee | |
| 122 | 130 | 122 | 130 | Petitions to the Commissioner | |
| 123 | 50 | 123 | 50 | Petitions related to provisional applications | |
| 126 | 180 | 126 | 180 | Submission of Information Disclosure Stmt | 180.00 |
| 581 | 40 | 581 | 40 | Recording each patent assignment per property (times number of properties) | |
| 146 | 710 | 246 | 355 | Filing a submission after final rejection (37 CFR § 1.129(a)) | |
| 149 | 710 | 249 | 355 | For each additional invention to be examined (37 CFR § 1.129(b)) | |
| 179 | 710 | 279 | 355 | Request for Continued Examination (RCE) | |
| 169 | 900 | 169 | 900 | Request for expedited examination of a design application | |

Other fee (specify)

The Commissioner is authorized to charge any additional fees to the above noted Deposit Account.

*Reduced by Basic Filing Fee Paid

SUBTOTAL (3)    ($)180

---

**SUBMITTED BY**    **Complete (if applicable)**

| Name (Print/Type) | Babak S. Sani | Registration No. (Attorney/Agent) | 37,495 | Telephone | 415-576-0200 |
|---|---|---|---|---|---|
| Signature | | | | Date | June 4, 2001 |

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231. SF 1230043 v1

