# EXHIBIT 9

ASPEN PUBLISHERS

# PATENT CLAIM CONSTRUCTION

**Robert C. Kahrl**



Wolters Kluwer

Law & Business

AUSTIN   BOSTON   CHICAGO   NEW YORK   THE NETHERLANDS

**2007 SUPPLEMENT**

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting, or other professional services. If legal advice or other professional assistance is required, the services of a competent professional should be sought.

—From a *Declaration of Principles* jointly adopted
by a Committee of the American Bar Association
and a Committee of Publishers and Associations

The views set forth in this book are those of the author and do not necessarily reflect the views of Jones Day or its other members.

© 2008, 2007, 2006, 2004–2001 Aspen Publishers. All Rights Reserved.

No part of this publication may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopy, recording, or any information storage and retrieval system, without permission in writing from the publisher. Requests for permission to reproduce content should be directed to the Aspen Publishers website at *www.aspenpublishers.com,* or a letter of intent should be faxed to the permissions department at 212-771-0803.

Printed in the United States of America

1 2 3 4 5 6 7 8 9 0

### Library of Congress Cataloging-in-Publication Data

Kahrl, Robert C.
    Patent claim construction / Robert C. Kahrl.
        p. cm.
Includes index.
    ISBN 978-0-7355-2237-4
1.  Patent practice—United States. 2. Legal composition. I. Title.
    KF3125.C5 K34 2001
    346.7304′86–dc21

2001004343

**2007 SUPPLEMENT**

polymers would have fallen within the range of the claims under the district court's interpretation, but for the patentee's argument to the examiner that a density of 0.954 would be outside the range having an upper boundary at 9.5. Accordingly, the Federal Circuit found that the patentee had intended an absolute upper limit of 9.5.

The patentee argued on appeal that this exchange with the examiner should not be used to limit the claims because the examiner had not relied upon the argument to allow the claims. The court responded that the prosecution history could always be used to determine what the patentee intended by the claim terms, "[r]egardless of the examiner's motives."[78]

While a patentee's definition of a term may be found in an argument made to the examiner but not accepted by the examiner as a distinguishing feature, other arguments may not be limiting in the absence of reliance by the examiner. In *Catalina Marketing International, Inc. v. Coolsavings, com, Inc.,*[79] a statement made to the examiner that the setting for the invention contained in the preamble was "located in stores" was found by the Federal Circuit not to make the preamble into a limitation of the claim because the examiner had rejected the claims and had stated that the setting was not patentably significant, thus forcing the applicant to add structural limitations to the body of the claim. Similarly, a preamble describing a prisoner-restraining device to be concealable on the prisoner was held not to be a limitation in the claim in *R.A.C.C. Industries, Inc. v. Stun-Tech, Inc.*[80] after the examiner had refused to allow the claim in response to an argument distinguishing the cited prior art as lacking concealability; the examiner had required additional structural limitations to make the claims allowable, since notwithstanding the absence of the setting described in the preamble, the prior art device had all the structural elements in the claims as submitted.

## [B]    Examiner's Reasons for Allowance

An examiner's statement of reasons for allowance, to which the applicant does not respond, does not by itself create a clear disavowal of claim scope, according to the panel majority in *Salazar v. Procter & Gamble Co.*[81] The applicant had claimed a toothbrush with "elastic"

---

[78] 849 F.2d at 1438, 7 USPQ2d at 1136.
[79] 289 F.3d 801, 810, 62 USPQ2d 1781, 1786 (Fed. Cir. 2002).
[80] 178 F.3d 1309 (unpublished), 49 USPQ2d 1793 (Fed. Cir. 1998).
[81] 414 F.3d 1342, 1346-47, 75 USPQ2d 1369, 1371-73 (Fed. Cir. 2005).

stimulator rods and "elastic" polishing rods. After rejection of some claims due to a prior patent to Clemens, the applicant rewrote an allowed dependent claim as a new independent claim. The examiner allowed the new claim, stating:

> Claim 7 now incorporates previously held allowable subject matter. . . .
> Although the patent to Clemens appears to have the recited structure, Clemens' "rods" are made of nylon, which is not considered "elastic". Obviously the "rods" of Clemens are flexible, but are not considered to be "elastic" as recited by the claim.

The applicant did not respond to this statement.[82] In a subsequent lawsuit, the district court had construed the term "elastic" to mean "any material other than nylon, capable of returning to an initial state after deformation," granting summary judgment to the accused infringer on this construction. On appeal the judgment was reversed, the panel majority finding no other indication in the exchanges between applicant and examiner that the term "elastic" was critical to patentability or that a distinctive inelastic property of nylon was otherwise raised.

