DANIEL JOHNSON, JR. (SBN 57409)
BRETT M. SCHUMAN (SBN 189247)
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
djjohnson@morganlewis.com
bschuman@morganlewis.com

ANDREW J. WU (SBN 214442)
DAVID V. SANKER (SBN 251260)
**MORGAN, LEWIS & BOCKIUS LLP**
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA  94306-2122
Tel:  650.843.4000
Fax:  650.843.4001
awu@morganlewis.com
dsanker@morganlewis.com

Attorneys for Plaintiffs and Counterdefendants
ALPHA & OMEGA SEMICONDUCTOR,
LTD. and ALPHA & OMEGA
SEMICONDUCTOR, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ALPHA & OMEGA SEMICONDUCTOR, LTD., a Bermuda corporation; and ALPHA & OMEGA SEMICONDUCTOR, INC., a California corporation,<br><br>          Plaintiffs and Counterdefendants,<br><br>          v.<br><br>FAIRCHILD SEMICONDUCTOR CORP., a Delaware corporation,<br><br>          Defendant and Counterclaimant.<br><br>————————————————<br>AND RELATED COUNTERCLAIMS. | Case No. C 07-2638 JSW<br>(Consolidated with Case No. C-07-2664 JSW)<br><br>**AOS'S REPLY CLAIM CONSTRUCTION BRIEF PURSUANT TO PATENT L.R. 4-5(c)**<br><br>Date:      June 4, 2008<br>Time:      2:00 p.m.<br>Location:  Courtroom 2, 17th Floor<br>Judge:     Hon. Jeffrey S. White |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914

AOS'S REPLY CLAIM CONSTRUCTION BRIEF
PURSUANT TO PATENT L.R. 4-5
(C 07-2638 JSW)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    THE '567 PATENT ............................................................................................. 2

    A.     "Several" means "two or more."............................................................... 2

        1.     AOS's construction of "several" is consistent with the claims and specification ................................................................................ 2

            a.     The specification refers to two lead wires as "several lead wires" in connection with Figures 2C and 2D ....................... 2

            b.     The terms "several" and "plurality" are used interchangeably, and Fairchild admits that plurality means "two or more."............................................................... 3

            c.     The claim language does not require limiting "several" to "three or more ...................................................................... 3

        2.     Fairchild cannot use dictionary definitions to construe "several" more narrowly than the specification ........................................... 4

    B.     AOS's construction of the "configuring" element is correct and consistent with the patent ........................................................................ 5

        1.     The invention does not require determining the number of lead wires prior to configuring the gate runners ................................... 5

        2.     The sub-contact areas can be equal in size................................. 8

        3.     Claim 7 does not require mathematical precision in the size of the subcontact areas ...................................................................... 9

III.   THE '630 PATENT:  THE ASSERTED CLAIMS COVER BOTH PLANAR AND TRENCHED-GATE POWER MOSFET DEVICES ................................. 9

    A.     Trenched-Gate Devices Are A Preferred Embodiment Of The '630 Patent......... 10

    B.     The Claim Language Is Not Limited To Planar Devices .................................... 11

    C.     AOS's Construction Is Consistent With The Teaching Of The Patent................. 11

    D.     Fairchild's Resort To Dictionary Definitions Fails To Overcome The Intrinsic Evidence Supporting AOS's Proposed Construction ........................... 12

IV.    THE '776 PATENT:  A "COMPENSATING" IMPLANT NEED NOT HAVE ITS "PEAK CONCENTRATION" IN THE BODY OF THE DEVICE .................................. 13

    A.     AOS's Proposed Construction Is Based Properly On The Intrinsic Evidence......................................................................................................... 13

    B.     Fairchild's Proposed Construction – Based On A Term That Appears Nowhere In The '776 Patent – Must Be Rejected ............................................ 13

V.     CONCLUSION ................................................................................................. 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                                    i                    AOS'S REPLY CLAIM CONSTRUCTION BRIEF
PURSUANT TO PATENT L.R. 4-5
(C 07-2638 JSW)

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Biagro Western Sales, Inc. v. Grow More, Inc.*
  423 F.3d 1296 (Fed. Cir. 2005).................................................................. 14

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*
  450 F.3d 1350 (Fed. Cir. 2006).................................................................. 4

*Interactive Gift Express v. Compuserve Inc.*
  256 F.3d 1323 (Fed. Cir. 2001).................................................................. 7

*Micrel Inc. v. Monolithic Power Sys.*
  2006 U.S. Dist. LEXIS 45860 (N.D. Cal. June 28, 2006) ......................... 10

*Omega Eng'g, Inc. v. Raytek Corp.*
  334 F.3d 1314 (Fed. Cir. 2003).................................................................. 11

*Phillips v. AWH Corp.*
  415 F.3d 1303 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006) ...................... 4, 5, 6, 9, 12

*Pickholtz v. Rainbow Tech., Inc.*
  284 F.3d 1365 (Fed. Cir. 2002).................................................................. 4

*Sinorgchem Co. v. ITC*
  511 F.3d 1132 (Fed. Cir. 2007).................................................................. 10

*Specialty Composites v. Cabot Corp.*
  845 F.2d 981 (Fed. Cir. 1988).................................................................... 11

*Spectra-Physics, Inc. v. Coherent, Inc.*
  827 F.2d 1524 (Fed. Cir. 1987).................................................................. 10

