TOWNSEND AND TOWNSEND AND CREW LLP
ERIC P. JACOBS (State Bar No. 88413)
PETER H. GOLDSMITH (State Bar No. 91294)
ROBERT A. McFARLANE (State Bar No. 172650)
IGOR SHOIKET (State Bar No. 190066)
Two Embarcadero Center, 8th Floor
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
E-mail: epjacobs@townsend.com
phgoldsmith@townsend.com
ramcfarlane@townsend.com
ishoiket@townsend.com

Attorneys for Defendant and Counterclaimant
FAIRCHILD SEMICONDUCTOR CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ALPHA & OMEGA SEMICONDUCTOR, INC., a California corporation; and ALPHA & OMEGA SEMICONDUCTOR, LTD., a Bermuda corporation,

Plaintiffs and Counterdefendants,

v.

FAIRCHILD SEMICONDUCTOR CORP., a Delaware corporation,

Defendant and Counterclaimant.

AND RELATED COUNTERCLAIMS.

Case No. C 07-2638 JSW (EDL)
(Consolidated with Case No. C 07-2664 JSW)

**FAIRCHILD SEMICONDUCTOR CORPORATION'S SECOND AMENDED NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Date: September 16, 2008
Time: 9:00 a.m.
Courtroom: Courtroom E, 15th Floor

Hon. Elizabeth D. Laporte

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
III. ARGUMENT ..... 6
A. AOS Should Produce All of Its Manufacturing Documents ..... 6
B. AOS Should Produce All of Its Simulation Documents ..... 7
C. AOS Should Produce All of Its Device Structure Documents ..... 8
D. AOS Should Produce All of Its Device Operational Documents ..... 9
E. AOS Should Produce the Requested Documents for the 56 Additional AOS Products Identified by Fairchild as Potentially Infringing ..... 10
F. AOS's Production of the Requested Documents Is Not Excused by the Parties' Representative Parts Agreement ..... 11
IV. STATEMENT OF DISCOVERY IN DISPUTE PURSUANT TO CIVIL L.R. 37-2 ..... 12
V. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

Page

**Cases**

*Hickman v. Taylor*,
329 U.S. 495 (1947) ........................................................................ 6

**TO PLAINTIFFS AND COUNTERDEFENDANTS ALPHA & OMEGA SEMICONDUCTOR, INC., AND ALPHA & OMEGA SEMICONDUCTOR, LTD.:**

PLEASE TAKE NOTICE THAT on September 16, 2008, at 9:00 AM, or as soon thereafter as counsel may be heard, in Courtroom E, 15th Floor, of the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Defendant and Counterclaimant Fairchild Semiconductor Corporation ("Fairchild") will and hereby does move the Court for an order compelling Plaintiffs and Counterdefendants Alpha & Omega Semiconductor, Inc., and Alpha & Omega Semiconductor, Ltd. (collectively, "AOS") to produce all manufacturing documents, simulation documents, device structure documents and device operation documents in AOS's possession, custody, or control related to AOS's accused products.

This motion, which is made pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) and Northern District of California Civil L.R. 7-1, 7-2, and 37-2, is based on this notice and the memorandum of points and authorities submitted herewith, the accompanying declaration of Leonard J. Augustine, Jr. and any exhibits thereto, any and all pleadings and papers on file in this proceeding, and the oral argument to be heard at the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Over a year ago, Fairchild served document requests on AOS seeking documents that describe the basic manufacture, structure and operation of the accused AOS power MOSFETs. The requested documents would provide the following information:

- AOS's methods of manufacturing its accused products;
- AOS's simulation of its accused products;
- the device structure of AOS's accused products; and
- the operation of AOS's accused products.

These documents are directly relevant to the issues of infringement because Fairchild's asserted patents are directed to the method of manufacture, structure and operating characteristics of the accused AOS products. ***More than a year*** after Fairchild first requested these documents, and despite repeated requests and numerous occasions of meeting and conferring, AOS continues to refuse

to fulfill its discovery obligations and produce the requested information.

