1  DANIEL JOHNSON, JR. (SBN 57409)
   BRETT M. SCHUMAN (SBN 189247)
2  **MORGAN, LEWIS & BOCKIUS LLP**
   One Market, Spear Street Tower
3  San Francisco, CA  94105-1126
   Tel:  415.442.1000
4  Fax:  415.442.1001
   djjohnson@morganlewis.com
5  bschuman@morganlewis.com

6  ANDREW J. WU (SBN 214442)
   DAVID V. SANKER (SBN 251260)
7  **MORGAN, LEWIS & BOCKIUS LLP**
   2 Palo Alto Square
8  3000 El Camino Real, Suite 700
   Palo Alto, CA  94306-2122
9  Tel:  650.843.4000
   Fax:  650.843.4001
10 awu@morganlewis.com
   dsanker@morganlewis.com
11
   Attorneys for Plaintiffs and Counterdefendants
12 ALPHA & OMEGA SEMICONDUCTOR, LTD.
   ALPHA & OMEGA SEMICONDUCTOR, INC.
13

14             UNITED STATES DISTRICT COURT

15           NORTHERN DISTRICT OF CALIFORNIA

16               SAN FRANCISCO DIVISION

17

18 | ALPHA & OMEGA SEMICONDUCTOR, | Case No. C 07-2638 JSW
   | LTD., a Bermuda corporation; and | (Consolidated with Case No. C-07-2664 JSW)
19 | ALPHA & OMEGA SEMICONDUCTOR, |
   | INC., a California corporation, |
20 | | **[REDACTED] ALPHA & OMEGA**
   | Plaintiffs and Counterdefendants, | **SEMICONDUCTOR, INC. AND ALPHA &**
21 | | **OMEGA SEMICONDUCTOR LTD.'S**
   | v. | **OPPOSITION TO FAIRCHILD'S MOTION**
22 | | **TO COMPEL**
   | FAIRCHILD SEMICONDUCTOR |
23 | CORP., a Delaware corporation, |
   | | Date:      September 16, 2008
24 | Defendant and Counterclaimant. | Time:      2:00 p.m.
   | | Location:  Courtroom E, 15th Floor
25 | ——————————————————— | Judge:     Hon. Elizabeth D. Laporte
   | AND RELATED COUNTERCLAIMS. |
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/20815683.5

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................ 2

      A.    At The Court's Urging, The Parties Agreed To Limit And Focus Discovery
            Based On A Representative Parts Agreement.......................................................... 2

      B.    AOS Has And Continues To Produce Documents For Which Fairchild Has
            Expressed A Need .................................................................................................... 4

            1.    AOS has produced Manufacturing Documents........................................... 4

                  a.    Process flows and recipes................................................................ 4

                  b.    GDS files.......................................................................................... 6

                  c.    Wafer specifications........................................................................ 7

                  d.    Epitaxial specifications ................................................................... 7

                  e.    "Other documents needed to manufacture AOS's accused
                        products" ......................................................................................... 7

            2.    AOS has produced Simulation Documents................................................. 7

            3.    AOS has produced Device Structure Documents ....................................... 8

            4.    AOS has produced Device Operational Documents ................................... 8

            5.    AOS either has produced or has committed to produce documents
                  pertaining to the 56 additional parts identified by Fairchild ..................... 9

III.  LEGAL STANDARD...................................................................................................... 9

IV.   ARGUMENT ................................................................................................................ 11

      A.    Fairchild Should Be Ordered To Identify Representative AOS Parts And Its
            Discovery Requests Should Be Limited To Those Products ................................ 11

      B.    Fairchild's Demand For All Documents Related To All AOS Products Is
            Cumulative And Facially Overbroad ................................................................... 12

V.    CONCLUSION ............................................................................................................. 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20815683.5                               i                    [REDACTED] AOS'S OPPOSITION TO MOTION TO
                                                                 COMPEL
                                                                 (C 07-2638 JSW)

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Crawford-El v. Britton,*
  523 U.S. 574 (1998) .................................................................................................. 10

5

*Earley v. Champion Int'l Corp.,*
6
  907 F.2d 1077 (11th Cir. 1990) ................................................................................ 10

7

*Evans v. Calise,*
  No. 92 CIV 8430, 1994 WL 185696 (S.D.N.Y. 1994) ............................................. 10

8

*In re ATM Fee Antitrust Litig.,*
9
  No. C 04-2676, 2007 WL 1827635 (N.D. Cal. Jun. 25, 2007) ........................... 11, 16

10

*In re Fontaine,*
  402 F. Supp. 1219 (E.D.N.Y. 1975) ...................................................................... 9, 14

11

*Ingram v. The Home Depot, U.S.A., Inc.,*
12
  No. Civ.A. 97-8060 (E.D. Pa. Feb. 19, 1999) .......................................................... 10

13

*Micro Motion, Inc. v. Kane Steel, Inc.,*
  894 F.2d 1318 (Fed. Cir. 1990) ......................................................................... 10, 16