Nevertheless, the *Salazar* panel recognized that the examiner's statement of reasons for allowance may be pertinent to construing claim terms in showing how persons skilled in the art would have understood the term at the time of the application.[83]

An examiner's statement of reasons for allowance, even if not directed to a specific argument made by the inventor, may form the basis for a narrow construction of claim language, as occurred in *Biogen, Inc. v.*

---

[82] The Federal Circuit noted that the regulations did not require a response to an examiner's reasons for allowance, nor created any inference against a non-responder. The regulation, 37 C.F.R. § 1.109 (1996), provided:

> If the examiner believes that the record of the prosecution as a whole does not make clear his or her reasons for allowing a claim or claims, the examiner may set forth such reasoning. The reasons shall be incorporated into an office action rejecting other claims of the application or patent under reexamination or be the subject of a separate communication to the applicant or patent owner. The applicant or patent owner may file a statement commenting on the reasons for allowance within such time as may be specified by the examiner. *Failure to file such a statement shall not give rise to any implication that the applicant or patent owner agrees with or acquiesces in the reasoning of the examiner.* [Emphasis added by Federal Circuit].

[83] 414 F.3d at 1347, 75 USPQ2d at 1373.

§ 6.06[B]                                    PATENT CLAIM CONSTRUCTION

*Berlex Laboratories, Inc.*[84] The claims at issue were from a divisional application. The initial application had claimed a Chinese hamster ovary cell having been altered by incorporating an expressible gene encoding human interferon linked to a marker gene in a single DNA construct. After these claims were allowed, the divisional application had included claims in which the linkage to a marker gene was not mentioned. The accused infringer did not utilize the linkage in its DNA constructs, and argued that, notwithstanding the lack of an explicit reference to the linked marker genes in these claims, the claims were limited to cells embodying such linkage because of statements made in the specification as to the significance of the linked genes. The Federal Circuit instead restricted the scope of the claims by relying upon the examiner's statement of reasons for allowance. Thus, although the inventor had stated in submitting initial amendments eliminating the linked-gene construct that such language was not necessary to the prime aspect of the invention, *viz*, production in Chinese hamster ovary cells, the examiner responded by issuing an obviousness-type double-patenting rejection and stating that the replacement of the detailed language of the construct elements with functional language has the effect of limiting the claims to the same construct as the earlier application. After further prosecution, the examiner allowed the claims and stated in the Reasons for Allowance that the claims "are directed to a DNA construct comprising a vector, an interferon gene, and a dhfr marker gene." Without a clear statement from the inventor contesting this interpretation, and finding several statements in the specification emphasizing the novelty of using a single DNA construct for marker and interferon-encoding genes, the Federal Circuit limited the scope of the claims to the scope set forth in the examiner's statement.

To the same effect was *Acco Brands, Inc. v. Micro Security Devices, Inc.*,[85] wherein the claim for a computer locking device included a slot engagement member rotatable into a locking position when inserted into a slot in the computer housing, and a "pin, coupled through said housing, for extending into said security slot proximate said slot engaging portion when said slot engagement member is in said locked position." The claim construction issue was whether the pin must be actively extended into the slot when the device is locked, or whether the pin can passively extend into the

---

[84] 318 F.3d 1132, 1137-39, 65 USPQ2d 1809, 1813-15 (Fed. Cir. 2003).
[85] 346 F.3d 1075, 1078-79, 68 USPQ2d 1526, 1527-29 (Fed. Cir. 2003).

slot during the locked state. The quoted claim language was amended in reexamination to distinguish prior art, after which the examiner allowed the amended claims, stating:

> The following is an examiner's statement of reasons for allowance: the instant invention is allowable over the prior art of record in that the prior art fails to teach or make obvious a computer locking system combining a computer having an aperture with a locking assembly as particularly claimed. In particular the prior art fails to teach or make obvious a computer locking assembly having a locking member which is rotatable to a locked position after being placed through an opening in a computer having a configuration matching that of the locking member and subsequently a pin being placed into the opening after the locking member is rotated to the locked position to hold the lock device within the computer such that the computer can be locked to another object using a cable to prevent theft of the computer.

The patentee did not respond to this statement. Inasmuch as the examiner had virtually repeated the patentee's argument seeking allowance, the court cited both as showing a disclaimer of any broader definition of the term "for extending."

Notwithstanding the result in these cases, the Federal Circuit noted in the *Acco Brands* case that the applicant has "no obligation to respond to an examiner's statement of Reasons for Allowance, and the statement of an examiner will not necessarily limit a claim."[86] This passage was quoted in *Eolas Technologies Inc. v. Microsoft Corp.*[87] in support of the appellate panel's determination in that case that the claim term "executable application" in a patent for a computer program was broader than applying strictly to standalone programs, even though the examiner stated in the Reasons for Allowance that "the claimed internal executable application is not a code library extension nor object handler (e.g. windows dll and OLE) as pointed out in applicant's argument." The court compared the examiner's statement to the narrower argument made to the examiner by the applicant and ruled that the examiner's statement should be interpreted in the context of the narrower argument of the applicant, which did not contain a clear disclaimer of component programs.

---

[86] *Acco Brands, supra*, 346 F.3d at 1079, 68 USPQ2d at 1529.
[87] 399 F.3d 1325, 1338, 73 USPQ2d 1782, 1792 (Fed. Cir. 2005).