*Verizon Servs. Corp. v. Vonage Holdings Corp.*
  503 F.3d 1295 (Fed. Cir. 2007).................................................................. 10

*Vitronics Corp. v. Conceptronic, Inc.*
  90 F.3d 1576 (Fed. Cir. 1996).................................................................... 1, 9, 10, 12

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*
  239 F.3d 1225 (Fed. Cir. 2001).................................................................. 4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                                         ii                AOS'S REPLY CLAIM CONSTRUCTION BRIEF
                                                                       PURSUANT TO PATENT L.R. 4-5
                                                                       (C 07-2638 JSW)

## I.    **INTRODUCTION**

In this reply brief, AOS addresses the four disputed terms/phrases from the three patents-in-suit asserted by AOS against Fairchild.[1]  In its opening brief, AOS demonstrated that its proposed constructions are rooted firmly in the intrinsic evidence of the patents.  In response, Fairchild attempts to narrow severely the AOS patents by urging claim constructions that violate several well-established rules regarding the interpretation of patent claims.

*First*, Fairchild attempts to import improper limitations into the claim language.  For example, with respect to AOS's '776 patent, Fairchild is attempting to add a limitation requiring that the "peak concentration" of a compensating implant be found in the body region of the power MOSFET device.  The asserted claims do not contain the words "peak concentration" – indeed, the '776 patent does not mention "peak concentration," and certainly never suggests that the claims should be limited based on "peak concentration."  Many of Fairchild's other arguments improperly limit the claims to the specific embodiments of the specification.

*Second*, and perhaps most egregiously, Fairchild proposes constructions that would exclude preferred embodiments of the inventions.  The Federal Circuit has said repeatedly that a construction that would exclude a preferred embodiment is rarely, if ever, correct.  *See, e.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-4 (Fed. Cir. 1996).  Fairchild's proposed construction of the '567 patent term "several" ("three or more," according to Fairchild) would exclude embodiments described in the patent showing only two lead wires.  Fairchild's attempt to exclude all trenched-gate power MOSFET devices from the coverage of the '630 patent is based entirely on its mischaracterization of a preferred embodiment as a mere "throw away example."  Preferred embodiments cannot be so blithely ignored.

*Third*, as it does with respect to the terms arising from its own asserted patents, Fairchild relies too heavily on extrinsic evidence:  dictionaries and another lengthy declaration from its retained expert, Dr. Blanchard.  Fairchild's quick resort to extrinsic evidence is telling.  It cannot overcome AOS's constructions, which all have support in the intrinsic evidence.

---

[1]    AOS cites the opening claim construction brief of Alpha & Omega Semiconductor, Ltd. and Alpha & Omega Semiconductor, Inc. (collectively, "AOS") as "AOS Opening Br." and to the responsive brief filed by Fairchild Semiconductor Corp. ("Fairchild") as "Fairchild Resp. Br."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                                    1                    AOS'S REPLY CLAIM CONSTRUCTION BRIEF
                                                                     PURSUANT TO PATENT L.R. 4-5
                                                                     (C 07-2638 JSW)

II.    **THE '567 PATENT**

A.    **"Several" means "two or more."**

1.    **AOS's construction of "several" is consistent with the claims and specification.**

Claim 7 of the '567 patent should not be limited to an arbitrarily chosen number of gate runners, sub-contact areas, or lead-wires, as Fairchild proposes.  The '567 patent invention reduces on-state resistance by distributing lead wires substantially uniformly over the source contact area of the device.  *See* Declaration of Andrew J. Wu in support of AOS's Opening Br., Ex. 1 ("Wu Ex. 1"), '567 patent, Abstract.  Fairchild argues that "several" means "three or more" by ignoring preferred embodiments and ignoring the usage of the words "several" and plurality in the specification.

a.    **The specification refers to two lead wires as "several lead wires" in connection with Figures 2C and 2D.**

The proper construction of "several" is "two or more" because the specification uses "several" to describe two lead wires.  As AOS explained in its opening brief, the specification uses "several" to describe the two lead wires in the right hand sub-contact areas of Figs. 2C and 2D.  *See* AOS Opening Br. at 7:1-13 (discussing '567 Patent, col. 5:51-57).

Fairchild argues that AOS "misrepresents" the specification by selectively quoting the portion of the specification that, according to Fairchild, "makes clear that this section of the specification is directed only to Figure 2B."  Fairchild Resp. Br. at 5:16-6:10.  To the contrary, column 5 at lines 51-57 describes Figs. 2C and 2D.  The specification first describes Figs. 2A and 2B beginning at column 3:54; introduces 2C and 2D at column 5:15; continues with Fig. 3 at col. 5:58; and so on with Fig. 4 and Fig. 5 in col. 6.  '567 patent.  The relevant section at col. 5:51-57 thus describes the embodiments in Figs. 2C and 2D.  And while the specification at col. 5:51-57 does refer to an area proportional ratio of 4:4:4:3, the text states "e.g., 4:4:4:3" – expressly noting that the ratio 4:4:4:3 is merely an example.[2,3]  Fairchild also asserts that col. 5, lines 51-57 refers

---

[2]    Figures 2C and 2D show a device with ratios 3:3:3:2, but the specification does not refer to that ratio.  Nevertheless, the claims must be read to cover the embodiments of Figs. 2C and 2D.
[3]    Throughout this brief, any emphasis in quoted material was added to the original text, unless noted otherwise.