AOS's stonewalling is untenable. Having requested (and received) similar documents from Fairchild, and having relied on similar documents in its preliminary infringement contentions, AOS cannot be heard to argue that the requested documents are somehow irrelevant. Collection and production of the requested documents will impose no undue burden on AOS. These are standard documents used in the manufacture and design of power MOSFET devices, and should be readily available and easily accessible by AOS. There is simply no excuse for AOS's failure to produce the requested documents.

Perhaps the best illustration of AOS's disregard of its discovery obligations is its refusal to produce the so-called "recipes." Recipes are one of the most fundamental manufacturing documents, containing the parameters that provide detail for a step in the manufacturing process. Recipes are relevant to the issues of infringement, and both Fairchild and AOS requested their production from each other, using the term "recipe" in their respective document requests and meet-and-confer letters. Yet now, having received Fairchild's recipes months ago, AOS takes the position that the term "recipe" is vague and that it is not obligated to produce them. Even after Fairchild patiently provided to AOS an explicit explanation of the recipe documents it is seeking in response to AOS's implausible vagueness objection, AOS continues to refuse to produce these documents. AOS should not be allowed to continue its delaying tactics. It should be compelled to immediately produce the responsive documents showing the manufacture, structure and operation of the accused AOS power MOSFETs.

## II. BACKGROUND

Fairchild is asserting six patents against AOS in this action. Five of these patents (collectively, "the Fairchild Mo Patents") are related through a common parent application.[1] The Fairchild Mo patents relate to the manufacturing, structure and operation of power MOSFET devices. Declaration

---

[1] The related patents are U.S. Patents No. 6,429,481 ("the '481 patent"), 6,521,497, 6,710,406, 6,828,195, and 7,148,111.

of Richard A. Blanchard in Support of Fairchild's Motion to Compel ("Blanchard Decl."), at ¶¶ 5-8. Certain claims of the Fairchild Mo patents relate to methods of manufacture of power MOSFET devices. *Id*. at ¶ 9. Consequently, evidence of infringement will be based, in part, on documents showing AOS's method of manufacture of the accused products. *Id*. at ¶ 13. Certain claims of the Fairchild Mo patents relate to device structure and operation of power MOSFET devices, including controlling the location of the initiation of "breakdown"[2] and the distribution of "avalanche current." *Id*. at ¶ 10. Evidence of infringement of these claims will be based, in part, on documents showing the structure and operation of the allegedly infringing devices. *Id*. at ¶¶ 19, 26, 32.

Over a year ago, on July 27, 2007, Fairchild served its first set of requests for production of documents on AOS, seeking documents showing AOS's methods of manufacturing, and the structure and operation of AOS's accused products, that are the subject of this motion.[3] Declaration of Leonard J. Augustine, Jr. in Support of Fairchild's Motion to Compel Further Responses and Production of Documents ("Augustine Decl."), Exh. 2 ("Fairchild's First Set of Requests"), Requests No. 1, 2, 3, 7 and 8, at pp. 5-6. AOS responded that it would produce documents related to the "manufacture," "design," "development," "structure" and "operation" of AOS's accused products. Augustine Decl., Exh. 3, Responses to Request Nos. 1, 2, 3, 7, and 8, at pp. 3-6. On November 12, 2007, Fairchild served additional requests for documents, including documents that would show AOS's analyses of the structure and operation of the accused AOS products. Augustine Decl., Exh. 4 ("Fairchild's Second Set of Requests"), Request No. 61, at p. 9. AOS again responded it would produce responsive documents. *Id.* at Exh. 5, Response to Request No. 61, at p. 19. Notwithstanding its promise to produce these

---

[2] "Breakdown" can cause permanent damage to the device when a high voltage is applied. Blanchard Decl., at ¶¶ 6-7. Preventing such damage is an object of the Fairchild Mo patents. *Id*. at ¶ 10; *see, e.g.*, Augustine Decl., Exh. 1, ('481 patent), claim 1, at col. 8, lines 62-67 ("breakdown initiation point is spaced away from the trench").

[3] AOS filed a complaint for patent infringement on May 17, 2007 (Case No. C 07-02638) and Fairchild filed a complaint on May 18, 2007 (Case No. C 07-02664). Fairchild served a first set of document requests in each of the two cases on July 27, 2007. The two suits were consolidated into this action on July 31, 2007. Stipulation and Order Granting Consolidation (Docket No. 25). On November, 12, 2007, Fairchild served a second set of document requests in this action.

documents, AOS has failed to do so. As discussed in more detail below, all of these documents are highly relevant to the infringement issues.