14

*Ricotta v. Allstate Insurance Co.,*
15
  211 F.R.D. 622 (S.D. Cal. 2002) ...................................................................... 11, 16

16

*Soto v. City of Concord,*
  162 F.R.D. 603 (N.D. Cal. 1995) ....................................................................... 9, 12

17

**Statutes**

18

Civil L.R.
19
  37-2 ......................................................................................................................... 10

20

Fed. R. Civ. P.
  26 ............................................................................................................................... 9

21

Fed. R. Civ. P.
22
  26(b)(1) ...................................................................................................................... 9
  26(b)(2) .................................................................................................................... 10
23
  26(b)(2)(C) ............................................................................................................... 10
  37(b)(2)(c) ................................................................................................................ 14

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii                          [REDACTED] AOS'S OPPOSITION TO MOTION TO
                                                                                              COMPEL
                                                                                              (C 07-2638 JSW)

1    **I.    INTRODUCTION**

2         It is now apparent that AOS has been sandbagged by Fairchild.

3         Months ago, AOS agreed to Fairchild's proposal that discovery proceed on the basis of

4    "representative parts." According to Fairchild, its proposal would limit the burden of production

5    for both parties. At the Court's urging, AOS agreed to this proposal and limited its discovery

6    regarding Fairchild's products to only a limited number of purportedly representative Fairchild

7    products. Fairchild, in contrast, has repeatedly demanded broader and broader discovery

8    regarding all AOS low-voltage trench MOSFET products. Fairchild now moves to compel AOS

9    to produce essentially *all* documents regarding *all* of the accused AOS products – indeed,

10   Fairchild also wants this complete discovery regarding 56 additional AOS products that Fairchild

11   has recently accused of infringement.

12        Enough is enough. AOS has endeavored so far to keep pace with Fairchild's increasing

13   demands, led on by Fairchild's constant assertions that it needed yet another piece of information

14   for all of AOS's parts in order to identify representative AOS parts. Indeed, Fairchild's motion

15   seeks to compel AOS to produce many documents that AOS has already produced in response to

16   Fairchild's incessant requests for additional information, all ostensibly needed by Fairchild so it

17   could identify representative AOS parts.

18        Even putting aside the parties' representative parts agreement, Fairchild fails to carry its

19   burden of demonstrating that the discovery it is seeking, beyond what AOS has already produced,

20   is needed or relevant to the specific patent claims it is asserting against AOS's products. For

21   example, Fairchild seeks documents (such as product recipes) that are duplicative of documents

22   that AOS already has produced (product process flows). Fairchild seeks other documents (e.g.,

23   quality assurance data) that it previously did not dispute are oppressively voluminous and either

24   irrelevant or only marginally relevant, and therefore did not need to be produced by either side.

25        Fairchild's motion is not brought in good faith. It should be denied.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20815683.5

[REDACTED] AOS'S OPPOSITION TO MOTION TO
COMPEL
(C 07-2638 JSW)

II.    **BACKGROUND**

A.    **At The Court's Urging, The Parties Agreed To Limit And Focus Discovery Based On A Representative Parts Agreement.**

Last November, Fairchild proposed that discovery proceed on the basis of representative parts. *See* Doscher Decl. Ex. A (Joint Case Management Conference Statement, Docket # 28) at 6:15-16. As described by Fairchild:

> Such an agreement is typically entered into in semiconductor patent litigation as a means of reducing discovery costs and trial time. Such agreements make sense because many semiconductor products are of similar design and manufacture.

*See* Ex. B (Fairchild's 11/07 Motion to Compel,[1] Docket #57) at 7-8. At the time, Fairchild asserted that it was not interested in obtaining discovery on all 342 accused AOS products. *Id.* *See also* Ex. C (Fairchild's 11/07 Reply Brief,[2] Docket #105) at 2 (characterizing a representative parts agreement as a workable solution to "AOS's grumbling that it is being asked to provide discovery on too many products . . . ."); Augustine Decl. ISO Fairchild Mtn to Compel, Docket # 178 ("Augustine Decl.") Ex. 25 at 18-19 (transcript of 11/27/07 hearing) (emphasizing to the Court that a representative parts agreement was a "practical way to proceed" so that "the parties do not need to take discovery on the entire product line.").

AOS initially was reluctant to enter such an agreement because its products are not designed to share common technical features relevant to Fairchild's patents, and therefore it does not group its products according to those features. *See* Doscher Decl. Ex. D (Hebert Decl. ISO Pl.'s Reply ISO Mtn. to Strike Fairchild's Patent L.R. 3-1 Disclosures, Docket #77) ¶¶ 6-15. Rather, AOS's products are individually designed for targeted applications and thus, as AOS explained to the Court, it was not in a position to propose meaningful product groupings based on Fairchild's vague infringement theories. *Id.* *See also* Augustine Decl., Ex. 25 at 23:7-19 ("we have to understand more about their position . . . before that kind of agreement can be reached."). However, Fairchild assured AOS and the Court that it would be able to identify representative

---

[1] "Fairchild's 11/07 Motion to Compel" refers to Fairchild's Motion to Compel Responses to Interrogatories and Production of Documents (Docket #57, filed Nov. 6, 2007).
[2] "Fairchild's 11/07 Reply Brief" refers to Fairchild's Reply Brief in Support of Its Motion to Compel Responses to Interrogatories and Production of Documents (Docket #105, filed Nov. 27, 2007).