1    to Fig. 2A and 2B rather than Fig. 2C and 2D because it refers to "lead wires 160," which are

2    labeled in Fig. 2B.  Fairchild Resp. Br. at 5:22-23.  This argument is incorrect and misleading,

3    because the lead wires are feature 160 in <u>all</u> of the Figures 2A, 2B, 2C, and 2D, not just Fig. 2B.

4    '567 patent, cols. 5:15-17, 5:25, 5:28, 5:35-36, 5:49, 5:55.  This is how one of skill in the art

5    would read the '567 patent.  Declaration of C. Andre T. Salama submitted herewith ("Salama

6    Reply Decl.") ¶ 3.[4]

        **b.    The terms "several" and "plurality" are used interchangeably,
             and Fairchild admits that plurality means "two or more."**

7    
8        The proper construction of "several" is "two or more" because the specification uses the

9    terms "several" and "plurality" interchangeably, and Fairchild concedes that the standard

10   definition of "plurality" is two or more.  Fairchild Resp. Br., 3:26-27.

11   
12       Fairchild's argument that the words are interchangeable only when there are groups of

13   three or more is flawed.  Fairchild Resp. Br. at 5:7-11.  First, that the specification uses the words

14   "several" and "plurality" interchangeably at all shows that the terms do not have distinct

15   meanings.  Second, Fairchild is simply incorrect.  As discussed above, the patent at col. 5:51-57

16   refers to the two lead wires of Figs. 2C and 2D as "several" lead wires.  Since it also refers to "a

17   plurality of lead wires," it uses the terms interchangeably with respect to groups of two.

        **c.    The claim language does not require limiting "several" to
             "three or more.**

18   
19       Fairchild's argument that the claim language supports Fairchild's narrow construction is

20   incorrect factually and legally.  First, Fairchild states "[c]laim 7, the only claim of the '567 patent

21   asserted in this litigation, recites the terms ''plurality" and "several."  Fairchild Resp. Br. at 3:19-

22   20.  This is simply incorrect – claim 7 does not recite the term "plurality:"

23   
24       > 7. A method to configure a source contact area on a power
       > MOSFET device by dividing said source contact areas with several
       > gate runners disposed thereon, said method including steps of:

25   _____

26   [4]    Fairchild argues that "several" must mean three or more because there must be more than
     one area proportional ratio, which requires three or more sub-contact areas.  Fairchild Resp. Br. at

27   cols. 3:28-4:9.  That argument, however, is irrelevant, because AOS's construction of "two or
     more" is consistent with three or more sub-contact areas.  Fairchild's example provides no basis

28   for requiring "three or more" lead wires or gate runners, especially since three sub-contact areas
     only requires two gate runners.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

(a) determining a total number of lead wires for connecting to a lead frame from said source contact area on said MOSFET power device; and

(b) configuring said gate runners for dividing said source contact area into several sub-contact areas with a set of area proportional ratios for disposing several of said lead wires in each of said sub-contact areas according to said set of area proportional ratios.

'567 patent, col. 8:34-45.  Fairchild simply mischaracterizes the claim language.

Moreover, the fact that the patent (in other claims) recites both "several" and "plurality" does not mandate that they must have different meanings.  "[D]escribing claim elements or limitations in different words does not invariably change the scope of the claim." *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1354 (Fed. Cir. 2006).  The doctrine of claim differentiation is <u>only</u> applicable when the limitation in dispute is the only meaningful difference between dependent and independent claims. *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001).  The fact that the '567 patent recites "plurality" in other claims of the '567 patent and "several" in claim 7 (and others) does not mandate or even suggest that "several" and "plurality" must have different meanings, particularly given the many other differences between the claims.

Even the presumption that different terms have different meanings is only a presumption. *Inpro*, 450 F.3d at 1254.  As Fairchild acknowledges, it may be overcome by evidence that different terms are used to mean the same thing. *See* Fairchild Resp. Br., at 3:19-27; *Pickholtz v. Rainbow Tech., Inc.*, 284 F.3d 1365, 1373 (Fed. Cir. 2002) (construing "computer" the same as "computer system" because the patent used them as synonyms, despite the fact that "we would ordinarily be inclined to give meaning to the word 'system'").  Here, the '567 patent uses "plurality" and "several" interchangeably to describe "two or more."

### 2.    Fairchild cannot use dictionary definitions to construe "several" more narrowly than the specification.

Because the specification establishes that the inventors used "several" to mean two or more, the Court need not consult dictionaries. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1322-23 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006) (holding that judges are free to consult dictionaries at any time, "so long as the dictionary definition does not contradict any definition

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Philadelphia

1-PA/3697914                          4                    AOS'S REPLY CLAIM CONSTRUCTION BRIEF
                                                            PURSUANT TO PATENT L.R. 4-5
                                                                  (C 07-2638 JSW)

1    found in or ascertained by a reading of the patent documents").[5]

2    Moreover, every dictionary cited in the parties' briefs provides at least one definition

3    consistent with the use of several as "two or more." *See* Wu Ex. 5, Merriam Webster's Collegiate

4    Dictionary ("more than one"); *id.*, Ex. 4, The Oxford English Dictionary,[6] at 4 ("more than one");

5    *id.*, Ex. 6, Microsoft Encarta Collegiate Dictionary ("a small number"); Jacobs Resp. Decl., Ex. 3,

6    Webster's Encyclopedic Unabridged Dictionary ("separate; different").

7    **B.    AOS's construction of the "configuring" element is correct and consistent with the patent.**