Fairchild specifically requested that AOS produce its manufacturing documents ***over 6 months*** ago, and explained why they must be produced.[4] Augustine Decl., Exh. 6 ("Because some of the Fairchild patent claims relate to the mechanism of breakdown, we need to review all of the process parameters for the AOS accused products."). Fairchild reiterated its request for manufacturing documents on numerous occasions. *See, e.g.*, Augustine Decl., Exh. 7 at p. 1, Exh. 8 at p. 1, Exh. 9 at p. 1, Exh. 10 and Exh. 11 at pp. 1-2. Despite these repeated requests, AOS did not produce a complete set of its manufacturing documents.

Fairchild has also specifically requested AOS's simulation documents, device structure documents and device operation documents. Augustine Decl., Exh. 11, at pp. 2-3. AOS refuses to make a complete production of these documents as well.[5] *See, e.g.*, Augustine Decl., Exhs. 12-14.

As mentioned above, Fairchild has requested production of the recipes used by AOS in the manufacture of the accused products. Recipes are important manufacturing documents as they contain detailed parameters for a semiconductor manufacturing step and may include information such as temperature, time, gas flows, and other parameters used for a particular manufacturing step. Blanchard Decl., at ¶ 12. Recipes are also important in that they provide information that can be used in simulations. *Id*. at ¶ 14. Fairchild specifically requested that AOS produce its recipes ***over 6***

---

[4] Even prior to the commencement of this litigation, on May 17, 2007, Fairchild requested that AOS produce, subject to a confidentiality agreement, information regarding the processes by which the accused products are manufactured. AOS refused to produce the information. Fairchild again made known its desire for recipes at a Court hearing on November 27, 2007. Augustine Decl., Exh. 25 (Nov. 27, 2007, Hearing Transcript), at transcript p. 24, line 25 - p. 25, line 13 ("We have repeatedly asked them, even before we filed the lawsuit, give us your product recipe and specs. That is the best evidence that would show whether they form a deep well inside the body or not, and they have consistently refused.")

[5] In response to a meet-and-confer with Fairchild, AOS produced a handful of documents. For example, on July 21, 2008, AOS produced approximately 23 recipes that appear to be very limited in scope in that they cover only certain oxide growth and drive step recipes. Fairchild, however, needs all of AOS's recipes of all recipe types, including trench etch, measurement, polysilicon deposition, polysilicon etching, polysilicon annealing, and ion implantation recipes.

***months*** ago. Augustine Decl., Exh. 6 ("we will need the . . . recipe for each unique process AOS identified in its list produced on January 22"). Fairchild has reiterated its request for AOS's recipes on numerous occasions, without success. *See* Augustine Decl., Exh. 7 at p. 1, Exh. 8 at p. 1, Exh. 9 at p. 1, Exh. 10 and Exh. 11 at pp. 1-2.

Incredibly, AOS's latest maneuver to avoid producing its recipes is to characterize Fairchild's request as “vague.” Augustine Decl., Exh. 12. *Yet AOS used the term "recipe" in its own document requests and discovery efforts*. *E.g.*, Augustine Decl., Exh. 15, Request 12, at p. 6 (requesting "[a]ll documents and things describing any Fairchild Accused Device, including the ***recipes***") (emphasis added); AOS's Motion to Compel (Docket No. 71), at p. 6 (stating "[i]n the meet and confer, Fairchild's counsel stated that it would be unduly burdensome for Fairchild to produce even the process flows and ***recipes*** for the products encompassed by AOS's proposed definition.") (emphasis added); Augustine Decl., Exh. 16, at p. 3 (stating "[s]ome recipes refer to [a certain specification]" in letter seeking information about Fairchild's manufacturing documents). Apparently, the term "recipe" became vague to AOS only after Fairchild produced its recipes.

Fairchild attempted to resolve this dispute without involving the Court. Not relying solely on letters and e-mails, Fairchild raised the issue of AOS's inadequate document production in a telephonic meet-and-confer on July 16, 2008, in which four AOS attorneys participated. All four AOS attorneys refused to address the issue. *See* Augustine Decl., Exhs. 13-14.