1    AOS products based on AOS's "process specs and the process flows":

2
> That is the best evidence that would show whether they form a deep
> well inside the body or not . . . . When we see their process specs
3
> and the process flows, it will be much easier to determine which of
> their products infringe.
4

5    *See* Augustine Decl. Ex. 25 (Nov. 27, 2007 Hearing Tr.), at 24:25-25:13. At the Court's urging,

6    AOS agreed to this proposal and withdrew its pending motion to compel documents related to all

7    of the accused Fairchild products as a result of this agreement. *See* Augustine Decl., Ex. 25 at

8    19:4-9, 19:25-20:4 (the Court suggests that the parties should start narrowing the case based on

9    limited discovery); *Id.* at 22:2-5 ("you should be willing perhaps with—perhaps on a showing of

10   some design documents . . . to withdraw those products from the case."). The parties agreed to do

11   so on January 17, 2008, in light of progress that had been made toward negotiating a

12   representative parts agreement. *See* Doscher Decl. Ex. E (Fairchild's Notice of Withdrawal,

13   Docket #132) (explaining that "the parties are actively engaged in arriving at an agreement

14   governing the use of representative parts for purposes of discovery"); Ex. F (AOS's Notice of

15   Withdrawal, Docket #133) (explaining that "good faith negotiations towards [a representative

16   parts] agreement have progressed to the point that the pending motions to compel can be

17   withdrawn").

18        AOS has proceeded with its own discovery regarding Fairchild's products based on the

19   parties' agreement, and has only requested production that it needs to develop its infringement

20   theories for a limited number of representative Fairchild parts.

21        Fairchild, on the other hand, has used the parties' agreement as an excuse to demand ever

22   more discovery from AOS. By December 2007, Fairchild asserted that, in order to identify

23   representative AOS parts, it needed the process flows for *all* 342 of AOS's then accused parts:

24
> [P]lease identify the process used to make each of the 342 accused
> AOS parts identified by part number in Fairchild's PICs. This will
25
> help us determine how to proceed on the representative parts issue.

26   *See* Doscher Decl. Ex. G (12/28/07 Email from Jacobs to Wu requesting process flows and

27   recipes for all 342 AOS products).

28   After AOS produced this information, Fairchild came back claiming it needed additional

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20815683.5                              3                    [REDACTED] AOS'S OPPOSITION TO MOTION TO
COMPEL
(C 07-2638 JSW)

1  information for all AOS products – including recipes, wafer epitaxial layer specifications, and

2  computer masking files (a.k.a. "GDS files").  *See* Augustine Decl. Ex. 6 (explaining that Fairchild

3  cannot propose groupings for AOS's products until it sees the process flows, recipes, and GDS

4  files for *all* devices), Ex. 7 (seeking wafer epitaxial layer specifications).

5            AOS sought reassurance from Fairchild that Fairchild would live up to its end of the

6  representative parts agreement.  For example, before producing the GDS files requested by

7  Fairchild for all AOS products, AOS asked Fairchild to confirm that it would work diligently and

8  in good faith to articulate meaningful groupings for AOS's products upon receiving the files.  *See*

9  Doscher Decl. Ex. H (03/21/08 Email from Hoffman to Jacobs).  Fairchild responded:

10            We are already working toward the goal of identifying product
          groupings for AOS's products—we will of course continue to work
11            in good faith toward that goal upon receiving AOS's remaining
          GDS files.

12

13  Doscher Decl. Ex. I (04/14/08 Email from Augustine to Hoffman).  Based on this representation,

14  AOS diligently gathered and produced the GDS files for all its low-voltage power MOSFETs.

15  Fairchild made the same assurance when it requested the recipes that AOS provides to its

16  foundries.  *See* Augustine Decl., Ex. 10 ("Contrary to [AOS's assertion], Fairchild has not 'given

17  up' on its attempt to group AOS products.").

18            Having obtained the benefits of limited production related to its own products, Fairchild

19  now abandons all pretense of upholding its end of the representative parts agreement.  Fairchild

20  now asks the Court to compel AOS to produce within two weeks, in effect, every technical

21  document in its possession.