8

9    **1.    The invention does not require determining the number of lead wires prior to configuring the gate runners.**

10    Contrary to Fairchild's characterization, the invention of the '567 patent does not require

11    determining the number of lead wires prior to configuring the gate runners.  Prior art designs,

12    shown in Fig. 1A of the '567 patent, arbitrarily connected short lead wires 25 to the region of the

13    contact areas close to the lead frame 20.  As a result, power had to travel across the source contact

14    area over a long path before reaching the conductive lead wires.  Wu Ex. 1, '567 patent, col. 1:37-

15    65.  The '567 patent invention reduced on-state resistance, $R_{DSON}$, by distributing the lead wires

16    over the source contact area and spreading the points of contact for the lead wires over the contact

17    area.  '567 patent, Abstract, col. 2:29-34, col. 5:1-14; Salama Reply Decl. ¶ 4.   The '567 patent

18    describes several approaches to this distribution, including distributing and configuring the lead

19    wires so that the number of lead wires is proportional to the contact areas.  *Id.*  See, *e.g.,* '567

20    patent at col. 3:67-col. 4:60.  This aspect of the invention is recited in claim 7.  Salama Reply

21    Decl. ¶ 4.

22    Fairchild's argument that the method "would not work" and "would be impossible" unless

23    the number of lead wires is first determined is simply wrong.  *See* Fairchild Resp. Br. at 9:22-

24    10:10; Salama Reply Decl. ¶¶ 4, 5.  One can configure the gate runners and then determine a

---

[5]    In *Phillips*, the Federal Circuit clarified that extrinsic evidence is "less significant than the intrinsic record," and that unsupported assertions of an expert "are not useful to a court." *Phillips*, 415 F.3d at 1317-18.

[6]    The definition in the Oxford English Dictionary is pertinent and appropriate because a patent is a legal document that conveys legal rights, and the parties ask the Court to determine the legal meaning of the non-technical word "several."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                                    5                        AOS'S REPLY CLAIM CONSTRUCTION BRIEF
PURSUANT TO PATENT L.R. 4-5
(C 07-2638 JSW)

1    number of lead wires to be applied in ratios proportional to the areas of the sub-contact areas, or

2    determine the number of lead wires and then configure the gate runners. *Id.* For example, one

3    could divide a contact area into 4 equal sub-contact areas, identify the area proportional ratios as

4    1:1:1:1, and <u>subsequently</u> determine the number of lead wires and divide those lead wires

5    according to the area proportional ratio of 1:1:1:1.[7] *Id.* Likewise, Fairchild's argument that

6    "none of the four equations provided in column four of the '567 patent can be performed if the

7    total number of lead wires is not known," Fairchild Resp. Br. at cols. 9:24-10:1, is simply wrong

8    – the equations can be applied starting with the number of gate runners or the number of lead

9    wires, so long as the area proportional distribution is achieved.

10         Fairchild's argument that dividing the source contact area into sub-contact areas must be

11   the "<u>final</u> step" (Fairchild Resp. Br. at 8:7-9:2) in a prescribed sequence is both factually and

12   legally wrong. The specification repeatedly describes *first* dividing the source contact area using

13   gate runners, and *then* distributing the lead wires. '567 patent, col. 3:60-66; col. 4:54-60. In any

14   event, the claims should not be limited to a specific sequence recited in the specification.

15   *Phillips,* 415 F.3d at 1323 ("although the specification often describes very specific embodiments

16   of the invention, we have repeatedly warned against confining the claims to those embodiments").

17         Indeed, the specification expressly notes that the invention should not be limited to the

18   disclosed embodiments:

19              Although the present invention has been described in terms of the
                presently preferred embodiment, it is to be understood that such
20              disclosure is not to be interpreted as limiting. Various alternations
                and modifications will no doubt become apparent to those skilled in
21              the art after reading the above disclosure. Accordingly, it is
                intended that the appended claims be interpreted as covering all
22              alternations and modifications as fall within the true spirit and
                scope of the invention.
23

24   '567 patent, col. 7:24-32. Fairchild's proposed limitation defies this directive from the inventors.

25         Turning to the claim language, Fairchild does not and cannot argue that the steps of:

26   _____

     [7]      Similarly, Fairchild's characterization that the invention "takes packaging into account
27   during the design of the power MOSFET" mischaracterizes the '567 patent. *Id.* at 9:14-17. The
     invention described in the patent involves distributing the lead wires according to area
28   proportional ratios, not a mental sequence of counting lead wires prior to configuring the gate
     runners. *E.g.,* '567 patent, col. 2:36-42, cols. 2:57- 3:10.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                          6              AOS'S REPLY CLAIM CONSTRUCTION BRIEF
                                                         PURSUANT TO PATENT L.R. 4-5
                                                                  (C 07-2638 JSW)

1    determining a total number of lead wires for connecting to a lead
     frame from said source area on said MOSFET power device
2
and
3
     configuring said gate runners for dividing said source contact area
4        into several sub-contact areas with a set of area proportional ratios

5    explicitly or implicitly require that the "determining" step precede the "configuring" step.  *Id.*,

6    col. 8:38-43.  Instead, Fairchild seizes on the phrase "said lead wires" in the phrase "for disposing

7    said lead wires in each of said sub-contact areas."  Fairchild Resp. Br. at 7.  But the mere fact that

8    the claim language recites "said" lead wires does not mandate that the "determining" step must

9    have been completed before the "configuring" step.  Rather, the use of "said" merely reflects that

10   the term "lead wires" was previously recited within the claim.  Process claims, however, are not

11   limited to the order in which they are recited, unless required by the intrinsic evidence.