On August 1, 2008, AOS stated its final position on the issue - without addressing the specifics of Fairchild's numerous specific requests and letters and e-mails describing the deficiencies in AOS production, AOS made a blanket (and incorrect) statement that it had produced "all documents that you properly and clearly requested, including but not limited to, process flows, drive-in diffusion recipes, and information describing product simulations."[6] Augustine Decl., Exh. 17. Fairchild had

---

[6] On that same date, AOS informed Fairchild it was producing additional documents. This production, received on Monday, August 4, included no recipes, no process flows, no GDS files, no simulation results or inputs, no device structure documents and no device operation documents. The production included only some documents related to identifying which of AOS’s manufacturing processes correspond with certain previously produced mask files and GDS files, and some design review documents containing mere *summaries* of simulations and test data. AOS did not produce any

Continued on the next page

no choice but to bring this motion if it is going to obtain the discovery to which it is entitled.

## III. ARGUMENT

The scope of discovery in all federal court litigation, including patent cases, is set forth in Federal Rule of Civil Procedure 26(b)(1), which provides that:

> Parties may obtain discovery regarding ***any matter, not privileged, that is relevant to the claim or defense of any party***, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. ***Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence***. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

(Emphasis added). "[D]iscovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). As discussed below, Fairchild's discovery requests are relevant to Fairchild's claims of patent infringement and reasonably calculated to lead to the discovery of admissible evidence.

### A. AOS Should Produce All of Its Manufacturing Documents

Fairchild seeks AOS's manufacturing documents for AOS's accused products.[7] These documents describe the method by which a semiconductor is manufactured, and include fundamental manufacturing documents such as recipes, process flows, GDS files, wafer specifications, epitaxial specifications, and other documents needed to manufacture AOS's accused products. Blanchard Decl., at ¶ 12. These are standard documents used in the manufacture of semiconductor devices, including power MOSFETS. *Id*. at ¶ 13. These documents show how a given device is made and are directly relevant to the infringement issues presented by the Fairchild Mo patents. *Id*. These

---

Continued from the previous page

of the manufacturing or simulation documents Fairchild actually requested.

[7] The requested manufacturing documents are responsive to at least Request No. 2 ("All documents describing ***any aspect of the process of manufacture*** of any accused product, including without limitation process, flows, process travelers and process recipes") in Fairchild's First Set of Requests. Augustine Decl., Exh. 2, Request No. 2, at p. 5 (emphasis added).

documents also show the characteristics of the structures in AOS's accused products, and can be used in industry-standard computer simulations of their structural and electrical properties. *Id*. at ¶ 14. AOS cannot deny these documents are relevant to Fairchild's infringement analysis because it requested similar documents from Fairchild regarding Fairchild's accused products. *See* Augustine Decl., Exh. 15, Request No. 15, at p. 6 (AOS's request for documents that "determine the manufacturing process . . . ."). AOS should be ordered to produce these documents immediately.

**B. AOS Should Produce All of Its Simulation Documents**

Fairchild seeks AOS's device computer simulation documents for AOS's accused products.[8] Semiconductor manufacturers, including AOS, often rely on such simulations during the design and development of their products, including power MOSFET devices. Blanchard Decl., at ¶ 16; Augustine Decl., Exh. 18, at p. AOS_F00006762. Simulations involve using computer software to model the structure and electrical behavior of devices. There are several types of simulations. One type, known as process simulation, involves modeling the structure of a device. Another type, known as device simulation, involves modeling the electrical behavior of a device during its operation. *Id*.

The documents Fairchild seeks include the output data of AOS's process and device simulations for the accused products, and the related inputs from which those results were achieved. To perform simulations, one must input certain information into the simulation program describing the

---

[8] The requested simulation documents are responsive to at least Request No. 1 ("All documents describing ***any aspect of the structure or design*** of any accused product . . . ."), Request No. 7 ("All documents . . . that ***relate to or were referred to, examined or used in the design and development*** of the accused products."), and Request No. 8 ("All documents . . . that ***relate to the structure or design*** of the accused products.") in Fairchild's First Set of Requests. Augustine Decl., Exh. 2, at Requests No. 1, 7 and 8, at pp. 1-2 (emphasis added).