22        **B.**     **AOS Has And Continues To Produce Documents For Which Fairchild Has**
               **Expressed A Need.**

23

24            **1.**     AOS has produced Manufacturing Documents

25                  **a.**     Process flows and recipes

26            AOS long ago produced process flows and recipes for all 342 products initially accused

27  by Fairchild.  *See, e.g.,* Doscher Decl. Ex. J (02/22/08 Letter from Wong to Augustine)

28  (producing process flows AOS_F00014159-14638), Ex. K (03/14/08 Letter from Majidian to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20815683.5                    4                    [REDACTED] AOS'S OPPOSITION TO MOTION TO
                                                                              COMPEL
                                                                        (C 07-2638 JSW)

1    Jacobs, et. al.) (producing process flows AOS_F00014741-47).

2

3

4                                                              AOS has grown increasingly frustrated

5    that it has produced all of the process flows and recipes required to describe the structure and

6    composition of AOS's products, and yet Fairchild continues to insist on more.  Therefore, AOS

7    requested that Fairchild identify what additional information it seeks:

8                Fairchild, significantly, has never complained that this information,
             taken together, is insufficient to describe the structure and
9            composition of AOS's products.  Moreover, in light of the
             information contained within AOS's process flows, AOS does not
10           understand Fairchild's vague request for "process recipes."  AOS
             needs further clarification before it can respond further.
11

12    *See* Augustine Decl. Ex. 12 (07/03/08 Letter from Hoffman to Hulse)

13          Fairchild purports to identify missing recipes in its motion to compel.  *See* Fairchild's Mtn

14    at 4, n. 5 ("Fairchild needs . . . trench etch, measurement, polysilicon deposition, polysilicon

15    etching, polysilicon annealing, and ion implantation recipes).

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20815683.5                    5                    [REDACTED] AOS'S OPPOSITION TO MOTION TO
                                                        COMPEL
                                                        (C 07-2638 JSW)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21          **b.**    GDS files
22        AOS also produced long ago GDS files and identifying information for all 342 products
23   initially accused by Fairchild. *See* Doscher Decl. Ex. N (01/11/08 Letter from Hoffman to
24   Jacobs) (producing GDS files AOS_F5000000-10), Ex. J (producing GDS files AOS_F5000011-
25   24), Ex. K (producing GDS file list AOS_F00014740), Ex. O (04/16/08 Letter from Majidian to
26   Augustine, et. al.) (producing design layout and mask information AOS_F00014768-9 and GDS
27

28
MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB2/20815683.5                          6            [REDACTED] AOS'S OPPOSITION TO MOTION TO
COMPEL
(C 07-2638 JSW)

1   files AOS_F5000025-197).

2                              **c.**     Wafer specifications

3           AOS has produced wafer specifications for all 342 products initially accused by Fairchild.

4   *See* Doscher Decl. Ex. P (07/10/08 Letter from Majidian to Jacobs, et. al.) (producing wafer

5   database AOS_F00015362).

6                              **d.**     Epitaxial specifications

7           AOS has produced epitaxial specifications for all 342 products initially accused by

8   Fairchild.  *See id.* (producing wafer epitaxial specifications AOS_F00015359).

9                              **e.**     "Other documents needed to manufacture AOS's accused products"

10          AOS has produced the documents needed to manufacture all 342 of its initially accused

11  products, including the process flows, recipes, GDS files, wafer specifications, and epitaxial

12  specifications.  *See* Hebert Decl. ¶¶ 9-12.  Fairchild has not identified any other documents

13  needed to manufacture AOS's accused products.  Therefore, AOS does not understand Fairchild's

14  vague demand for "other documents."

15                         **2.**     AOS has produced Simulation Documents

16

17

18

19

20                                                                                AOS produced these

21  documents, which Fairchild dismissed as "mere *summaries* of simulations and test data."  *See*

22  Fairchild's Mtn at 5, n. 6 (emphasis in original).  *See also* Hebert Decl. ¶ 14.

23

24

25          Fairchild first specifically identified its purported need for AOS's simulation documents

26  on July 11, 2008.  Augustine Decl. Ex. 11 at 2.  Fairchild now demands the raw data files used by

27  AOS's design tools.  Fairchild's Mtn at 7-8.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[REDACTED] AOS'S OPPOSITION TO MOTION TO
COMPEL
(C 07-2638 JSW)

1    . Review and production of these documents is therefore much

2    more burdensome than for the Design Review documents that have been produced.

3    **3.    AOS has produced Device Structure Documents**

4    AOS has produced non-privileged reverse engineering documents for its accused products

5    including scanning electron microscope ("SEM") images and spread resistance profile ("SRP")

6    analyses, what Fairchild calls Device Structure Documents. *See* Doscher Decl. Ex. R (08/20/08

7    Letter from Majidian to Jacobs, et. al.) (producing SEMs at AOS_F00133346-753), Ex. S

8    (10/10/07 Letter from Majidian to Jacobs, et. al.) (producing, e.g., spread resistance profile

9    ("SRP") analyses at AOS_F00001567-1584).[4]

10    Fairchild also seeks to compel AOS to produce quality control data that both sides initially

11    requested but subsequently ceased requesting in light of the burden and lack of relevance. *See*

12    Doscher Decl. Ex. T (11/15/07 Letter from A. Wu to I. Shoiket), Ex. U (08/18/2008 Letter from

13    Doscher to Shoiket). "Inline" manufacturing quality control data measures the deviations of

14    individual wafers from design specifications during various stages of the manufacturing process,

15    and is oppressively voluminous—more than approximately 2.6 million pages for AOS alone. *Id.*

16    AOS has produced samples of its "inline" manufacturing quality control data. Doscher Decl. Ex.

17    U (producing AOS_F0017130-131). Fairchild has never contended that deviations, on an

18    individual wafer level, are relevant to their infringement analysis.