12   *Interactive Gift Express v. Compuserve Inc.,* 256 F.3d 1323, 1343 (Fed. Cir. 2001) ("[u]nless the

13   steps of a method actually recite an order, the steps are not ordinarily construed to require one.").

14        In *Interactive Gift Express* – a case cited by Fairchild – the Federal Circuit declined to

15   impose a sequence on the steps of a process claim, concluding that "part of step four is performed

16   before step three, and part is performed after step three."  *Id.* at 1344.  Here, element (b) of claim

17   7 includes two parts: first, "configuring said gate runners … with a set of area proportional

18   ratios," (the claim element being construed) and second, "for disposing several of said lead wires

19   in each of said sub-contact areas according to a set of area proportional ratios."  Even if the Court

20   were to conclude that the second part of the step, "disposing," must occur after the step of

21   "determining a total number of lead wires," it would not be appropriate to impose a sequence on

22   the claim elements because the first part of the step, "configuring," need not occur after

23   determining the total number of lead wires.

24        Finally, Fairchild can muster no response to AOS's point that a comparison of claim 7

25   with claim 8 demonstrates that no sequence should be imposed on claim 7.  AOS Opening Br. at

26   10:3-10.  In contrast to claim 7, claim 8 recites "configuring said gate runners according [to] said

27   total number of lead wires."  If the inventors had intended to require the "configuring" step in

28   claim 7 to be based on the number of lead wires, they would have used the language of claim 8.

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Philadelphia

1

### 2. The sub-contact areas can be equal in size.

2      Fairchild's assertion that the sub-contact areas must be "not all equal in size" is flatly

3   contradicted by the specification. In its opening brief, AOS demonstrated how the specification

4   expressly contemplates sub-contact areas of equal size. *See* AOS Opening Br. at 10-11. The

5   specification provides an equation employing the defined term "$N_{REMAINDER}$." The patent

6   expressly states that $N_{REMAINDER}$ can equal zero. Wu Ex. 1, '567 patent, at col. 4:34-35. When

7   $N_{REMAINDER}$ equals 0, however, each sub-contact area has the same area, and therefore the same

8   number of lead wires. Accordingly, *each sub-contact is approximately the same size. Id.* at col.

9   4:51-53.

10      Fairchild offers no response on this point.

11      Instead, Fairchild resorts to mischaracterization of the prosecution history. Fairchild

12   Resp. Br. at 10:24-11:9. Fairchild asserts that the sub-contact areas in claim 7 must be different

13   sizes because the Examiner noted that "Claims [1-8] are considered allowable over the art of

14   record because of the [specific] recitation of different size subcontact areas, angled contact areas,

15   and configuring [gate runners] according to a set of area proportional ratios." *Id.* at 10:25-28

16   (quoting Office Action).[8] Fairchild then asserts that "the examiner viewed the claims as requiring

17   different size sub-contact areas." *Id.* at 11:4-5.

18      Fairchild's argument mischaracterizes this history. The compound statement quoted by

19   Fairchild recites multiple separate limitations for multiple separate claims. Claims 1, 5, and 6

20   recite different size sub-contact areas. Thus, the Examiner's statement regarding different size

21   sub-contact areas plainly related to the reason why claims 1, 5, and 6 were allowable. Likewise,

22   claim 2 recites angled sub-contact areas, and the Examiner's statement regarding that limitation

23   plainly related to claim 2. The Examiner's statement regarding "area proportional ratios," related

24   to claim 7, which recites that limitation. There is no reason to believe that the statements

25   regarding different size sub-contact areas were intended as a limitation of claim 7, which does not

26   recite that limitation.[9]

27

[8]     In its quotation, Fairchild erroneously omitted "specific."

[9]     In contrast to the definition of terms in the prosecution history of Fairchild's asserted
28   patents, the language Fairchild relies on here does not define the term at issue, or even relate to

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Philadelphia

1-PA/3697914                                    8                    AOS'S REPLY CLAIM CONSTRUCTION BRIEF
                                                                      PURSUANT TO PATENT L.R. 4-5
                                                                      (C 07-2638 JSW)

**3.    Claim 7 does not require mathematical precision in the size of the subcontact areas.**

AOS's proposes that the "area proportional ratios are defined by the ratios of the approximate areas of the sub-contact areas." As AOS demonstrated in its opening brief, the embodiments of the specification do not employ area proportional ratios that are <u>exactly</u> defined by the areas of the sub-contact areas. AOS Opening Br. at 11:23-12:9. As such, Fairchild's construction is not only inconsistent with the specification, but would exclude those embodiments of the patent.[10]

Fairchild belittles this argument, calling it "nonsense," but offers no substantive rejoinder. Fairchild Resp. Br. at 11:13. Indeed, Fairchild acknowledges that "[t]he specification uses the term 'approximate' with regard to the area proportional ratios." *Id.* at 11:15-16. In fact, the patent identifies "sub-contact areas having a proportion of <u>approximately</u> 4:4:4:3," col. 4:57-58, and that "[b]ased on this ratio, the contact areas are then divided by the gate runners to have <u>substantially</u> the same ratio," col. 4:51:63. Unable to rebut the specification, Fairchild merely argues that the specification should be ignored, because "the inventors chose not to include the term 'approximate' in the claim language," and "[t]he inventors are bound by their choice of words." *Id.* at 11:16-17 (citing to Kahrl, Patent Claim Construction). The Kahrl treatise, however, does not trump the Federal Circuit law establishing that the claims must be construed in light of the specification, and should not be construed to exclude preferred embodiments. *Phillips*, 415 F.3d at 1315; *Vitronics*, 90 F.3d at 1583-4.