[10] The analysis, or reverse-engineering, documents are responsive to at least Request No. 1 ("All documents ***describing any aspect of the structure or design*** of any accused product . . . ."), Request No. 3 ("All documents ***describing the configuration*** of any accused product ***at any stage of its manufacture*** . . ." and Request No. 8 ("All documents . . . that ***relate to the structure or design*** of the accused products.") in Fairchild's First Set of Requests, Augustine Decl., Exh. 2, Requests No. 1, 3 and 8, at pp. 1-2, as well as Request No. 61 ("All documents and things describing ***any analyses*** of the Accused AOS devices, including but not limited to ***Secondary Ion Mass Spectrometry (SMS)*** [sic], ***Scanning Electron Microscopy (SEM)*** . . . ..") in Fairchild's Second Set of Requests, Augustine Decl., Exh. 4, Request No. 61, at p. 9 (emphasis added).

device structure and how the device is manufactured. Such input information is typically found in files referred to as coefficient files, input command files, mask files, structure boundary files, and measured doping files. *Id*. at ¶ 17. Using the input information concerning a device, a simulation program develops a simulation of the structural and operational features of a device. The output of the simulation may be in the form of simulated electrical data, output files (structure, doping, and/or grid output files), or other information. The output data may also include drawings of the device structure showing current paths, electric field lines, or other information. *Id*. at ¶ 18. Because simulations can be used to model the structure and operation of devices, they provide information that is relevant to the structural and operational features claimed in the Fairchild Mo patents. *Id*. at ¶ 19. AOS cannot deny these documents are relevant to Fairchild's infringement analysis because it requested similar documents from Fairchild regarding Fairchild's accused products. *See* Augustine Decl., Exh. 15, Request No. 13, at p. 6 (AOS's request for documents regarding "research, development, design, configuration, engineering, testing and operation") and Request No. 17, at p. 7 (AOS's request for documents regarding Fairchild's "analysis or simulation of the breakdown initiation"). AOS should be ordered to produce these documents immediately.

**C. AOS Should Produce All of Its Device Structure Documents**

Fairchild seeks AOS's device structure documents for AOS's accused products. These documents reflect AOS's understanding of the structures in its accused devices. The device structure documents include results of techniques used by AOS in analyzing the structural features of its accused products. This includes the results of commonly used techniques such as secondary ion mass spectroscopy ("SIMS"), scanning capacitance microscopy ("SCM"), spreading resistance profile ("SRP") and scanning electron microscopy techniques ("SEM").[10] Blanchard Decl., at ¶¶ 21-24. Each of these techniques can show the structural features of AOS's devices (including the shape and location of various regions in the device, as well as the conductivity type and dopant concentration of such regions), and are therefore relevant to showing the structural features claimed in the Fairchild Mo patents are present in AOS's products. *Id*. at ¶ 26. The device structure documents also include

"inline data"[11] - quality assurance data typically measured by a semiconductor manufacturer at various points during the manufacturing process to verify that a given lot of devices has been properly manufactured up to that point in the manufacturing process. *Id*. at ¶ 25. In-line data can establish the structural features of the device (e.g., trench depth) at various points in the manufacturing process, and is therefore useful in evaluating the features of a finished device. *Id*. AOS cannot deny these documents are relevant to Fairchild's infringement analysis because it requested similar documents from Fairchild regarding Fairchild's accused products. *See* Augustine Decl., Exh. 15, Request No. 14, at p. 6 (AOS's request for documents that "determine the structure and/or composition" of Fairchild's products) and Request No. 23, at p. 7 (request for "reverse-engineering" analysis documents).

The applicability of these documents to infringement issues is demonstrated by Fairchild's and AOS's use of these types of analysis documents in the parties' preliminary infringement contentions. *See e.g.*, Augustine Decl., Exh. 19 (Fairchild's PICS), at Exhibit 6 and Figs. AO4410-3, AO4410-4 and AO4410-5 attached thereto (relying on SEM, SCM and SIMS results, respectively); Augustine Decl., Exh. 20 (AOS's PICS), at p. 1 ("AOS has included reverse-engineering images with these disclosures . . . ."), Exhibit A (citing to images) and Images of FDP047AN08A0, FDS4435BA, FDP3652 and FDS6675BZ attached thereto. AOS should be ordered to produce these documents immediately.