19    **4.    AOS has produced Device Operational Documents**

20    AOS has produced "unclamped inductive switching" ("UIS") data, "electrical breakdown

21    current-voltage characteristics data," and "operational transistor current-voltage characteristics

22    data."[5] *See* Doscher Decl. Ex. V (08/19/08 Letter from Majidian to Jacobs, et. al.) (producing,

23    e.g., UIS data at AOS_F00129607-14, AOS_F00129643, AOS_F00130533, and

24    AOS_F00133073-133091 and electrical breakdown current-voltage characteristics data at

25    AOS_F00024777 and AOS_F00126644); Ex. Q (producing, e.g., operational transistor current-

26    ─────────────
[4] Fairchild first specifically identified its purported need for AOS's "unclamped inductive
27    switching data," "electrical breakdown current-voltage characteristics data," and "operational
transistor current-voltage characteristics data" on July 11, 2008. Augustine Decl. Ex. 11 at 2.
[5] Here and elsewhere throughout this motion, AOS points to the voluminous production of
28    documents with the "producing, e.g." notation and one or more illustrative examples.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[REDACTED] AOS'S OPPOSITION TO MOTION TO
COMPEL
(C 07-2638 JSW)

1  voltage characteristics data at AOS_F00015551).

2  AOS's data sheets describing the operational characteristics of its devices are, as Fairchild

3  admits, published publicly. *See* Fairchild's Mtn at 10:5-6. Nonetheless, Fairchild now demands,

4  and AOS has produced, data sheets including raw data underlying the graphs, charts, and plots

5  contained in the data sheets. *Id. See also* Doscher Decl. Ex. V (08/19/08 Letter from Majidian to

6  Jacobs, et. al.) (producing, e.g., datasheet for AO4803 including underlying data at

7  AOS_F00090246-284).

8          **5.**      AOS either has produced or has committed to produce documents
9                     pertaining to the 56 additional parts identified by Fairchild.

10  Fairchild initially accused 342 products of infringing. On May 21, 2008, Fairchild

11  requested discovery on 56 new products that AOS was in the process of introducing to the

12  market. To the extent AOS has produced documents for the 342 products initially accused by

13  Fairchild, AOS has or will produce the same type of documents for the 56 new products accused

14  by Fairchild. *See* Doscher Decl. Ex. W (Fairchild's Second Supplemental Response to AOS's

15  First Interrogatories) at 46:15-47:3 (supplemental response dated August 13, 2008 identifying 56

16  new AOS accused products).

17  **III.    LEGAL STANDARD**

18          Discovery under the Federal Rules of Civil Procedure is not without limits and must at

19  least be "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "While the

20  standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow

21  zones of relevancy and to explore matter which does not presently appear germane on the theory

22  that it might conceivably become so." *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)

23  (citation omitted). Indeed, the Federal Rules were amended to narrow the scope of discovery.

24  *See* Fed. R. Civ. P. 26 (committee notes).

25          The burden rests on the party seeking to compel discovery to demonstrate that its requests

26  seek information relevant to the claim or defense of any party. *See Soto v. City of Concord*, 162

27  F.R.D. 603, 610 (N.D. Cal. 1995) ("[I]n general the party seeking to compel discovery bears the

28  burden of showing that his request satisfies the relevance requirement of Rule 26 . . . ."); *Ingram*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20815683.5                    9                    [REDACTED] AOS'S OPPOSITION TO MOTION TO
                                                       COMPEL
                                                       (C 07-2638 JSW)

1   *v. The Home Depot, U.S.A., Inc.*, No. Civ.A. 97-8060, 1999 WL 88939 at *2 (E.D. Pa. Feb. 19,

2   1999) ("Once the party opposing discovery raises its objection, the party seeking discovery must

3   demonstrate the relevancy of the requested information.").

4       Vague and conclusory assertions of relevancy are not sufficient. *See Earley v. Champion*

5   *Int'l Corp.*, 907 F.2d 1077, 1084-85 (11th Cir. 1990) ("A vague possibility that loose and

6   sweeping discovery might turn up something . . . does not show particularized need and likely

7   relevance that would require moving discovery beyond the natural focus of the inquiry."); *Evans*

8   *v. Calise*, No. 92 CIV 8430, 1994 WL 185696 at *1 (S.D.N.Y. 1994) ("The party seeking the

9   discovery must make a prima facie showing, that the discovery sought is more than merely a

10  fishing expedition.").