## III.    THE '630 PATENT:  THE ASSERTED CLAIMS COVER BOTH PLANAR AND TRENCHED-GATE POWER MOSFET DEVICES.

Fairchild improperly seeks to limit the scope of every claim of the '630 patent to exclude trenched-gate products. On its face, the claim language does not exclude trenched-gate products. Further, the specification identifies trenched-gate products as a preferred embodiment of the invention of the '630 patent. Fairchild cannot overcome this preferred embodiment simply by

---

the asserted claim.

[10]    Although AOS's discussion focused on Figure 2A, the same analysis would apply 2B, 2C, and 2D, which also include a gate contact pad which occupies some portion of the surface, so that the areas are not exactly proportional.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                                    9                    AOS'S REPLY CLAIM CONSTRUCTION BRIEF
PURSUANT TO PATENT L.R. 4-5
(C 07-2638 JSW)

(mis)characterizing it as a "throw away" embodiment. Fairchild Resp. Br. at 19:6-8.

A.    **Trenched-Gate Devices Are A Preferred Embodiment Of The '630 Patent.**

A construction that would exclude a preferred embodiment is rarely, if ever, correct. *Vitronics*, 90 F.3d at 1583-4; *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007).

It is undisputed that the '630 patent includes a trenched-gate embodiment. Figure 6 of the patent depicts a trench gate design, as shown below.



FIG. 6

The specification describes this embodiment as "manufactured by a similar process as described above [regarding planar gates]," but expressly noting that this embodiment employs "trenched gate 225." Wu Ex. 3, '630 patent, cols. 8:55-9:7.

Fairchild mischaracterizes this as a "throw away example" apparently because the specification does not discuss this embodiment in the same level of detail as it does the planar embodiments.[11] The specification teaches a planar embodiment in Figures 3A-3D and 5A-5F, and corresponding text. Having provided a very detailed description for planar devices, the inventors did not repeat, and were not required to repeat, the same level of detail for trenched-gate devices. *See Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987) ("[a] patent need not teach, and preferably omits, what is well known in the art."). Here, the process of defining trenched gates was well-known at the time the '630 patent was filed. Salama Reply Decl. ¶ 6.

---

[11]    Fairchild's reliance on *Sinorgchem Co. v. ITC*, 511 F.3d 1132 (Fed. Cir. 2007) is badly misplaced. In *Sinorgchem*, the specification stated "a 'controlled amount' of protic material is an amount up to that which inhibits the reaction of … [etc]." *Id.* at 1136. By imposing the patentee's *explicit* definition, the independent claims did not cover one embodiment out of the 21 embodiments of the specification. *Id.* at 1138. *Sinorgchem* does not justify disregarding in the present case the well-settled rule that claims should not be construed to exclude preferred embodiments. *Vitronics*, 90 F.3d at 1583-4; *Micrel Inc. v. Monolithic Power Sys.*, 2006 U.S. Dist. LEXIS 45860, *12 (N.D. Cal. June 28, 2006) (White, J.) ("[g]enerally, courts should not construe terms in a manner that would exclude a preferred embodiment").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                    10                    AOS'S REPLY CLAIM CONSTRUCTION BRIEF
PURSUANT TO PATENT L.R. 4-5
(C 07-2638 JSW)

**B.**    **The Claim Language Is Not Limited To Planar Devices.**

There is a heavy presumption that claim terms carry their full ordinary and customary meaning unless the patentee unequivocally imparts a novel meaning or expressly relinquishes claim scope. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). Unless a specification *requires* a limitation, that limitation should not be read into the claims. *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988).

The claim language of the '630 patent does not support Fairchild's proposed exclusion of trenched-gate devices. The claim language includes (a) applying a polysilicon mask; then (2) etching the polysilicon layer; thus (3) defining the gates. '630 patent, at 9:65-67. There is nothing in the claim that would restrict the claim to planar devices. *Id.* at 9:58-10:19. A mask is applied, and etching is employed, to define gates in both planar and trench gate power MOSFETs. *Id.* Fairchild's assertion that "AOS interprets the claim term to require no relationship among the phrases at all" is simply wrong. *See* Fairchild Resp. Br. at 16:16-18.

**C.**    **AOS's Construction Is Consistent With The Teaching Of The Patent.**

Relying heavily on the assertions of Dr. Blanchard, Fairchild argues at length that its construction is consistent with the specification. Fairchild Resp. Br. at 13:14-18:17. This argument misses the point. AOS does not dispute that the claim *can* cover a planar gate device. The issue is Fairchild's improper attempt to *limit* the claims to a planar device, and exclude trenched-gate devices, as discussed above.