**D. AOS Should Produce All of Its Device Operational Documents**

Fairchild seeks AOS's device operation documents for AOS's accused products.[12] These documents include those containing relevant data used in the semiconductor industry for evaluating

---

[11] The "in-line data" documents are responsive to at least Request No. 1 ("All documents describing ***any aspect of the structure or design*** of any accused product . . . ."), Request No. 3 ("All documents describing the ***configuration*** of any accused product ***at any stage of its manufacture*** . . ." and Request No. 8 ("All documents . . . that ***relate to the structure or design*** of the accused products.") in Fairchild's First Set of Requests, Augustine Decl., Exh. 2, Requests No. 1, 3 and 8, at pp. 1-2 (emphasis added).

[12] These documents are responsive to at least Request No. 1 ("All documents describing ***any aspect of the structure or design*** of any accused product . . . .") and Request No. 8 ("All documents . . . that ***relate to the structure or design*** of the accused products.") in Fairchild's First Set of Requests. Augustine Decl., Exh. 2, Requests No. 1, 8, at pp. 1-2 (emphasis added).

the operational characteristics of power MOSFET devices, including "electrical breakdown current-voltage characteristics data," "operational transistor current-voltage characteristics data," and "unclamped inductive switching data." Blanchard Decl., at ¶¶ 27-30. These documents also include those containing raw data obtained by a manufacturer from its devices used to create the graphs, charts and plots in its published datasheets. *Id.* at ¶ 31. This raw data is relevant to showing the structure and operation of devices, including their breakdown characteristics. *Id.* Each of these categories of documents, in combination with information concerning device structure, can be used to evaluate the operational features of semiconductor devices, including the characteristics of avalanche breakdown and avalanche current in the devices. *Id.* at ¶ 32. This information therefore is directly relevant to showing the operational features claimed in the Fairchild Mo patents. *Id.* AOS cannot deny that these documents are relevant to Fairchild's infringement analysis because it requested similar documents from Fairchild regarding Fairchild's accused products. *See* Augustine Decl., Exh. 15, Request No. 16, at p. 6 (AOS's request for documents regarding "function and/or performance characteristics"). AOS should be ordered to produce these documents immediately.

### E. AOS Should Produce the Requested Documents for the 56 Additional AOS Products Identified by Fairchild as Potentially Infringing

In or about May 2008, Fairchild became aware that AOS was selling at least 56 products on its website in addition to the products that Fairchild had previously accused in its preliminary infringement contentions.[13] Fairchild requested complete manufacturing process information for those additional 56 products. Augustine Decl., Exh. 21. Fairchild has repeated its request several times. Augustine Decl., Exh. 9 at p. 1, Exh. 10 and Exh. 11 at p. 3. On July 3, 2008, AOS stated that it would "begin producing process flows, GDS files, and epitaxial layer specification [sic] for these products next week." Augustine Decl., Exh. 12, at p. 2. To date, however, AOS has not produced documents for these 56 additional products.[14]

---

[13] In its preliminary infringement contentions, Fairchild has asserted patent claims against approximately 342 AOS power MOSFET products. Augustine Decl., Exh. 19, at p. 2 and Exhibit 1 thereto.

[14] Fairchild recently produced relevant manufacturing documents for a product that was released to the

Continued on the next page

Fairchild seeks the same manufacturing documents, simulation documents, device structure documents and device operation documents discussed in subsections A-D, *supra*, for these 56 additional AOS products. To the extent AOS has such responsive documents in its possession, custody, or control, it should be ordered to produce such documents immediately.