11      The Federal Rules vest the courts with broad discretion to tailor discovery narrowly and to

12  dictate its sequence. Fed. R. Civ. P. 26(b)(2); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

13  Even if the district court finds that the information sought is relevant, it may deny discovery if

14  disclosure would unduly burden the party from whom discovery is sought. *Micro Motion, Inc. v.*

15  *Kane Steel, Inc.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990).

16      Under the Civil Local Rules for the Northern District of California, a party moving to

17  compel discovery must "detail the basis for the party's contention that it is entitled to the

18  requested discovery and must show how the proportionality and other requirements of

19  Fed.R.Civ.P. 26(b)(2) are satisfied." Civil L.R. 37-2. Federal Rule of Civil Procedure 26(b)(2)

20  explicitly provides that a party shall be denied discovery where the scope and magnitude of the

21  discovery sought is clearly unreasonable:

22          The frequency or extent of use of the discovery methods otherwise
            permitted under these rules and by any local rule shall be limited by
23          the court if . . . the burden or expense of the proposed discovery
            outweighs its likely benefit, taking into account the needs of the
24          case, the amount in controversy, the parties' resources, the
            importance of the issues at stake in the litigation, and the
25          importance of the proposed discovery in resolving the issues.

26  Fed. R. Civ. P. 26(b)(2)(C). Courts routinely limit discovery where the probative value of the

27  information sought is questionable and it would be onerous for the requested party to access and

28  produce the requested information. *See, e.g., In re ATM Fee Antitrust Litig.*, No. C 04-2676,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20815683.5                          10                  [REDACTED] AOS'S OPPOSITION TO MOTION TO
                                                            COMPEL
                                                            (C 07-2638 JSW)

1   2007 WL 1827635, *5 (N.D. Cal. Jun. 25, 2007) (denying discovery where "the potential and

2   speculative burden of such materials outweighs the burden of producing them"); *Ricotta v.*

3   *Allstate Insurance Co.*, 211 F.R.D. 622, 624 (S.D. Cal. 2002) (denying motion to compel

4   production of documents responsive to discovery requests).

5   **IV.    ARGUMENT**

6          AOS produced long ago the documents that Fairchild now demands, except for documents

7   that do not exist, are outside of AOS's possession, custody, or control, or would impose a burden

8   (2.6 million pages) far outweighing their relevance. Fairchild's demand for these additional

9   documents, which is inconsistent with the parties' representative parts agreement, should be

10  denied.

11         **A.    Fairchild Should Be Ordered To Identify Representative AOS Parts And Its
                   Discovery Requests Should Be Limited To Those Products.**

12

13         The Court should reject Fairchild's gambit to limit its own production and then renege on

14  its agreement to limit AOS's production. AOS has provided sufficient information for Fairchild

15  to either propose meaningful groupings or identify representative AOS parts. *See* Hebert Decl. ¶¶

16  9-12.

17                                        In return, AOS agreed to provide

18  sufficient discovery so that Fairchild could identify representative AOS parts that relate to its own

19  infringement theories. Now, having obtained the benefit of limited production for its own

20  products, Fairchild reneges and seeks to compel AOS to produce "*all documents*" relating to "*any*

21  *aspect* of the process of manufacture" of any AOS product "*at any stage* of its manufacture" or

22  "*any aspect* of [its] structure or design." *See* Fairchild's Mtn, n. 7, 8, 9, 10, 11. In effect,

23  Fairchild demands every technical document in AOS's possession, custody, or control.[7] For the

24  past year, Fairchild has claimed it needed AOS's process flows, GDS files, wafer specifications,

25  and epitaxial specifications to implement its side of the representative parts agreement. AOS has

26  ───────────────
    [6] Fairchild's own identification of "representative parts" has been incomplete and inaccurate.
    *See, e.g.,* Doscher Decl. Ex. X (08/19/08 Letter from Casto to Jacobs). AOS hopes to resolve its

27  disputes regarding Fairchild's discovery without requiring assistance from the Court.
    [7] As AOS's business is as a fabless designer of power MOSFETs, Fairchild demands would

28  compel AOS to produce, essentially, every piece of paper and electronic file in its possession.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20815683.5                    11              [REDACTED] AOS'S OPPOSITION TO MOTION TO
                                                  COMPEL
                                                  (C 07-2638 JSW)

1   produced that information.  Nonetheless, Fairchild has continually demanded that AOS provide

2   more and more discovery on more and more products.  Now, Fairchild simply moves to compel

3   "all documents" on "all products."

4          Fairchild argues that its motion does not violate the parties' representative parts agreement

5   because AOS has not identified representative AOS products.  *See* Fairchild's Mtn., at 12:7-17.

6   That argument badly mischaracterizes the parties' discussions.  Each time Fairchild came calling

7   on AOS for additional information – process flows, GDS files, recipes, etc. – it was on the basis

8   that Fairchild needed the information so it could identify representative AOS parts.  Fairchild has

9   no logical basis for asserting that it is still unable to determine groupings or identify

10  representative AOS products that are meaningful in light of its infringement theories.