In particular, Fairchild seeks to limit the claim to a particular method of defining the gates. *E.g.,* Fairchild Resp. Br. at 15:7-16:4. But the inventors did not propose a novel way to define gates.[12] In the Summary of the Invention, the inventors identified two objectives: a "fabrication process to form the self-aligned deep and shallow high-concentration body-dopant regions to improve the device ruggedness and to remove a top portion of the lightly doped source region to reduce contact resistance." '630 patent at 3:59-63. The patent repeatedly emphasizes these two objectives. '630 patent at 4:1-7; 4:29-33; 5:49-52; 5:64-6:2; 6:11-12; 8:57-59; 8:63-65.

---

[12]    Fairchild's example of fabricating a trenched-gate power MOSFET *based on its own patent*, carries little or no weight on how to construe a term in the '630 patent. Fairchild Resp. Br. at 17:13-18:17.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                    11                    AOS'S REPLY CLAIM CONSTRUCTION BRIEF
PURSUANT TO PATENT L.R. 4-5
(C 07-2638 JSW)

1    The trenched-gate embodiment in the specification includes the stated objectives of the

2    invention. First, the text identifies the creation of the self-aligned deep and shallow high-

3    concentration body regions in the trench design of Figure 6. '630 patent at 8:55-65. Further, Fig.

4    6 shows the removal of a top portion of the source contact area. '630 patent at Fig. 6 (showing a

5    silicon etch of the source region of depth δ). The specification thus teaches these two objectives

6    of the patent in the context of trenched-gate devices. Fairchild <u>admits</u> that the patent's discussion

7    of trenched-gate devices covers the crux of the claimed invention. Fairchild Resp. Br. at 19:3-5.

8    Fairchild also argues that a mask is not used to define the gates in a trenched gate design,

9    relying on Dr. Blanchard's description of the process for forming a trenched gate. Fairchild Resp.

10   Br. at 17:13-18:17. Even if Dr. Blanchard's description were correct, and even if the process he

11   described were the only process for forming trench gates, Fairchild's argument would simply be

12   another way of arguing that trenched gate designs should be excluded from the claims which

13   would be improper as discussed above.

14   Moreover, Fairchild's own example shows that etching the polysilicon defines the vertical

15   dimension of the gates. Fairchild Resp. Br. at 18:1-13. Fig. 4E shows the height of the

16   polysilicon before etching, and Fig. 4F shows the height after etching. *Id.* In particular, note the

17   recess of the polysilicon below the surface in Fig. 4F. *Id.* at 18:10-13. The top of the recess

18   defines the gate in the vertical dimension, and is determined by the depth of the etch. Also note

19   that in Fairchild's example, there were no "gates" before etching the polysilicon layer – there was

20   just a layer of polysilicon that covered everything. *Id.* Fig. 4F further shows the mask (or a

21   portion of the mask), and shows that the mask prevented etching the polysilicon below it.

22   **D.    Fairchild's Resort To Dictionary Definitions Fails To Overcome The Intrinsic
23        Evidence Supporting AOS's Proposed Construction.**

24   Because the intrinsic evidence is sufficient to understand the disputed phrase, Fairchild's

25   citation to general purpose dictionaries[13] is superfluous. *Vitronics*, 90 F.3d at 1583 ("[i]n most

26   situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed

27   claim term."); *Phillips*, 415 F.3d at 1322 ("a general-usage dictionary cannot overcome art-

---

[13]    In addition, Fairchild did not previously disclose these definitions in either the 4-2 or 4-3 disclosures.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1    specific evidence of the meaning of a claim term") (internal quotations omitted).

2    **IV.    THE '776 PATENT:  A "COMPENSATING" IMPLANT NEED NOT HAVE ITS "PEAK CONCENTRATION" IN THE BODY OF THE DEVICE.**

3

4         Fairchild proposes to narrow the '776 patent by requiring that the "peak concentration" of

5    the compensating implant be located in the compensated body region.  The term "peak

6    concentration" appears *nowhere* in the patent.  Fairchild's attempt to add this additional limitation

7    to the claims relies almost entirely on a declaration from Dr. Blanchard.

8         **A.    AOS's Proposed Construction Is Based Properly On The Intrinsic Evidence.**

9         The claim language itself defines what it means to compensate a portion of the body

10   region.  Compensating the body region is performed by "<u>implanting material of said second

11   conductivity type in said body region</u>."  Wu Ex. 2, '776 patent, col. 9:14-16.  This definition has

12   three parts:  (1) implanting material; (2) which has the "second" conductivity type; and (3) and

13   the material goes into the body region.  AOS's proposed definition matches this definition from

14   the claim language because the "second" conductivity type is opposite the conductivity type of

15   the body.  '776 patent at col. 9:5-20.

16        The specification provides the same description of how to compensate the body:

17             A predetermined portion of the body region adjacent to the source region is
               compensated in impurity concentration <u>by ion implanting a material of the
18             second conductivity type into the body region</u>.

19   '776 patent at col. 3:55-58.  In particular, if material of the second conductivity type implants into

20   the body region, the limitation is satisfied.  With a clear and unambiguous construction from the

21   intrinsic evidence, the court need not look further.

22        **B.    Fairchild's Proposed Construction – Based On A Term That Appears Nowhere In The '776 Patent – Must Be Rejected.**

23        Fairchild proposes additional limitations to this claim element based on the "peak

24   concentration" of the implant:

25             Implanting impurities of the second conductivity type into the body
               region such that the peak concentration of that implant is located in
26             the body region, and such that the conductivity type at the location
               of the peak concentration of that implant does not change.