**F. AOS's Production of the Requested Documents Is Not Excused by the Parties' Representative Parts Agreement**

AOS wrongly maintains that it is not required to produce the requested documents due to an agreement between the parties with respect to representative parts. *See, e.g.*, Augustine Decl., Exh. 14. AOS's position is meritless. Nothing the parties have agreed to with respective representative parts allows AOS to withhold the requested documents. Throughout this action, Fairchild has urged AOS to come to an agreement that each party would identify representative groups of its parts for infringement analysis and limit discovery to one part, or a few, from each group. *See* Joint Case Management Conference Statement (Docket No. 28) at p. 6 ("Fairchild proposes that the parties agree to select representative accused products in order to reduce the amount of discovery and to reduce the length of trial"); Augustine Decl., Exh. 22 at p. 1 ("Eric Jacobs again raised the issue of both parties agreeing to provide discovery in representative parts"), Exh. 23 at p. 5 ("Fairchild has proposed on several occasions that the parties agree on a list of representative parts for discovery and trial"), Exh. 24 at p. 2 ("Fairchild still proposes (as it has proposed on numerous occasions) that the parties agree on a list of representative parts for discovery and trial"), and Exh. 25 (Nov. 27, 2007, Hearing Transcript) at transcript p. 20, line 24 - p. 21, line 4 ("We have repeatedly offered to them to agree on representative samples so that the parties do not need to take discovery on the entire product line"). Only after the Court urged the parties to come to such an agreement, Augustine Decl., Exh. 25 (Nov. 27, 2007, Hearing Transcript), at transcript p. 21, lines 5-22, did AOS finally agree to exchange representative parts lists. However, as in other instances describe above, AOS did not follow through

---

Continued from the previous page

public in June or July.

on its promises. The "representative parts list" produced by AOS is nothing more than a list of ***all 342*** of AOS's products and fails to group AOS's accused parts or processes in any meaningful way.[15] *See* Augustine Decl., Exh. 26 ("AOS's Parts List"). AOS's Parts List identified a multitude of different process flows used by AOS to manufacture its products, and once again failed to group those process flows in any way. *Id*. Consequently, Fairchild still needs the process documents for all of AOS's parts and processes to have a full opportunity to analyze infringement issues.

Although Fairchild expressed a willingness to propose grouping for AOS's processes, it cannot do so without a complete set of AOS's manufacturing documents.[16] Fairchild has proposed an alternative that might allow a representative production by AOS: that "AOS propose groupings of its own products, in the same way that Fairchild has already done for its products." Augustine Decl., Exh. 11, at p. 3 (noting this would be a "more efficient approach given that AOS has far more information about its products than Fairchild"). Over six months after Fairchild grouped thousands of products into meaningful groupings, however, AOS has not done so for its several hundred products. AOS must either provide Fairchild meaningful representative groupings for its accused products that Fairchild can rely on for infringement analysis purposes and produce the necessary documents and information so that Fairchild can verify the accuracy of the groupings, or provide Fairchild full discovery on all of its accused products.

## IV. STATEMENT OF DISCOVERY IN DISPUTE PURSUANT TO CIVIL L.R. 37-2

A statement setting forth in full the each request relevant to this motion, followed immediately by the objections and/or responses thereto, is contained in Exhibit A to this motion. The basis for

---

[15] By contrast, Fairchild identified a relatively small number of different manufacturing process technologies for thousands of accused Fairchild parts, and a representative part for each such technology.[15] *See* Augustine Decl., Exh. 27 (Fairchild's Representative Technologies List). Per agreement with Fairchild, AOS recently requested additional manufacturing documents from Fairchild for certain members of the representative families so that AOS can confirm the accuracy of Fairchild's selection of representative groupings.

[16] Even if the requested documents are produced, Fairchild will be able to propose representative groups only if AOS's products are designed such that infringement issues are common to groups of products.

Fairchild's contention that it is entitled to the requested discovery is included in the Argument section, *supra*. The requests made by Fairchild are not cumulative or duplicative of other requests, and documents responsive to the requests are, to Fairchild's knowledge, solely within AOS's possession, custody and control and cannot be obtained from some other source that is more convenient, less burdensome, or less expensive.

**V. CONCLUSION**

For these reasons, Fairchild respectfully requests that the Court issue an Order compelling AOS to produce all manufacturing documents, simulation documents, device structure documents and device operation documents in AOS's possession, custody, or control for AOS's accused products, including for the additional 56 products identified by Fairchild in its May 21, 2008, letter to AOS.

DATED: August 12, 2008

TOWNSEND AND TOWNSEND AND CREW LLP

By: /s/*Igor Shoiket*
IGOR SHOIKET

Attorneys for Defendant and Counterclaimant.
FAIRCHILD SEMICONDUCTOR CORPORATION

61445179