11       **B.    Fairchild's Demand For All Documents Related To All AOS Products Is**
    **Cumulative And Facially Overbroad.**

12

13         In its motion, Fairchild has made no serious effort to tie what it claims it has not received

14  to the specific features recited in its patents.  Fairchild fails to carry its burden of demonstrating

15  the discovery it is seeking to compel is relevant and needed by it to litigate its claims.  *See Soto*,

16  162 F.R.D. at 610 (the burden rests on the party seeking to compel discovery to demonstrate that

17  it seeks information relevant to the claim or defense of any party).

18         Fairchild's demand for *all* documents relating to *all* AOS low voltage MOSFET products

19  is grossly overbroad in light of the very specific patent claims at issue.  The Fairchild patents-in-

20  suit do not merely "relate to the manufacturing, structure and operation of power MOSFET

21  devices," as Fairchild contends.  Fairchild's Mtn. at 2:23-24.  Rather, Fairchild's patents recite

22  very specific features located within discrete regions of the devices for achieving specific results.

23  For example, one key feature claimed by each of Fairchild's Mo patents relates to the depth and

24  doping profile of the heavy body formed in the well, which, according to Fairchild, affects the

25  location of breakdown initiation in the device.[8]  *See, e.g.,* Doscher Decl. Ex. Y (06/04/08

26  _____

27  [8] Fairchild's expert, Dr. Blanchard, misleadingly portrays the Mo patents as claiming only the
    steps for manufacturing a power MOSFET, "including the steps of 'providing a semiconductor
    substrate,' 'forming a plurality of trenches,' 'forming a doped well,' and 'forming a heavy body.'
    ('195 patent, claim 1)."  Blanchard Decl. (D.I. 177, filed 08/12/08) ¶ 9.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Markman Hearing Tr.) at 63:10-12 (Fairchild's counsel: "An ohmic contact, which is normally

2  very shallow, can be deep enough where it does impact where the breakdown occurs.  That's the

3  '481 patent."); *Id.* at 51:24-25 (Fairchild's counsel: "Every structure in Claim 29 is directed to the

4  active area of the device"); Ex. Z (U.S. Patent No. 6,828,195) at 8:54-58 (claim 1) (claiming

5  heavy body region with an alleged abrupt junction); Ex. AA (U.S. Patent No. 7,148,111) at 11:6-

6  10 (claim 29) (claiming a method of adjusting the heavy body region).  Likewise, one key feature

7  claimed by Fairchild's '947 patent relates to the formation of one trenched structure in the

8  termination region of the device that allegedly combines a gate runner and a field plate.  *See, e.g.,*

9  Ex. Y at 68:11-14 (Fairchild's counsel: "Claim 1 of the '947 patent . . . recites, 'a single

10  conductor having first and second conductor portions.'"); *id.* at 75:5-7 (Fairchild's counsel: "And

11  in the '947 patent we are concerned with this area that's circled here, that's alongside the trenched

12  field plate.");  Ex. BB (U.S. Patent No. 6,818,947) at 6:30-35(claim 1).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20815683.5                                13

[REDACTED] AOS'S OPPOSITION TO MOTION TO
COMPEL
(C 07-2638 JSW)

7

8

9

10  Doscher Decl. Ex. L (AOSN281 process flow at AOS_F00014161); *accord* Hebert Decl. ¶ 9. *See*

11  *also* Doscher Decl. Ex. J (producing process flows AOS_F00014159-14638 and GDS files

12  AOS_F5000011-24); Ex. K (producing GDS file list AOS_F00014740 and process flows

13  AOS_F00014741-47)

14

15                     Ex. N (producing GDS files AOS_F5000000-10); Ex. O (producing design

16  layout and mask information AOS_F00014768-9 and GDS files AOS_F5000025-197); Ex. P

17  (producing wafer database AOS_F00015362 and wafer epitaxial specifications

18  AOS_F00015359).

19       Indeed, Fairchild makes no attempt in its motion to explain *why* the technical documents

20  produced by AOS to date are not sufficient to describe the structure and operation of the accused

21  AOS products in ways meaningful to Fairchild's asserted patents.  Fairchild did not do so prior to

22  filing its motion, either.  *See* Augustine Decl., Ex. 6 (02/02/08 Email from Jacobs to Schuman)

23  (asserting that Fairchild's infringement analysis requires AOS's process flows, recipes, wafer

24  specifications, and GDS files).  In particular, Fairchild does not explain how any of the "recipes"

25  that AOS has purportedly not produced, such as the deposition and etching of the gate polysilicon

26  in the active region of the device,[9] impact any of the key patent claim limitations described above,

27  such as the depth and doping profile of the heavy body, or the formation and function of

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[9] As described above, *supra* § II(B), AOS has in fact already produced this information.