27

28   As AOS pointed out in its opening brief, "peak concentration" does not appear in the claims,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                    13                AOS'S REPLY CLAIM CONSTRUCTION BRIEF
                                                  PURSUANT TO PATENT L.R. 4-5
                                                  (C 07-2638 JSW)

1   specification, or prosecution history.  Thus, Fairchild's proposed construction is heavily based on

2   the assertions of Dr. Blanchard, its hired expert.  *See, e.g.,* Fairchild Resp. Br. at 19:11-25:15

3   (citing to Dr. Blanchard's declaration 14 times).  The claim language and specification supporting

4   AOS's construction outweigh Dr. Blanchard's litigation-induced assertions.  *Biagro Western*

5   *Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1302-3 (Fed. Cir. 2005) (rejecting claim

6   construction based "heavily" on expert testimony.)[14]

7           To the extent Fairchild or Dr. Blanchard address the intrinsic evidence, their analysis is

8   misguided.  They purport to interpret the embodiments of the '776 patent, but, even if their

9   interpretations are accepted, they cannot justify *limiting* the claims to those embodiments.  For

10  example, Fairchild describes conditions that "can" occur in the embodiments described in the

11  patent, and asserts that they therefore "must" occur in the recited claims.  Fairchild Opp. Br. at

12  21:25-26; 22:5-6.  The specification states that "Profile 70B can be higher in amplitude and can

13  be coincident with the peak value of the body diffusion curve 66."  '776 patent at 7:48-50.  Thus

14  profile 70B *may be* lower in amplitude and *may not* be coincident with the peak value of body

15  diffusion curve 66.  In particular, there is no requirement that profile 70B have a peak in the body

16  region.  Further, there is no requirement that the peak of curve 70B be the same as the peak of the

17  combined curve 70.  *See* Fairchild Resp. Br. at 22:19-20 (failing to provide any support for its

18  assertion that they are the same).  In fact, because profile 70B may be lower in amplitude than

19  profiles 70A and 70C, the combined profile 70 may not even have a clear peak.  Salama Reply

20  Decl. ¶ 10.  Moreover, implants 70A, 70B, and 70C are merely examples.  '630 patent at 8:44-45.

21          Fairchild's argument that implants 70A, 70B, and 70C are not called "compensating

22  implants" is irrelevant.  *See* Fairchild Resp. Br. at 22:24-23:5.  The function of the individual

23  implants matters, not the label.  Each of the profiles 70A, 70B, and 70C is part of the

_____

[14]    Dr. Blanchard is wrong in any event.  Whether the body region is compensated is based
on the location of real atoms, not on the statistical average location of the "peak concentration."
Salama Reply Decl. ¶¶ 7,8.  Both the claims and the specification state that compensating
involves implanting *material* into the body region.  '776 patent at 3:55-58; 9:14-16.  Fairchild, on
the other hand, proposes to ignore the location of real atoms and identify compensation based
solely on the *average* location (at the "peak concentration").  Regardless of how much impurity
material is implanted into the body region, Fairchild argues that there is no compensation unless
the average location is in the body region.  Fairchild's proposal contradicts both the intrinsic
evidence and common sense.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                                    14                    AOS'S REPLY CLAIM CONSTRUCTION BRIEF
                                                                      PURSUANT TO PATENT L.R. 4-5
                                                                      (C 07-2638 JSW)

1    compensation curve 70. '776 patent at 7:64-66. As part of the compensation curve, each of the

2    profiles 70A, 70B, and 70C compensates the body region – there are no superfluous implants.

3    Salama Reply Decl. ¶ 9. The implantation in 70A "implant[s] material of said second

4    conductivity type in said body region," but has a peak in the source region, directly contradicting

5    Fairchild's proposed definition. '776 patent at 9:15-16, Figs. 4 and 5.

6          The Court must also reject Fairchild's proposed limitation about not changing

7    conductivity type because it is based on the flawed usage of "peak concentration." As

8    demonstrated above, implant peaks are not relevant to whether material has been implanted into

9    the body region. The body may be "compensated" even if the peak compensation of the implant

10   is located in the source. In addition, there can be multiple implants to compensate the body,

11   without a well-defined peak, rendering Fairchild's proposed claim language meaningless. '776

12   patent, Fig. 5; Salama Reply Decl. ¶ 10.

13         Fairchild resorts to mischaracterization, asserting that "AOS argues that a compensating

14   implant can convert the conductivity type of the material into which the dopants are implanted."

15   Fairchild Resp. Br. at 24:26-27. This is just wrong. Tellingly, Fairchild was unable to cite any

16   AOS statement to support this assertion.

17   **V.    CONCLUSION**

18         For the foregoing reasons, the Court should adopt AOS's proposed constructions of the

19   disputed terms from the AOS patents-in-suit.

20

21   Dated: April 7, 2008                    MORGAN, LEWIS & BOCKIUS LLP

22

23                                           By    /s/ Daniel Johnson, Jr.
                                                   Daniel Johnson, Jr.

24                                           Attorneys for Plaintiffs and
                                             Counterdefendants
25                                           ALPHA & OMEGA SEMICONDUCTOR,
                                             LTD. AND ALPHA & OMEGA
26                                           SEMICONDUCTOR, INC.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1-PA/3697914                                    15          AOS'S REPLY CLAIM CONSTRUCTION BRIEF
                                                            PURSUANT TO PATENT L.R. 4-5
                                                            (C 07-2638 JSW)