1    structures in the termination region. *See* Fairchild's Mtn at 4, n. 5 ("Fairchild needs . . .

2    polysilicon deposition, polysilicon etching"). Instead, Fairchild merely submits a declaration

3    from its retained expert witness containing vague references to general "structural and operational

4    characteristics" of the accused products. *See* Fairchild's Mtn at 8:8-10, 23-26; 9:4-6; 10:6-7. *See*

5    *Champion Int'l Corp.*, 907 F.2d at 1084-85 ("loose and sweeping discovery" should be denied);

6    *In re Fontaine*, 402 F. Supp. at 1221 ("the standard of relevancy . . . is not so liberal as to allow a

7    party to roam in shadow zones of relevancy and to explore matter which does not presently

8    appear germane on the theory that it might conceivably become so.").

9         Further, Fairchild's motion should be denied because the burden on AOS of producing the

10   sought-after discovery plainly outweighs any purported benefit to Fairchild from obtaining the

11   information. *See* Fed. R. Civ. P 37(b)(2)(c) (limiting cumulative and unreasonably burdensome

12   discovery). For example, Fairchild now demands over approximately <u>2.6 million pages</u> of

13   "inline" quality control data, over nine months after it was informed last November, and did not

14   contest, that such information was oppressively voluminous and at best marginally relevant to the

15   parties' discovery requests. *See* Doscher Decl. Ex. T (11/15/07 Letter from A. Wu to I. Shoiket);

16   Ex. U (08/18/2008 Letter from Doscher to Shoiket). (requesting Fairchild explain or withdraw its

17   demand for "inline" quality assurance data). After the November correspondence, Fairchild first

18   specifically identified its purported need for AOS's "inline" quality assurance data on July 11,

19   2008. Augustine Decl. Ex. 11 at 3.

20        "Inline" manufacturing quality control data measures <u>the deviations of individual wafers</u>

21   from design specifications during various stages of the manufacturing process. *See* Blanchard

22   Decl. (D.I. 177, filed 08/12/08) ¶ 25 ("'in-line data' refers to quality assurance data . . . to verify

23   that a given lot of devices has been properly manufactured up to that point in the manufacturing

24   process."). On August 28, AOS provided Fairchild with two samples of its quality assurance

25   data, and asked Fairchild to explain how this type of information would be relevant to the case.

26   *See* Doscher Decl. Ex. U. After hours on August 25 (the day before this opposition was due),

27   Fairchild sent a letter agreeing that AOS could withhold documents represented by the samples

28   that AOS provided on August 18, but demanding other quality control data, including data on

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[REDACTED] AOS'S OPPOSITION TO MOTION TO
COMPEL
(C 07-2638 JSW)

1    trench measurements, field oxide measurements, gate oxide measurements, poly gate

2    measurements, "and other measurements relating to the structure of AOS's accused products."

3    *See* Doscher Decl. Ex. CC (08/25/08 Letter from Hulse to Doscher) at 2. Fairchild's proposal

4    would actually <u>increase</u> significantly the burden on AOS by forcing AOS to review all of the

5    more than approximately 2.6 million pages, and identify the specific pages containing trench,

6    field oxide, gate oxide, poly gate, or vague "other" structural measurements, and produce those

7    specific pages. The burden of this exercise far outweighs the benefit, particularly since AOS has

8    already produced its specifications for the design of the structures, and Fairchild has never

9    contended that deviations, on an individual wafer quality assurance level, are relevant to its

10    infringement theories.

11        Similarly, while Fairchild admits that it has AOS Design Reviews containing graphical

12    simulations data for accused AOS products, *see* Fairchild's Mtn. at 5, n.6, it now demands all of

13    the raw data files used in conjunction with AOS's simulations software, despite the burden that

14    would place on AOS to produce documents

15                                                                          Fairchild has not met

16    its burden of showing that the facially overbroad discovery it seeks to compel is not unreasonably

17    cumulative to the production already provided by AOS, much less that any purported relevancy

18    outweighs the burden of production. *See Micro Motion, Inc. v. Kane Steel, Inc.*, 894 F.2d at

19    1323; *Champion Int'l Corp.*, 907 F.2d at 1084-85; *In re ATM Fee Antitrust Litig.*, 2007 WL

20    1827635, *5; *Ricotta*, 211 F.R.D. at 624.

21    **V.    CONCLUSION**

22        For all of the reasons set forth above, Fairchild's motion to compel should be denied.

23    Dated: August 26, 2008                MORGAN, LEWIS & BOCKIUS LLP

24

25                                          By /s/ Brett Schuman
                                               Brett M. Schuman
26                                             Attorneys for Plaintiffs and Counterdefendants
                                            ALPHA & OMEGA SEMICONDUCTOR, LTD.
27                                          AND ALPHA & OMEGA SEMICONDUCTOR,
                                            INC.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20815683.5                          16                  [REDACTED] AOS'S OPPOSITION TO MOTION TO
                                                                                            COMPEL
                                                                                    (C 07-2638 JSW)